```
1  Steve Wilson Briggs
2  681 Edna Way
3  San Mateo, CA 94402
4  510 200 3763
5  snc.steve@gmail.com
6  Pro Se PLAINTIFF
```

FILED

JAN - 9 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE WILSON BRIGGS<br>Plaintiff,<br>vs.<br>NEILL BLOMKAMP,<br>SONY PICTURES ENT., INC.,<br>TRISTAR PICTURES, INC.,<br>MEDIA RIGHTS CAPITAL,<br>QED INTERNATIONAL,<br>Defendants | CASE NO:   CV 13 4679 PJH<br><br>**JOINT CASE MANAGEMENT<br>CONFERENCE STATEMENT**<br>[PLAINTIFF"S STATEMENT] |

## JURISDICTION AND SERVICE:

Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, and the Standing Order for All Judges of the Northern District of California, the Plaintiff hereby submits this Case Management Statement.

1. **Jurisdiction.** This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 & 1338(a), as this action is for copyright infringement arising under the copyright laws of the United States . and pursuant to 28 U.S.C. 1332(a)(2) as, upon information, Defendant, Neill BlomKamp, is a citizen of Canada and South Africa; not a citizen of the U.S.A.

2. **Venue.** Venue is proper, and this court has personal jurisdiction, pursuant to 28 U.S.C. § 1391(b)(2), as the events giving rise to this complaint occured in this district. It is also

1  the proper venue pursuant to 28 U.S.C. § 1391(d) by virtue of Defendants' business transactions
2  with this district; and under 326 US 310, as all Defendants meet minimum contact rule.
3     3. **Service.** All of the Defndants have been properly served.

4  # FACTS

5     4. This is an action for copyright infringement of the Plaintiff's copyright protected
6  screenplay "Butterfly Driver" (originally "Uberopolis: City of Light") written in 2005; W.G.A.
7  reg. #1103287, 2005; U.S. Copyright Office reg. certificate #PAu 3-683-232, June 21st, 2013.
8  The infringement commensed on August, 9th, 2013, when the Defendants distributed and
9  publically displayed "Elysium", a film infringing on the heart of the Plaintiff's work: plot,
10 characters, settings, conflict, catalyst, crisis, climax-twist, themes (immigration, healthcare...),
11 hero's "affliction", "keepsake necklace", much more. "Elysium" bears Substantial Similarity to
12 the Plaintiff's work and the Defendants had access. The Plaintiff believes the infringement rises
13 to "Striking Similarity" (obviating access), marked staggering similarities beyond probability.
14    5. In May 2005, the Plaintiff completed the first draft of his original screenplay,
15 "Uberopolis: City of light", emailing it to family and friends.
16    **6.** December 16th, 2005, the Plaintiff registered a revised version of "Uberopolis: City of
17 Light" with the Writer's Guild of America (West); registration ID #: 1103287.
18    7. Approximately January, 2007, the Plaitiff revised and renamed his script "Butterfly
19 Driver", and soon sent many query letters and emails to agents and film companies; entered
20 events like the Philadelphia Logline Festival, and the 2006 Slamdance Screenplay Competition.
21    8. February, 2007, the Plaintiff posted the entire "Butterfly Driver"" script on Kevin
22 Spacey's and Dana Brunetti's filmmaker-screenwriter site, triggerstreet.com, "Trigger Street".
23    9. TriggerStreet had approximately 50,000 active members in 2007.
24    10. In 2007, like today, the majority of TriggerStreet members were short filmmakers and
25 screenwriters. In 2007, Defendant, Neill Blomkamp was a short filmmaker, with only a few short
26 films to his credit. Blomkamp wouldn't begin his first feature film for a year. Defendant, MRC,
27 was a struggling new film company with one credit for 2007, "Couples", filmed for $2,500.
28    11. Trigger Street is the only place the Plaintiff ever posted his Butterfly Driver script.

12. TriggerStreet.com is where the Defendants had access to the Plaintiff's script.

13. February to August of 2007, the Plaintiff posted "Butterfly Driver" on TriggerStreet.com.

14. In December, 2007, the Plaintiff stopped marketing Butterfly Driver, intent to film it himself, someday. January 2008, The Plaintiff began production of his film "The Amazing Mr. Excellent"; 'Best Of Fest' winner at the 2010 Temecula Valley International Film Festival, and singled out for it's positive social message at the 2011 Oakland International Film Festival.

15. On May 27th, 2013, while viewing another film, the Plaintiff saw a trailer for "Elysium", which featured a plot, characters, settings seemingly misappropriated from Butterfly Driver.

16. June 13th, 2013, Plaintiff found and downloaded the Defendants' screenplay, "Elysium".

17. The following compares the two works. In the Complaint the Plaintiff pays great attention to Elysium's (screenplay and film) infringement of the Plaintiff's work. In respect for the Court's time, the Plaintiff will highlight only some of those details here, omitting many.

PLOT INFRINGEMENT:

18. Among other plot similarities, both screenplays' plots feature: **1)** a giant satellite world for the super-rich; **2)** a hero prone to excrutiating HEADACHES (which cause the hero to fall to his knees, clutch his head, scream); **3)** a VILLAIN who has been genetically "reprogrammed" to appear much younger than he/she is (Elysium uses the term "re-atomized"); **4)** advanced medicine found on the satellite world; **5)** a hero who must get to the satellite world for medicine (medical care); **6)** a "plight of the immigrant" theme; **7)** a SICK GIRL, who will die without the hero's action; **8)** a poor hero who needs I.D. and transport to a satellite world; **9)** an anguiish of life without healthcare theme; **10)** a DISABLED TRANSPORTER who will help the hero if the hero does a very dangerous mission first; **11)** an agent (sent by the villain to apprehend the hero) who accepts the mission after negotiating; **12)** a KEEPSAKE NECKLACE, carried by the hero, which factors into the ending; **13)** an overpopulated, impoverished Earth, where police vehicles loom in the sky and brutalize the poor, ruled by a rich from the satellite world; **14)** a hero who threatens the villain with the detonation of an explosive device...

CHARACTER INFRINGEMENT; THE HERO;  Arlo Vs Max:

19. Both, the Plaintiff 's hero, Arlo, and the Defendants' hero, Max, share astonishing

similarities. They both: **1)** are 35-45 year old male, living 100 plus years in the poor, living in the overpopulated ruins of a largely impoverished Earth; **3)** have less than a week o get to a satellite world for the super rich; **4)** contact underworld figures to get I.D. and transport to the satellite world; **5)** suffer from rare, brief, excrutiating headaches; **6)** suffer a headache, battling in the story's climax; **7)** must get medical aid or medicine to save his daughter (or his girlfriend's daughter); **8)** carry a keepsake necklaces from a special woman from their past.

### THE HERO'S HEADACHE AFFLICTION INFRINGEMENT:

20.  The Plaintiff's hero has unique headache affliction -never before used in film.. The Defendant's hero infringes on the headaches, the hero's reactions to them, and the occurance of this headache device in the climax. The following is a side-to-side comparison of a couple of these headaches taken from the Plaintiff and the Defendants' screenplays. Plaintiff's screenplay **in bold print;** Defendants' screenplay in regular print:

21.  FIRST HEADACHE EVENT:
**Arlo suddenly falls to his knees, grabs his head, and growls in pain, "GRRRR." His eyes roll back as he fights his way back to his feet.**
Max tries to run, but he collapses. He clasps his head in pain... Max clasps his head like a migraine. The data creating an epileptic white static in his head.

22.  FOURTH HEADACHE EVENT:
**As Arlo reaches for his gun a jolt of pain shoots through his head, driving him to one knee. Arlo's eyes roll in their sockets as he groans and struggles to his feet.**
Max starts to get the upperhand when- A white hot flash of cerebral pain... He trips and stumbles over desks and terminals, holding his head... Max uses every ounce of strength to will himself to his feet.

23.  To hide their infringement, the Defendants don't call these events "headaches"; rather, "migraines", "seizures", "epileptic white static" and "A white hot flash of cerebral pain". But "migraine" is disorder characterized by recurrent <u>headaches</u>; "seizures" and "epilepsy" don't cause falling to the knees, clutching the head, screaming; and "cerebral pain" is a "headache".

### THE HERO'S "KEEPSAKE NECKLACE"

24. The hero's of both screenplay's are given keepsake neckalces from important female characters. Later, as the heroes face death, the keepsake neclaces factor idream-like visions. Bothe screenplays refer to the keepsake as a "necklace' and a "pendant".

## SETTING INFRINGEMENT:  GIANT SATELLITE WORLD FOR THE RICH

25. The following aspects of Plaintiff's satellite world are infringed on by the Defendants' story, again. The Plaintiff's satellite world: 1) is an enormous satellite man-made world, orbiting earth, with forests and large aquatic features; 2) only the super-rich live in the satellite's pristine biosphere; 3) fantastic medical technologies are available there; 4) entering the satllite requires special identification; 5) it is home to the story's genetically reprogrammed villain; 6) it orbits an overpopulated, impoverished Earth; 7) the climax transpires here; 8) here, prisoners in orange jumpsuits board shuttles for Earth.; **9)** the satellite's capacity is about 300,000.

26. These are just some of the Defendants infringements, which include immigration and healthcare themes and carryover -even into their synopsis used for their marketing campaign.

## RECENT ISSUES

27. The Plaintiff submitted an AMENDED COMPLAINT to attend the fact that the Defense declared in their Answer And Affirmative Defenses that Defendant, Media Rights Capital (MRC), had been erroneously named in this suit -the Defense then attempted to re-name a seemingly fictitious subsidiary, MRC II Distributing Company.  The Plaintiff has also filed a MOTION FOR SANCTIONS related to this situation -and due to the Defense Counsel's use of 192 denials (some quite unreasonable) in their Answer to the Plaintiff's Complaint.

**28.** On Wednesday, December 18th, 2013 at 6:03pm, Attorney Gregory Korn called the Plaintiff (as agreed) to confer about ADR and Case Management issues, per Court order. The conversation lasted 34 minutes and 54 seconds. The conversation was polite and productive. Mr. Korn and the Plaintiff agreed they were very far apart in their preferences for ADR and other matters. Thus, Mr. Korn felt it was best to file separate Case Managaement Statements. Having no experience, here, the Plaintiff agreed. <u>Thus, our Case Management Statements are  separate.</u>

## GAMESMANSHIP BY THE DEFENSE

29. On SATURDAY, December 28th, 2013, at 11:03 a.m., Defense attorney Michael

1 Kump called the Plaintiff. The Plaintiff was busy, at the time, so they arranged for attorney
2 Gregory Korn to call the Plaintiff at 5pm, later that day. At 5:03pm Mr. Korn called. Mr. Korn
3 explained he and Mr. Kump had recently emailed the Plaintiff some documents. The Plaintiff
4 explained he hadn't checked his email in a while, as he was enjoying the Holidays with family.
5 Mr Korn explained he had been emailing because he was hopeful the Plaintiff would agree to a
6 **Stipulation** to Continue the Case Management Statement's for an additional seven days, from
7 01/02/14 to 01/09/14); and ALSO to ask the Plaintiff to agree to a **Stipulation** to Continue the
8 INITIAL CASE MANAGEMENT CONFERENCE, from 01/09/14 to 01/16/14. Further, Mr.
9 Korn wanted the Plaintiff to send his authorization, via email, to expedite the stipulations.

10    30.    The Plaintiff was uncomfortable with this, and asked for Mr. Korn's assurance that if the
11 Plaintiff emailed his authorization, the Defense would only use the authorization this one time,
12 and ONLY for the Stipulation to Continue Case Management Statement and the Stipulation to
13 Continue Initial Case Management Conference, and nothing else.

14    31.    Mr. Korn assured the Plaintiff the authorization would only be used for the designated
15 continuances. The Plaintiff, then, agreed to email Mr. Korn his authorization by 11a.m. Monday.

16    32.    Monday, 12/30/13, before 11 a.m., the Plaintiff emailed Mr. Kump his authorization.

17    33.    Saturday, January 4th, 2014, the Plaintiff received the stipulations served upon him by
18 Mr. Korn, Mr. Kump and K.W.I.K.A. Law. The Plaintiff did not read the stipulation until
19 Sunday, January 5th. Upon reading the order the Plaintiff learned the Defense had violated his
20 request and **ADDED** a STIPULATION to "CONTINUE DEFENDANTS' DATE TO ANSWER
21 AMENDED COMPLAINT" to their stipulation to Continue Case Management Statement.

22    34.    The Plaintiff then read the emails Mr. Korn and Mr. Kump had sent him, refernced
23 earlier, only to learn that Mr. Korn and Mr. Kump had, indeed, attached PDF files that proposed
24 this Continuance for their Answer to the Amended Complaint. But this was NOT suggested in
25 our phone conference, and the Plaintiff specifically denied ANY use of his authorization to
26 Continue any other matters, except the specified Case Management Statement and Conference.

27    35.    In securing these Continuances, the Defense Counsel behaved dishonestly. By all rights,
28 the Defense Counsel's Answer to the Plaintiff's Amended Complaint was due January 2nd, 2014.

1 | The Plaintiff accepts fault for trusting the Defense -and for not reading his email ffirst.

2 | **LEGAL ISSUES:**

3 | 36.   COPYRIGHTABILITY.  For a lterary work to be copyrightable it must be original, and
4 | rendered in a fixed form. The Plaintiff rendered his original screenplay in a fixed form (printed
5 | screenplays) and gave those screenplays to friends and family. He also emailed eatly drafts to
6 | family and friends, and posted the final PDF versions on TriggerStreet.com. There are no
7 | requirements to keep the typewriter, or the computer application the work was created on.

8 | 37.   COPYRIGHT INFRINGEMENT. Copyright infringement requires 1) Substantial
9 | Similarity (between the Plaintiff and the Defendants' work); 2) Access (the Defendant(s) must
10 | have had access to the Plaintiff's work).

11 | STRIKING SIMILARITY

12 | 38.   In the seminal case on Striking Similarity, **Arnstein v. Porter**, the Second Circuit stated
13 | that even absent a finding of access, copying can be established when the similarities between
14 | two works are "so striking as to preclude the possibility that the plaintiff and defendant
15 | independently arrived at the same result.ments;

16 | THE DOCTRINE OF COMPREHENSIVE NON-LITERAL SIMILARITY

17 | 39.   This lawsuit is for Copyright Infringement under the doctrine of "comprehensive non-
18 | literal similarity". Comprehensive non-literal similarity occurs when 'one work appropriates "the
19 | fundamental structure or pattern" of another. Justice John M. Walker, Jr. of the United States
20 | Court of Appeals for the Second Circuit noted in Arica v. Palmer that a court may find copyright
21 | infringement under the doctrine of "comprehensive non-literal similarity" if "the pattern or
22 | sequence of the two works is similar" From J. Thomas McCarthy's McCarthy's Desk
23 | Encyclopedia of Intellectual Property (and Wikipedia).

24 | IDEA VS. EXPRESSION

25 | 40.   An idea is not copyrightable; but an expression is. This case does not involve single,
26 | simple ideas (e.g., a time machine: which is a brillaint simple idea, but as free as the air we
27 | breath). The Plaintiff's copyrightable plot, characters, settings, themes, etc., are EACH a unique
28 | group of characteristics, ideas, situations, time and story contextss, maladies, circumstances,

relationships, settings, anomalies, or idiosyncrasies, etc. Several unique ingredients that form a copyrightable expression. A robot is a simple idea -not copyrightable. But R2D2 combines a few ideas to make a unique copyrigtable character: R2D2 is a short, cylindrical, dome-headed robot on three wheels. A unique expression. Thus, he is protected and there are no other short, cylindrical, dome-headed robot on three wheels in the American marketplace.

## TESTS

41.  The Court possesses unique erudition, instincts and analytical skills to determine this matter, independantly. The Court also has numerous tests at its disposal. Common tests are: 1) Total concept and feel test (divided into an extrinsic test and an intrinsic test -defined in 1977 by US federal judge JamesMarshall Carter in Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp. (Wikipedia).

42.  **Motions**: The following motion IS PENDING in this case: **Motion for Sanctions** against the Defense counsel, February 19th, 9:00a.m. Courtroom 3, Judge: Hon.Phyllis J. Hamilton.

43.  **Amendment of Pleadings**: The Plaintiff does NOT anticipate amending his Complaint.

44.  **Evidence Preservation**: The Plaintiff has taken positive steps to preserve evidence related to the issues presented in this case.

45.  **Disclosure:** The Parties have not yet exchanged Initial Disclosures in compliance with Fed. R. Civ. P. 26. The Plaintiff proposes to exchange Initial Disclosures by February 21st, 2014.

46.  **Discovery:** The Parties have NOT exchanged Discovery.

    The Plaintiff will participate in designing a discovery plan with the Defense Counsel, and will himself available to them. The Plaintiff expects the same availability from the Defendants and their administrators. The Plaintiff offers no changes or limits to the discovery rules. Being unfamiliar with the Discovery process the Plaintiff will offer plan suggestions as he learns more, very soon. The Plaintiff believes this case is simple: access, substantial similarity, original work, rendered in a fixed form. Thus, the Plaintiff believes an Expedited Schedule is appropriate.

47.  **Class Actions**: Not Applicable.

48.  **Related Cases**: There **are no** related cases currently pending before any court or administrative body.

49. **Relief:** The Plaintiff's work, Butterfly Driver" provides the entire structure of the Defenadants' "work," Elysium. Under copyright law, the plaintiff is due all of the profits and actual damages. By multiple accounts, including Boxofficemojo.com ( http://www.boxofficemojo.com/movies/?id=elysium.htm ) Elysium has earned $286,000,000 against a production and marketing cost of $115,000,000; net profit of **$161,000,000**. However, movies only derive 25% of their earnings from theatrical release; with video (DVD's, etc.) taking approximately 40%; television accounting for 28% and ancillary revenues the final 7%. This means in the next 5 years (now that Elysium is available on DVD and online, etc., Elysium will earn over **$600,000,000** profit. These figures can be verified at (among other sites) : http://www.creativeskillset.org/film/knowledge/article_5103_1.asp

50. **Settlement and ADR:** The Plaintiff is open to doing ENE (Early Neutral Evaluation), but believes this case is appropriate for the ADR **"EXEMPTION"** contemplated in **ADR Local Rule 3-5(e)3**. The Plaintiff's issues that would need to be resolved before settlement would be possible are:

51. First. The Plaintiff is certain his work was misappropiated. He seeks justice in the form of a judgement against the Defendants, and exclusive control of his coptright returned. As stated in his Prayers For Relief, the Plaintiff hopes the Court will consider the imprisonment of the initiating infringer (under section 2319 of Title 18). This contemplation requires a judgement.

52. Second. The Plaintiff worked several years on Butterfly Driver. It is near to his heart. he will not surrender or subordinate his copyright interests as part of a settlement.

53. Third. As a habitually honest person, the Plaintiff could never agree to signing a Non-Disclosure Agreement, and not discuss the Defendants' actions and an amazingly unlikely violation of his work, as settlements inevitably require.

54. Fourth. **Precedence Issues**. The Plaintiff believes the evidence of infringement in this matter is unparalleled in film. Obtaining a judgement will help establish a reference precedent, where almost no case information exists; and thus clarify what protections, if any, our U.S. copyrights provide our creative thinkers.

55. Fifth. The Plaintiff is very uncomfortable with the idea of someone stealing his property

-then offering him money to go away and ignore the crime.

56. **Consent to Magistrate Judge For All Purposes:**   No.  The Plaintiff does NOT consent to a magistrate judge for trial and entry of judgment.

57. **Other References:**   The Plaintiff does not believe this case is suitable for other reference.

58. **Narrowing of Issues:**   Not Applicable.

59. **Expedited Trial Procedure:**  The PLAINTIFF believes this case IS appropriate to move more quickly than a typical case.

60. **Scheduling (proposal) :**

| | |
|---|---|
| Parties Exchange Initial Disclosures | February 21st, 2014 |
| Last Day to Amend Complaint, Answer, and/or Counterclaim : | February 28th, 2014 |
| Last Day for Non-Expert Discovery : | March 28th, 2014 |
| Last Day to Designate Experts: | April 25th |
| Expert Discovery Cut-Off : | May 9th |
| Last Day to File Motion for Summary Judgment: | August 1st, 2014 |
| Proposed Month/Year for Trial: | September, 2014 |

61. *If the Plaintiff's schedule doesn't conform to Court standards, the Plaintiff ask the Court's forgiveness as he lacks experience and familiarity with trial planning.

62. **TRIAL:** This case will be tried by a **JUDGE**. This case is expect to last **7 DAYS**.

63. **Disclosure of Non-Party Interested Entities or Persons:**   Not Applicable.

64. **Such Other Matters Facilitating a Just, Speedy, Inexpensive Disposition:** To expedite this matter, the Plaintiff will file a Motion For Summary Judgement soon.

NOTE: The Plaintiff is hopeful the Court can agree to schedule all matters that require his involvement and responses **before May 9th**, and/or **after June 29th**, 2014, as the Plaintiff has high school graduation preparations for his son (and his classroom), and college relocation issues (for his son) to attend during this time.

Date: January 9th, 2014    Signed: _____
                                    Steve Wilson Briggs, Plaintiff, in pro per

## PROOF OF SERVICE

This is to certify that on the 9th day of January, 2014, I, Steve Wilson Briggs, served, by way of U.S. mail, true copies of the document described as **Joint Case Management Statement [Plaintiff's Statement]**, on the interested parties below:

Michael J. Kump, and Gregory P. Korn

(of Kinsella, Weitzman, Iser, Kump & Aldisert)

808 Wilshire Boulevard, 3rd Floor

Santa Monica, California, 90401

310 566 9800

Executed on January 9th, 2014

By, _____

Steve Wilson Briggs, Plaintiff Pro Se