KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
MICHAEL J. KUMP (SBN 100983)
  mkump@kwikalaw.com
GREGORY P. KORN (SBN 205306)
  gkorn@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Defendants
NEILL BLOMKAMP, SONY PICTURES
ENTERTAINMENT INC., TRISTAR
PICTURES, INC., MEDIA RIGHTS CAPITAL
II, L.P., and QED INTERNATIONAL, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

| | |
|---|---|
| STEVE WILSON BRIGGS,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>NEILL BLOMKAMP; SONY PICTURES ENT., INC., TRISTAR PICTURES, INC., MEDIA RIGHTS CAPITAL, and QED INTERNATIONAL,<br><br>　　　　Defendants. | Case No. CV 13-4679-PJH<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY EXPERT REPORT OF JEFF ROVIN**<br><br>Date:　　July 23, 2014<br>Time:　　9:00 a.m.<br>Crtrm.:　3 |

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PROCEDURAL BACKGROUND | 2 |
| | A. Plaintiff's Single Count For Copyright Infringement. | 2 |
| | B. Defendants' Designation Of Expert Jeff Rovin. | 3 |
| | C. Plaintiff's Motion To Exclude Rovin. | 3 |
| III. | THE EXPERT OPINION OF JEFF ROVIN | 4 |
| IV. | ARGUMENT | 6 |
| | A. Rovin Provides Appropriate Expert Opinion In This Case. | 6 |
| | B. Rovin Is Uniquely Qualified As An Expert In This Case. | 8 |
| | C. Rovin's Testimony Cannot Be Excluded Merely Because Plaintiff Disagrees With His Conclusions. | 10 |
| | D. Rovin Properly Cited Works That Post-Dated Plaintiff's Screenplay. | 11 |
| | E. Rovin Did Not Ignore The Copyrightable Expression In Plaintiff's Screenplay. | 12 |
| | F. Exclusion Is Particularly Unwarranted Under The "Relaxed" *Daubert* Standard Applicable Here. | 13 |
| V. | CONCLUSION | 14 |

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Apple Computer, Inc. v. Microsoft Corp.*
    35 F.3d 1435 (9th Cir. 1994) .................................................................................................. 6

*Berkic v. Crichton*
    761 F.2d 1289 (9th Cir. 1985) ............................................................................................ 2, 6

*Bernal v. Paradigm Talent And Literary Agency*
    788 F. Supp. 2d 1043 (C.D. Cal. 2010) ............................................................................. 6, 9

*Bethea v. Burnett*
    2005 WL 1720631 *12 (C.D. Cal. June 28, 2005) ........................................................... 8, 11

*Bissoon-Dath v. Sony Computer Entertainment America, Inc.*
    694 F.Supp.2d 1071 (N.D. Cal. 2010) .................................................................................. 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
    509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ................................................ 11, 13

*DSU Medical Corp. v. JMS Co.*
    296 F.Supp.2d 1140 (N.D. Cal. 2003) ................................................................................ 11

*F.T.C. v. Connelly*
    2007 WL 6492913 *2 n.2 (C.D. Cal. Aug. 10, 2007) ......................................................... 14

*Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*
    462 F.3d 1072 (9th Cir. 2006) ......................................................................................... 6, 13

*Gable v. NBC*
    727 F.Supp.2d 815 (C.D. Cal. 2010) ............................................................................ passim

*Goldberg v. Cameron*
    787 F.Supp.2d 1013 (N.D. Cal. 2011) .............................................................................. 7, 8

*Kennedy v. Collagen Corp.*
    161 F.3d 1226 (9th Cir. 1998) ............................................................................................ 11

*Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*, 900 F.Supp. 1287 (C.D.
    Cal. 1995) .......................................................................................................................... 7, 8

*Shaw v. Lindheim*
    919 F.2d 1353 (9th Cir. 1990) .............................................................................................. 6

*Stewart v. Wachowski*
    574 F.Supp.2d 1074 (C.D. Cal. 2005) .................................................................................. 9

*Volk v. United States*
    57 F.Supp.2d 888 (N.D. Cal. 1999) .................................................................................... 13

*Wild v. NBC Universal, Inc.*
   788 F.Supp.2d 1083, 1099-1100 (C.D. Cal. 2011) ................................................................. 7

*Wolkowitz v. Lerner*
   2008 WL 1885770 (C.D. Cal. Apr. 21, 2008) .......................................................................... 14

**FEDERAL STATUTES**

Fed. R. Evid. 701 ............................................................................................................................. 3

Fed. R. Evid. 702 ........................................................................................................................ 7, 9

Fed. R. Evid. 801 ............................................................................................................................. 3

Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Steve Wilson Briggs alleges in this action that the feature film *Elysium* ("Film") written and directed by Defendant Neill Blomkamp, the Oscar nominated writer/director of the hit film *District 9*, infringes his copyrights in a screenplay that he wrote entitled *Butterfly Driver*. Over and over again, federal courts in California have summarily adjudicated copyright infringement cases in which the works at issue share nothing more than generic, unprotectable plot ideas. Here too, Defendants' soon-to-be-filed motion for summary judgment will demonstrate that Blomkamp was unaware of Plaintiff and his screenplay when he wrote and directed *Elysium*, and that *Butterfly Driver* and Blomkamp's Film are utterly dissimilar stories with wholly unrelated plots, sequences of events, dialogue, characters, settings, and themes.

In support of their motion for summary judgment, Defendants will submit the expert opinion of Jeff Rovin. Rovin is a professional writer, editor, and columnist with decades of experience in the science fiction and action/adventure genres. He has extensive experience as an expert in high profile copyright infringement matters, and his qualifications as an expert in this area have been commended in at least one published opinion: *Gable v. NBC*, 727 F.Supp.2d 815 (C.D. Cal. 2010). Rovin has opined—and Defendants are confident the Court will agree—that there are no specific similarities in the expressive elements of *Butterfly Driver* and *Elysium*, forcing Plaintiff to strip all the details from his screenplay and the Film and compare the two works at the most general level of abstraction in an attempt to create the "illusion of similarity." Instead of comparing the details in *Butterfly Driver* and *Elysium*, Plaintiff is relegated to pleading amorphous similarities including, for example, that both works involve "dystopic Earth" and a space station for the rich.

Plaintiff's comparisons are frequently misleading; they do not accurately describe one or both of the parties' works. But regardless, Rovin explains that these generalized concepts are merely "stock" elements that can be found in numerous other novels, comic books, films, and television shows dating back decades. Even if these abstract ideas are shared by Plaintiff's and Defendants' works, they are not copyrightable expression on which an infringement claim can be

based. The fact that *Elysium* may share an abstract idea with *Butterfly Driver* does not evidence copying. "It merely reminds us that in Hollywood . . . there is only rarely anything new under the sun." *Berkic v. Crichton*, 761 F.2d 1289, 1294 (9th Cir. 1985).

Plaintiff's motion to exclude Rovin is meritless. Plaintiff incorrectly surmises that an expert in this case must be a copyright lawyer. The opposite is true. The Court in *Gable v. NBC* explained that copyright lawyers—including even the editor of the ubiquitous treatise, *Nimmer on Copyright*—are <u>unqualified</u> to perform a literary comparison in an infringement case. An expert in an infringement case like this is one with "specialized knowledge" of literature and film. As *Gable* concluded specifically about Rovin, he is amply qualified.

Plaintiff's attacks on the substance of Rovin's opinion are entirely unfounded and are not, in any event, a basis for excluding Rovin. All of Plaintiff's criticisms go to the weight of Rovin's opinion, not its admissibility. If Plaintiff disagrees with Rovin's conclusions, his remedy is to present contrary evidence and to cross-examine him, not an exclusionary order.

For the reasons discussed below, Defendants respectfully request that Court deny Plaintiff's motion in its entirety.

## II. PROCEDURAL BACKGROUND

### A. Plaintiff's Single Count For Copyright Infringement.

Plaintiff alleges that he is the author of a screenplay for an unproduced feature film entitled *Butterfly Driver*. (First Amended Complaint ("FAC") ¶¶ 15-17.) Plaintiff alleges that in 2007 he posted his screenplay on the website triggerstreet.com seeking feedback from other writers and industry professionals. (*Id.*, ¶ 18.) Plaintiff alleges that Defendants accessed his screenplay on triggerstreet.com and copied it in producing the 2013 film *Elysium* (the "Film"). (*Id.*, ¶ 23.) Plaintiff specifically accuses Blomkamp. He claims that a "young director (whose name escapes the Plaintiff)" praised the script on triggerstreet.com and "MAY have been Defendant, Neill Blomkamp." (*Id.*, ¶ 26.) Plaintiff's First Amended Complaint alleges a single cause of action for copyright infringement against Blomkamp and various entities alleged to have financed, produced, and distributed *Elysium*.

Defendants vehemently deny Plaintiff's allegations. The evidence is incontrovertible that Blomkamp had never heard of triggerstreet.com before this suit was filed; that Blomkamp did not have access to Plaintiff's screenplay when he wrote and directed *Elysium*; and that in any event, the plot, sequence of events, dialogue, settings, characters, and other protectable elements of these two works are utterly dissimilar.

### B. Defendants' Designation Of Expert Jeff Rovin.

Defendants timely designated Jeff Rovin as a literary expert with extensive knowledge and expertise in science fiction works. A copy of Rovin's Report is attached to the accompanying Declaration of Jeff Rovin as **Exhibit 1** (hereinafter, the "Report"). As discussed more below, Rovin's opinion is that whatever similarities can be found between *Butterfly Driver* and *Elysium* are generic, "stock" ideas that are present in many science fiction works.

Plaintiff did not designate a rebuttal expert. Instead, after the deadline had passed for designation of rebuttal experts, Plaintiff filed his own personal "rebuttal" to Rovin, which he recently amended. (Dkt. Nos. 43, 47.)

Plaintiff's rebuttals are not admissible for any purpose. They are improper lay opinion and hearsay. *See* Fed. R. Evid. 701, 801. But to conserve the Court's and the parties' time and resources, Defendant forewent moving to strike the rebuttals.

### C. Plaintiff's Motion To Exclude Rovin.

Plaintiff's motion to exclude Rovin, which is essentially a motion *in limine*, is deficient on its face. Plaintiff failed to attach Rovin's Report to the motion as needed for the Court to rule. The motion is also premature. The Court vacated the trial date and pretrial conference date pending its ruling on Defendants' upcoming summary judgment motion. (Dkt. No. 37.) The Court's scheduling order ostensibly did not contemplate the filing of motions *in limine* at this time. Nevertheless, Defendants will address the merits of the motion because they intend to rely in part upon Rovin's opinion in moving for summary judgment and Plaintiff would have an opportunity to challenge Rovin's opinion at that time.

## III. THE EXPERT OPINION OF JEFF ROVIN

Jeff Rovin has been a professional writer since 1971.  (Report at 3.)  He has written dozens of non-fiction and encyclopedic books on film history, fantasy, and science fiction, such as *A Pictorial History of Science Fiction Films*; *The Laserdisc Film Guide*; *Aliens, Robots, and Spaceships*, and others.  He has written numerous fictional works in science fiction and other genres.  He is also a film columnist for the science fiction magazines *Analog* and *Omni* and editor of the science fiction magazines *Moonraker* and *Alien*.  (*Id.*)

Rovin's publications are listed beginning at page 81 of his Report.  The copyright infringement matters in which he served as an expert in the past five years are listed at pages 92 to 93 of the Report.

As discussed more below, it is common in copyright infringement cases to designate an expert to testify to the presence or lack of substantial similarity between two works.  Rovin does opine on the lack of substantial similarity between *Butterfly Driver* and *Elysium*, but he additionally provides a related opinion for which he is uniquely qualified, and which will assist this Court in deciding the case.

Courts comparing works under the extrinsic test for substantial similarity consider whether the elements of the plaintiff's work that were allegedly copied are present in other works.  (*See* Section IV.A *infra*.)  This aids in identifying the unoriginal, non-protectable elements of the plaintiff's work that must be "filtered out" when determining substantial similarity.  (*See* Section IV.A *infra*.)

Rovin draws upon his extensive knowledge of science fiction literature and films to show that the elements of *Butterfly Driver* which Plaintiff alleges were copied by *Elysium* are, in fact, nothing more than stock elements in the science fiction genre.  Rovin summarizes *Butterfly Driver* and *Elysium* at pages 4 to 7 of his Report and notes the complete dissimilarity between the plots, dialogue, characters, settings, and themes of the works.  With respect to the purported similarities that Plaintiff alleges in his pleading, Rovin opines and shows: (1) that Plaintiff invented several of the claimed similarities by mischaracterizing his screenplay or the Film; (2) that any similarities which do exist are only at an extremely abstract level; and (3) that the abstract ideas that *Butterfly*

*Driver* and *Elysium* share are common in science fiction works.  Rovin states:

> [T]he only way Plaintiff can identify similarities is by distilling the works into abstract elements, which he scrubs of detail and context before making comparisons.  This exercise could be performed with any two films, particularly those in the somewhat formulaic big-budget action/adventure and science fiction genre, to create the false illusion of similarity.

(Report at 7.)

For example, Plaintiff alleges that *Elysium* copies his "unique" idea of a "satellite for the super-rich" which orbits a "dystopic" Earth.  (Report at 8, 21.)  Rovin demonstrates that these settings are entirely unoriginal, even cliché, in science fiction works.  (*Id*. at 8-44.)  Rovin shows, moreover, that the similarities in the settings of *Butterfly Driver* and *Elysium* stop at the level of these abstract ideas.  Neither Earth nor the space station in *Elysium* resembles Plaintiff's screenplay in the least.  (*Id.* at 16-20, 29-30, 45-46.)

Similarly, Rovin scrutinizes the plot elements from *Butterfly Driver* that Plaintiff claims were copied.  Plaintiff alleges, for instance, that his screenplay and the Film both depict main characters who suffer from debilitating headaches and who have a "keepsake" necklace that is important to them.  Rovin demonstrates that these ideas can be found in a number of well-known past works and are therefore not copyrightable even if they were appropriated by *Elysium* (which of course they were not).  (Report at 63-71.)  Rovin concludes:

> Any elements that the works of Plaintiff and Defendants happen to share are *scenes a faire* or are basic ideas that are alike only at the most abstract, general level of comparison and are exceedingly common in the prior art.  The two works bear no resemblance to each other and can only be made to <u>appear</u> similar by erroneously comparing shared ideas at the most abstract level.

(Report at 73 (emphasis in original).)

## IV. ARGUMENT

### A. Rovin Provides Appropriate Expert Opinion In This Case.

Plaintiff does not argue that expert testimony is improper in a copyright infringement case and correctly so. Ninth Circuit case law permits the introduction of expert testimony comparing works under the "extrinsic test" for substantial similarity. *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985) (holding that "[s]ince it is an extrinsic test, analytic dissection and expert testimony are appropriate"); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994); *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990); *see also Bissoon-Dath v. Sony Computer Entertainment America, Inc.*, 694 F.Supp.2d 1071, 1079 (N.D. Cal. 2010) ("Analytic dissection of a work and expert testimony are appropriate to the extrinsic test").

Rovin's opinion supports that the only points of similarity between *Butterfly Driver* and *Elysium*, if at all, are abstract ideas that can be found in other science fiction books, comics, films, television shows, and videogames. Opinion testimony on this subject is relevant and appropriate in determining substantial similarity under Ninth Circuit standards. The extrinsic test for copyright infringement "focuses on 'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events' in the two works." *Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (citation omitted). Under that extrinsic test, courts consider "only whether 'the <u>protectable elements, standing alone</u>, are substantially similar.'" *Id.* (emphasis in original) (citation omitted). In other words, courts "filter out and disregard the non-protectable elements in making [the] substantial similarity determination." *Id.*

In deciding whether an element is unoriginal and non-copyrightable and should be "filtered out" when comparing two works, courts will consider whether the same element is present in other works. If so, this supports that the element is a non-copyrightable idea instead of protected expression. *See*, *e.g.*, *Bernal v. Paradigm Talent And Literary Agency*, 788 F. Supp. 2d 1043, 1065 (C.D. Cal. 2010) (holding that "the use of a dead narrator is not a unique element" because "[c]lassic movies such as *Sunset Boulevard*, as well as contemporary favorites such as *American Beauty*, use disembodied voiceovers"); *Wild v. NBC Universal, Inc.*, 788 F.Supp.2d 1083, 1099-

1100 (C.D. Cal. 2011) (holding that "the use of a . . . bizarre, dark or threatening carnival, is not an element that is original to Plaintiff's work" because the concept "was used almost 50 years ago, if not earlier, by Ray Bradbury in *Something Wicked This Way Comes*," and that the idea of magical disappearance and reappearance is not copyrightable because "it is a favored mode of transportation in the *Harry Potter* series" and in TV shows like *Star Trek*); *Gable*, 727 F.Supp.2d at 842 (holding that the "visual effect of a piece of paper magically floating back to someone is not a protectable expression" because the "effect is commonly used in works that involve themes of serendipity and fate").

In *Goldberg v. Cameron*, 787 F.Supp.2d 1013 (N.D. Cal. 2011), the plaintiff alleged that the *Terminator* films infringed his copyrights. *Id.* at 1016-1017. In granting summary judgment, the Court found that the "most important similarity between the works involves an unprotectable element: the general idea of a futuristic conflict between man and machines, specifically computers and robots." *Id.* at 1020. The Court reasoned:

> That theme is commonplace in science fiction. Indeed, the notion of intelligent machines evolving into conscious beings at war with human beings was originally developed in Mary Shelley's classic Frankenstein (1919). Other portrayals of artificial intelligence at war with humans include Stanley Kubrick and Arthur C. Clarke's 2011: A Space Odyssey (1968), the movie Colossus: The Forbin Project (1970), and Philip K. Dick's story "Second Variety" (1952) . . . .

*Id.* (emphasis added).

Because evidence of other works is relevant to show that an element of the plaintiff's work is not original, testimony from a witness with "specialized knowledge" of literature and film can "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). In *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*, 900 F.Supp. 1287 (C.D. Cal. 1995), the plaintiff alleged that a Honda television commercial infringed its copyrights in sixteen James Bond films by using a chase scene reminiscent of a classic Bond film. The plaintiff argued that the chase scenes from its Bond films were original and protectable. The

defendant argued that they were comparable to other spy films and therefore generic.  "Both sides provide[d] expert testimony to support their claims that such scenes are distinctive or generic . . . ."  *Id.* at 1294.  The experts included several writers, a professor at the USC School of Cinema, a film producer, and a film director.  *Id.*  The District Court accepted the testimony of all of the experts but was more persuaded by the plaintiff's experts and concluded based on that testimony that "James Bond films are unique in their expression of the spy thriller idea" and "bring the various elements . . . together in a unique and original way" that is copyrightable.  *Id.* at 1295.

As in the above cases, Rovin possesses specialized knowledge of science fiction and action/adventure works which aids the Court in determining whether the alleged similarities between Plaintiff's screenplay and the Film are protected expression or are generic, non-copyrightable ideas.  His methodology is appropriate and his opinion is admissible.  *See Metro-Goldwyn-Mayer*, 900 F.Supp at 1294-1295; *Goldberg*, 787 F.Supp.2d at 1020; *accord Bethea v. Burnett*, 2005 WL 1720631 *12 (C.D. Cal. June 28, 2005) (holding that "'stock elements' are not protectable and should not be considered in evaluating substantial similarity"); *Gable*, 727 F.Supp.2d at 841 (granting summary judgment where plaintiff's list of similarities "focuses on several unprotectable stock elements or *scenes-a-faire* that are scattered throughout the works").

B. **Rovin Is Uniquely Qualified As An Expert In This Case.**

Plaintiff argues that Rovin is not qualified to testify because he is not a copyright lawyer.  Mot. at 9.  Plaintiff states that "[a] typical EXPERT in a copyright matter would be a copyright or intellectual property attorney."  *Id.*  Plaintiff has the law backwards.

*Gable v. NBC Universal* is remarkably on point.  In a copyright infringement case involving the television show *My Name Is Earl*, the plaintiff sought to introduce the testimony of David Nimmer, a "graduate of Yale Law School," a partner at the Los Angeles firm Irell & Manella, a professor of copyright law, and the "current author of the preeminent copyright treatise *Nimmer on Copyright*."  727 F.Supp.2d at 833.  The defense expert was Jeff Rovin.  *Id.* at 837.

The *Gable* Court excluded Nimmer's opinion.  The Court found "that Nimmer undoubtedly is an expert in the field of copyright law."  *Id.* at 833.  But, the Court noted, "an expert cannot offer his legal opinion as to whether a triable issue of fact exists regarding copyright

infringement; such an analysis is the exclusive province of the Court." *Id.* Instead, Nimmer "was tasked with performing a literary analysis of two fiction works." *Id.* Concerning that analysis, he "offer[ed] little explanation as to how his legal expertise qualifies him to compare a screenplay and a television series." *Id.* Lacking was "any indication that Nimmer has experience, knowledge, training, or education in the literary field—for example, there is no evidence that Nimmer has ever worked as a film critic, a publisher, an English professor, an editor or director, that Nimmer writes fiction works, or even that Nimmer is an avid movie buff or television-watcher." *Id.* at 833-834.

Conversely, the Court found that Rovin was well qualified as an expert due to his extensive experience as a professional writer of fiction and non-fiction works. *Id.* at 837. The Court noted that Rovin had "extensive knowledge of films and books related to karma, fate, and related topics"—topics at issue in the parties' works—and that his "significant knowledge and experience in the literary field" qualified him "to render an opinion on whether the expressive elements of *Karma!* and *Earl* are substantially similar." *Id.*

*Gable* is in line with other case law holding that literary experts possess the necessary qualifications for rendering an opinion on the presence or lack of substantial similarity between two works. *See*, *e.g.*, *Stewart v. Wachowski*, 574 F.Supp.2d 1074 n.130 (C.D. Cal. 2005) (admitting testimony of an English professor on the subject of substantial similarity); *Bernal*, 788 F.Supp.2d at 1061 (admitting testimony of a publisher with "experience in reviewing and comparing hundreds of manuscripts" and a Writers Guild of America arbiter who resolves credit disputes and had written films, television movies, and television pilots").

Rovin is more than qualified in this case, just as he was in *Gable*. He has written professionally for decades with a focus in the science fiction and action/adventure genres in which *Butterfly Driver* and *Elysium* fall. He is the author of encyclopedic works on science fiction and science fiction films. He has served as a film columnist and editor for science fiction magazines. Rovin's decades of experience in the precise area of literature and film at issue in this case affords him "specialized knowledge" within the meaning of Fed. R. Evid. 702. Indeed, it would be difficult to find a witness more suited than Rovin to the task of informing the Court whether

1 Plaintiff is alleging the copying of ideas that are common in science fiction generally.

2    **C.    Rovin's Testimony Cannot Be Excluded Merely Because Plaintiff Disagrees
3          With His Conclusions.**

4    Aside from Rovin's qualifications, Plaintiff's chief complaint to which he devotes most of
5 his motion concerns various conclusions that Rovin reached in his Report.  Plaintiff contests
6 Rovin's description of some of the past books, comics, and films that Rovin describes in his
7 Report.  (Mot. at 2-7.)  Plaintiff also contests Rovin's conclusion that certain elements constitute
8 *scenes a faire*, such as the "idea of people trying to sneak onto a space habitat."  (*Id*. at 8-9.)

9    Notably, Plaintiff only takes issue with Rovin's descriptions of a few of the dozens of
10 science fiction works described in the Report.  Plaintiff has no response for the vast majority of
11 Rovin's examples, which show that elements of *Butterfly Driver* which Plaintiff describes as
12 "unique" are in truth common in other science fiction works.

13    Further, Plaintiff fails to submit evidence supporting that Rovin's descriptions are
14 inaccurate.  The motion is based solely on Plaintiff's self-serving statements.

15    Rovin has provided a declaration with this opposition refuting Plaintiff's claims.  That
16 declaration reaffirms that Rovin's descriptions of prior science fiction works can and will be
17 substantiated by the source material.  (Rovin Decl., ¶¶ 7, 10.)  Rovin also takes the two works that
18 Plaintiff's motion focuses on most—*Space Platform* and *WARP*—and provides additional source
19 material to show that it is actually Plaintiff who is mischaracterizing the works.  (*Id.*, ¶¶ 8-9.)

20    All of the foregoing aside, Plaintiff's attacks on the accuracy of Rovin's statements, right
21 or wrong, are not a basis to exclude him.  These concerns go to the <u>weight</u> of the opinion, not its
22 admissibility.  As the Ninth Circuit has explained:

> Judges in jury trials should not exclude expert testimony simply because they
> disagree with the conclusions of the expert. The *Daubert* duty is to judge the
> reasoning used in forming an expert conclusion. The test is whether or not the
> reasoning is scientific and will assist the jury. If it satisfies these two requirements,
> then it is a matter for the finder of fact to decide what weight to accord the expert's
> testimony. In arriving at a conclusion, the factfinder may be confronted with

> opposing experts, additional tests, experiments, and publications, all of which may increase or lessen the value of the expert's testimony. But their presence not preclude the admission of the expert's testimony—they go to the weight, not the admissibility.

*Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230-1231 (9th Cir. 1998).

The Court's "sole purpose" in assessing the admissibility of Rovin's opinions is to "determine the reliability of [his opinion] through a preliminary assessment of the methodologies underlying the opinion." *DSU Medical Corp. v. JMS Co.*, 296 F.Supp.2d 1140, 1147 (N.D. Cal. 2003), citing *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 592-593, 113 S.Ct. 2786, 125 L.E.2nd 469 (1993)  "It is not the trial court's role to determine whether the expert's conclusions are actually correct." *Id.*; *see also id.* (holding that the "district court is not 'to make ultimate conclusions as to the persuasiveness of the evidence . . . .'").

Plaintiff's assertion that Rovin "fraudulently" and "dishonestly" described the works that are cited in his Report does not address the methodology of Rovin's opinion.  It addresses the correctness or persuasiveness of Rovin's conclusions.  Plaintiff's remedy, if he disputes the veracity of Rovin's opinion, is not an exclusionary order.  "The proper way for a party to challenge an expert in such a situation . . . is through cross-examination of the expert." *DSU Medical*, 296 F.Supp.2d at 1148.

Exclusion of Rovin's opinion on the basis that Plaintiff disagrees with the opinion is obviously improper, and the motion should be denied.

### D. Rovin Properly Cited Works That Post-Dated Plaintiff's Screenplay.

At page 8 of the Motion, Plaintiff criticizes Rovin for relying upon two works that do not pre-date his screenplay—*i.e.*, the movie *WALL-E* and the video game *Mass Effect*.  Plaintiff's criticism is off base.  Although courts often look to preexisting works to determine whether an idea from the plaintiff's work is unoriginal and unprotectable, works published after the plaintiff's work can also show that an element is "stock" in a certain genre and therefore unprotectable. *See Bethea v. Burnett*, 2005 WL 1720631 *12 (holding that stock elements are not considered in evaluating substantial similarity).

*WALL-E* is a good example.  In that animated film, the population of Earth leaves the planet to escape pollution and moves aboard a posh space station.  (Report at 42.)  That underlying premise closely resembles Plaintiff's *Butterfly Driver*.  Though *WALL-E* was released in 2008, after Plaintiff wrote his screenplay, *WALL-E* still evidences that the idea of a polluted Earth from which civilization has escaped by living aboard a space station orbiting the planet is a common idea that falls on the unprotected side of the idea/expression dichotomy.  It also evidences that by the time *Elysium* was released five years later, this premise of a polluted Earth, abandoned in favor of a space station, was in the public domain.

Moreover, *WALL-E* and *Mass Effect* are just two of the dozens of works that Rovin relies upon.  The Court can disregard them if it is so inclined without excluding the entirety of Rovin's opinion.

E.   **Rovin Did Not Ignore The Copyrightable Expression In Plaintiff's Screenplay**.

Plaintiff argues that Rovin ignores the copyrightable expression in his screenplay and focuses solely on the underlying ideas in opining that Plaintiff is seeking protection for generic elements.  (Mot. at 7.)  Plaintiff simply misses the point of Rovin's analysis.

Rovin does not ignore the protectable expression in *Butterfly Driver*.  Throughout the Report, Rovin discusses how *Butterfly Driver* and *Elysium* express certain ideas, including the ideas of a futuristic Earth and a satellite world.  (*See*, *e.g.*, Report at 4-7, 16-20, 29-30, 45-46, 50-51, 58-59, 61-62, 68, 70-71.)  Rovin also studies how the works express certain plot devices that Plaintiff emphasizes, such as the male leads suffering from headaches.  (*Id.*)  Rovin finds, however, that there simply are no similarities in the protectable expression of *Butterfly Driver* and *Elysium*.  The only similarities that can be found are abstract ideas which are common in science fiction and would not be protectable even if they were copied.

For example, Rovin discusses how *Butterfly Driver* and *Elysium* express their respective settings on Earth very differently.  (Report at 16-20.)  He shows that the only way for Plaintiff to allege that the settings are similar is to distill them down into the abstract description that Earth in both stories is "dystopic."  (*Id.* at 8-20.)  Rovin then demonstrates that even if "dystopia" is a shared element in the two stories, it is common to the point of being cliché in science fiction.  (*Id.*)

Similarly, Rovin shows that Plaintiff and Defendants express the idea of a satellite station differently in *Butterfly Driver* and *Elysium*. (Report at 29-30, 45-46.) In Plaintiff's screenplay, the satellite is open to anyone who can afford it; those on Earth are encouraged to visit; and shuttles travel daily between Earth and the satellite. (*Id*.) By contrast, in *Elysium*, the space station is exclusive to an elite class, who are completely segregated from the underprivileged population on Earth. Residents of Earth must fly unauthorized shuttles to try to reach "Elysium," often being shot down by missiles in the process. (*Id.*) Rovin demonstrates that these two settings are not at all similar except when described abstractly as "satellites for the super-rich." (*Id.* at 21-59.) This bare idea, Rovin shows, is common in other science fiction works. (*Id.*)

Rovin performs the same analysis with Plaintiff's comparisons of random, scattered plot devices and shows that those comparisons do not withstand scrutiny when the details of the works are considered. For instance, in *Butterfly Driver*, the protagonist suffers from a chronic condition that causes "ice pick" headaches. In *Elysium*, the protagonist has no such condition; rather, after a computer program is downloaded into his brain using a futuristic *Matrix*-like device, a defense mechanism in the software code causes him to suffer seizures. (Report at 63-68.) These plot devices are incomparable. Once again, therefore, Plaintiff must define the similarity at the most abstract level—*i.e.*, a protagonist who suffers "headaches"—to try to create an illusion of similarity. (*Id*.) And again, Rovin shows that the bare idea of a character who suffers headaches is common in prior works. (*Id.*)

Rovin does not ignore the copyrightable expression in *Butterfly Driver*, as Plaintiff argues. He analyzes it, but finds that the only similarities are abstract ideas that *Butterfly Driver* and *Elysium* share with countless other works. This is precisely how courts analyze substantial similarity. *See generally Funky Films*, 462 F.3d 1072; *Gable*, 727 F.Supp.2d 815.

F. **Exclusion Is Particularly Unwarranted Under The "Relaxed" *Daubert* Standard Applicable Here.**

Because no party in this case requested a jury trial, the *Daubert* standard is "relaxed" in this case. *See Volk v. United States*, 57 F.Supp.2d 888, 896 n.5 (N.D. Cal. 1999) ("[T]he *Daubert* gatekeeping obligation is less pressing in connection with a bench trial"); *Wolkowitz v. Lerner*,

2008 WL 1885770 (C.D. Cal. Apr. 21, 2008) (noting the "relaxed gatekeeping obligations this Court has in connection with a bench trial").  Accordingly, even if the Court had questions about Rovin's methodology or the sufficiency of the facts he relies upon, exclusion is unnecessary.  As stated by the District Court in *F.T.C. v. Connelly*:

> Because this is a bench trial the Court need not preclude the experts' testimony because of potential problems with the sufficiency of the facts or data relied on or the reliability of the methods used to formulate their opinions. Rather the Court can evaluate the experts' testimony against the Rule 702 standard as they testify.

2007 WL 6492913 *2 n.2 (C.D. Cal. Aug. 10, 2007).

## V.   CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court deny Plaintiff's motion in its entirety.

DATED: June 26, 2014                            Respectfully submitted,

KINSELLA WEITZMAN ISER
KUMP & ALDISERT LLP


By:  */s/ Gregory P. Korn*
Gregory P. Korn
Attorneys for Defendants
NEILL BLOMKAMP, SONY PICTURES
ENTERTAINMENT INC., TRISTAR
PICTURES, INC., MEDIA RIGHTS CAPITAL II,
L.P., and QED INTERNATIONAL, LLC

10021.00015/218853

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850