1

Steve Wilson Briggs
681 Edna Way
San Mateo, CA 94402
Telephone: (510) 200 3763
Email: snc.steve@gmail.com

2

3

**FILED**

JUL - 9 2014

4

Pro Se Plaintiff

5

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

6

7

8

# UNITED STATES DISTRICT COURT

9

## NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

10

11

Case No.: CV 13-4679 PJH
Judge: Honorable Phyllis J. Hamilton

12

STEVE WILSON BRIGGS

**PLAINTIFF'S NOTICE OF MOTION
AND MOTION TO COMPEL
PRODUCTION OF DOCUMENTS;
MEMORANDUM OF POINTS AND
AUTHORITIES**

13

Plaintiff

14

vs.

15

NEILL BOMKAMP, SONY PICTURES
ENT., INC., TRISTAR PICTURES, INC.,
MEDIA RIGHTS CAPITAL II LP (AKA
MEDIA RIGHTS CAPITAL,
& MRC), and QED INTERNATIONAL

Date:       August 13th, 2014
Time:       9:00 a.m.
Courtroom:  3
Judge:      Hon. Phyllis J. Hamilton

16

17

18

Defendants

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION**

## NOTICE OF MOTION TO COMPEL

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** on August 13th, 2014, or as soon thereafter as the matter may

be heard, Plaintiff, Steve Wilson Briggs, moves this Court for action in the courtroom of the

Honorable Phyllis J. Hamilton, Oakland Courthouse, 3rd Floor, 1301 Clay Street, Oakland, CA.

   **Statement of Purpose.** This motion will be based on the Memorandum Of Points And

Authorities, and the Proposed Order, filed herewith, moving the Court to compel the Defendants

produce  documents requested in Plaintiff's First Set of Requests For Production of Documents.

<u>Plaintiff has made good faith effort to obtain thes documents from the Defense</u>. The Court has this

authority under F.R.C.P. Rule 37(a) (1) & Rule 37(a)(2)(B)(iii), and the Inherent Powers Doctrine.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### PREFATORY NOTE:

- This motion was originally intended to compel for BOTH document production AND

Responses to interrogatories. But as the Plaintiff neared completion of composing this motion, he

learned it is customary to present each disputed interrogatory, as written, and discuss the merits of

each. With motions for summary judgment due soon, there was simply no time to add so many

interrogatories and develop their merits. Thus, the Plaintiff will only move the Court to compel for

document production. However, the significant interrogatory issues remain included in this motion

as they directly pertain to the Defendants' motives for withholding the requested documents.

- In response to Plaintiff interrogatories several unexpected revelations came to light:

1) Defendant Neill Blomkamp made an extraordinary admission concerning Film re-editing

   confirming key allegations contained in the Plaintiff's first Amended Complaint (FAC);

2) Under penalty of perjury Defendant MRC made false statements (concealing entities involved

   in the infringement) confirmed by other Defendants' admissions, violating 18 U.S.C. 1001.

3) Defendants admitted Simon Kinberg helped re-write Elysium, contributing to infringement.

- Due to the gravity of these issues, they are addressed before the general facts of this motion

Under the headings ISSUE ONE, ISSUE TWO, and ISSUE THREE.

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION**

**NATURE OF MOTION**

Under 17 U.S. CODE § 106  Plaintiff has the EXCLUSIVE RIGHT to: 1) reproduce, 2) prepare derivatives, 3) **distribute** copies to the public, 4) perform the copyrighted work publicly, and 5) display the copyrighted work publicly.

The Plaintiff filed suit against the Defendants for infringing upon his exclusive rights.

In response to Plaintiff's interrogatories and requests for production of documents, the Defendants have provided little more than obfuscation, circling their wagons to hide facts –such as the name of the Film's actual distributor, complicit in violating Plaintiff's exclusive rights.

Concerning documents and interrogatories, Defendants have:

1) provided all or part of only 2 of Plaintiff's 11 requests.

2) refused to answer, or provided evasive non-answers to many Plaintiff  interrogatories;

3) provided false statements under penalty of perjury, violating 18 U.S.C. 1001.

**Thus, the Plaintiff appeals for Court intervention in this Motion To Compel.**

**The Plaintiff has made good-faith effort** to obtain reasonable documents from the Defendants, without success –including an email exchange in mid June, 2014, in which the Defense Asked the Plaintiff to agree to a stipulated protective order concerning the documents. Plaintiff did not agree, as he wished to keep this a matter of open public record.

**ISSUE ONE**

In his responses to Plaintiff's Interrogatories Defendant Blomkamp admitted that video editing of the Film did not finish until June, 2013. This admission is very significant, because on **page 28** of the Plaintiff's first Amended Complaint (FAC) Plaintiff made the fairly bold prediction/allegation that between June and July of 2013, after learning of the Plaintiff's imminent lawsuit (the Plaintiff contacted the Defense Counsel June 3rd, 2013 –as well as other L.A. attorneys) the Defendants had the Film re-edited to get remove or alter the film's headache scenes.

When the Plaintiff wrote the FAC, all published reports said the Film was finished, edited, and ready to go, between February and March 2013. In the attached articles, from February 2013, Blomkamp himself says the Film was finished and sitting on a shelf (waiting for its August release) –with final special effects touches to be added in April 2013. **[See Exhibit A].**

– 3 –

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION**

1   But four months later, June 2013, hearing of this lawsuit (Plaintiff speculates), Blomkamp

2   went back and re-edited the Film, <u>just weeks before the film's release</u>. There are still no published

3   reports that Blomkamp re-edited the Film in June.

4   Blomkamps' admission is a smoking gun, adhering to and confirming Plaintiff's allegations.

5   **Plaintiff believes the Defendants withheld requested documents due to Blomkamp's admission**

6   To confirm FAC allegations that The Defendants re-edited the Film to hide infringement,

7   Plaintiff's 'No. 4' request to the Defendants was to produce: "<u>All documents (emails, texts, memos,</u>

8   <u>letters or any other communication) pertaining to Elysium between Defendant Neill Blomkamp and</u>

9   <u>Elysium's film editors Julian Clarke and Lee Smith between June 2011 and August 9th, 2013.</u>"

10   Clarke and Smith would have edited the Film on Blomkamp's order. Thus, these emails,

11   texts, etc, might show why Blomkamp had the film re-edited –and confirm Plaintiff's allegations.

12   The Defendants objected to the request, stating: "<u>it seeks the production of documents that</u>

13   <u>are neither relevant nor reasonably likely to lead to the discovery of admissible evidence.</u>"

14   Plaintiff believes these documents are relevant and very likely to produce evidence.

## ISSUE TWO

16   This second issues concerns false statements Defendant MRC made answering interrogatory

17   No. 3 from the Plaintiff, which read: **"Under what business name or names (please provide all)**

18   **did MRC sign any and all contracts and/or agreements related to making the film Elysium?"**

19   The interrogatory required Defendant provide ALL names used on ALL agreements.

20   Defendant, MRC's complete response read: **"An entity named MRC Distribution**

21   **Company L.P., entered into various agreements in connection with the Film, including, inter**

22   **alia, a distribution deal agreement with TriStar Pictures, Inc."**

23   Thus, under penalty of perjury, MRC claimed that only the MRC entity known as MRC II

24   Distribution Company signed all agreements related to the Production of the Film.

25   But Defendants Neill Blomkamp and QED International, in their interrogatory responses,

26   <u>claim they signed NO contracts with MRC Distribution Company.</u> Rather, Defendant QED

27   International claims to have ONLY signed agreements with **Asgari, Inc.**, whom QED describe as

28   an "affiliate" of **MRC II Holdings, LP.** while Defendant Blomkamp says he signed his writing

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION**

contract with an MRC "entity" named **Oaktree Entertainment, Inc.**, and signed his directing deal with **MRC II Holdings L.P.** (a previously unknown entity). Blomkamp did not know Media Rights Capital's legal name.

Only Defendant TriStar Pictures, Inc. has an agreement with MRC II Distribution Company.

The admissions of Defendants Blomkamp and QED confirm Defendant MRC made false statements, claiming MRC II Distribution Company to be the sole MRC entity that entered all agreements related to the production of the Film. Thus, violating 18 U.S.C. 1001.

### U.S.C. Title § 1001 - STATEMENTS OR ENTRIES GENERALLY

**(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—**

**(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;**
**(2) makes any materially false, fictitious, or fraudulent statement or representation; or**
**(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;**

**shall be fined under this title, imprisoned not more than 5 years...**

### MORE FALSE STATEMENTS AND SCHEMES FROM DEFNDANT MRC

Plaintiff interrogatory No. 22 to Defendant MRC asked the Defendant to provide information concerning various MRC entities and their administrators. MRC objected to the interrogatory. Thus, plaintiff resorted to Bizpedia.com, where he learned **Oaktree Entertainmant, Inc.**, and **Asgari Inc.**, are not just "affiliates" of MRC as they proffer. Scott Tenley, MRC's President of Business affairs, is also the President of Oaktree Entertainment, Inc., and he is the Director of Asgari Inc., and a partner in MRC II Distribution Company LP. **[See Exhibit B]** These corporations are effectively one company.

In the Defendants' case filings "Certification Of Interested Entities Or Parties", and in MRC's separate case filing "Defendant Media Rights Capital II LP's Certification Of Interested Entities Or Parties" Defendant, Media Rights Capital II LP, admitted it is the *parent* and MRC II Distribution Company is its *subsidiary*; but no other MRC "entities" or "affiliates" are mentioned.

The conflict then develops in MRC's response to Plaintiff's 20th interrogatory, as Defendant MRC states: ""Media Rights Capital" is the name colloquially used in the press and in credits for projects that MRC II Distribution Company L.P. finances and/or produces."

In the above statement, the parent (Defendant, Media Rights Capital II LP) claims

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION**

subsidiary, MRC II Distribution Company, produces films using the parent's identity.

The Plaintiff believes this is another false statement –or perhaps even perjury, as the parent's website proudly takes credit for all productions; on IMDb MRC (the parent) has 152 productions, while MRC II Distribution Company (subsidiary) has one (1) credit (earned in 2014).

- Plaintiff contends MRC's unseemly business structure gives rise and cover to criminality.

**NOTE: While the Plaintiff was in discussions with litigation investors, earlier this year (2014), investor, John Sherriff, explained that unethical businesses often name unfunded subsidiaries as the responsible "company" or "entity" for just such legal proceedings. He explained they do this to make it impossible for successful Plaintiffs to collect from the unfunded subsidiary.**

### ISSUE THREE

Plaintiff's interrogatory No. 20 to Defendant Blomkamp (and No. 17 to Defendant MRC) concerned Plaintiff's belief that Blomkamp's literary skills seem so undeveloped that the Film's producer, Simon Kinberg, renown screenwriter and "script doctor" (one who helps revise troubled screenplays), must have "script-doctored" Blomkamp's script.

To this, Blomkamp admitted that Kinberg **"…reviewed edits to the script and worked with me to develop ideas for revisions to the script."**

In response to Plaintiff's interrogatory to Defendant MRC, concerning Plaintiff's belief that Kinberg "script-doctored" Elysium's screenplay, Defendant MRC admitted  that Kinberg **"…assisted with a polish of the Film's screenplay during the later stages of writing."**

Both Defendants' admissions confirm that Simon Kinberg played a role in writing Elysium's screenplay. Simon Kinberg and Media Rights Capital are the primary producers of Elysium, a for-profit venture. Thus, Simon Kinberg played a material role in infringing on the Plaintiff's copyrighted property.

### GENERAL FACTS CONCERNING DOCUMENT PROD. & INTERROGATORIES

- The Plaintiff responded, thoroughly, to all of the Defendants' interrogatories.
- Plaintiff promptly produced and delivered perhaps 1000 pages of documents to Defendants.
- Plaintiff agreed to **8 out of 9** of the Defendants Requests For Productions of Documents,

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION**

1    •  Plaintiff objected to only one of the Defendants requests for production of documents.*

2 ## DEFENDANTS EVASIVE RESPONSES TO INTERROGATORIES

3      The Defendants provided "actual responses" to about 64% of the interrogatories –although

4 many of their responses did not address the interrogatory.  BUT when Plaintiff queried about

5 distribution he received consistently evasive answers.

6      Sony Pictures claimed its only role in producing Elysium was **"Defendant related**

7 **companies** (plural) **acquired the distribution rights to the Film and distributed the Film."** But

8 Sony Pictures would not identify the distributor.

9      When asked if TriStar Distributed the Film, TriStar answered, **"No. Defendant's related**

10 **company distributed the Film."** But TriStar did not volunteer that information.

11      In response to interrogatory No. 8, TriStar explained that MRC II Distribution Company did

12 not distribute the Film –but did not say who did.

13      Defendant MRC claims only that MRC Distribution company financed and produced the

14 Film. MRC was evasive about all other questions concerning its role in the Film or distribution.

15      Plaintiff acknowledges he asked the Defendants some tough, probing questions concerning

16 the measures Defendants took to verify their productions weren't infringement of other artists'

17 work, and how they responded to signs of infringement, etc.

18      Notable simple interrogatories Defendant Sony Pictures, Ent. Inc. would not answer are:

19 1)   "When (date) did you first read the screenplay Elysium?"

20 2)   "Is the following statement true?: "Sony Pictures Entertainment Inc. is the American

21     television and film production and distribution unit of Japanese multinational technology

22     and media conglomerate Sony,""*

23     **\*This quote appears prominently on Sony Picture's Facebook and Wikipedia pages.**

24      Defendants, Sony Pictures, MRC and TriStar gave standard objections to interrogatories

25 concerning Kevin Spacey'as and Dana Brunetti's "triggerstreet.com" –the website Plaintiff alleges

26 Defendant(s) accessed his screenplay in 2007.

27 ## DEFENDANTS REFUSAL TO PRODUCE DOCUMENTS:

28      Plaintiff's made 11 requests for production of documents, drawn from facts and allegations

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION**

1  of the FAC. [*Plaintiff Requests For Production oF Documents*, **See Exhibit C**]

2     Eight days before the discovery deadline, The Defendants asked the Plaintiff to agree to a

3  stipulated protective order concerning the documents Plaintiff requested. The Plaintiff would not

4  agree to the protective order, wishing to keep all facets of the case in the public record.

5     On the discovery deadline the Defendants provided four (1 incomplete, and 1 possibly

6  falsified) of the Plaintiff's requests for production. The documents the Defendants provided were:

7     1) Numerous drafts of Defendants' screenplay (satisfying request **No. 1 & 2**).

8     2) Two contracts: 1) MRC II Distribution Company & TriStar; 2) Oaktree Ent. Inc. & Sable)*

9        *Plaintiff requested copies of ALL contracts between ALL Defendants pertaining to
         the Film. MRC II Holdings did not produce its contract with Blomkamp. Nor did
10       QED International produced its contract with Asgari (an MRC "affiliate").

11    3) A purported editing schedule (satisfying request **No. 9**).*

12       *Plaintiff believes the schedule is falsified as it is contradicted by Defendant
         Blomkamp's numerous published statements.**[See Issue One & Exhibit A]**

13

14                    CONCESSIONS AND IMPERATIVE DOCUMENTS

15    Plaintiff will concede request **No. 5** and **No. 7** (above) is a protected as under the work

16  product doctrine, and concedes that requests **No. 3** and **No. 8** are overbroad. Although Plaintiff

17  believes request **No. 10** and **11** are reasonable and relevant, he will concede on these items, too.

18    However, the following two documents request are relevant and imperative:

19    1) **No. 4**: all exchanges between Blomkamp and editors Julian Clarke and Lee Smith.*

20       *these documents are specifically ONLY between three people, during a two month period.

21    2) **No. 6**: ALL agreements between the Defendants pertaining to production of the Film.*

22       *The Plaintiff asked for ALL contracts between ALL Defendants; yet he only received two
         contracts –none from the other MRC "entities".

23

24                              **SUMMARY**

25    • The Plaintiff believes the Defendants' have behaved excessively adversarially throughout

26  this matter. Their refusal to produce reasonable documents is consistent with the Plaintiff's belief.

27    • The Plaintiff has reduced his document request down to two (2) items –see request No. 4

28  and No. 6 (above). Reasonable exchange of relevant documents is essential in a civil procedure –

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION**

1    and essential to insure the Plaintiff has a reasonable opportunity to protect his copyright interests.

2    • As explained under "Issue One" Plaintiff believes Defendants withheld request No. 4

3    (concerning re-editing the Film) because the items may confirm Plaintiff's allegations.

4    • The Federal Rules of Civil Procedure permit parties in litigation to "obtain discovery

5    regarding any nonprivileged matter that is relevant to any party's claim or defense."

6    ## CONCLUSION

7    For the foregoing reasons Plaintiff respectfully requests the Court grant this Motion to

8    Compel, and require the Defendants produce all documents responsive to request No. 4 and 6 from

9    Plaintiff's First Set of Request for Production of Documents. A proposed order is attached for the

10   Court's convenience.

11   The Plaintiff yields to the Court's discretion concerning the appropriateness of using its

12   authority to issue any due consequences, warranted by the Defendants', aforementioned, false

13   statements, in violations of 18 U.S.C. 1001.

14

15   Dated: July 9th , 2014

16   Respectfully Submitted:

17   Steve Wilson Briggs
     Plaintiff, In Propria Persona
18   681 Edna Way, San Mateo, CA 94402
     (510) 200 3763, email: snc.steve@gmail.com

19

20

21

22

23

24

25

26

27

28

– 9 –

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION**

1

2 **[PROSOSED] ORDER**

3

4

5     The Court has considered the Plaintiff's **MOTION TO COMPEL PRODUCTION OF**

6 **DOCUMENTS; MEMORANDUM OF POINTS AND AUTHORITIES**, requiring the

7 Defendants produce all documents responsive to Plaintiff's interrogatories request No. 4 & 6, which

8 read:

9
     **Request No. 4:** "All documents (emails, texts, memos, letters or any other communication)
10
pertaining to Elysium between Defendant Neill Blomkamp and Elysium's film editors Julian Clarke
11
and Lee Smith between June 2011 and August 9th, 2013."
12

13 **Request No. 6:** "All contracts and agreements between any and all Defendants pertaining to their

14 participation in ANY facet of the writing, production, making, distribution, marketing, etc., of

15 the film "Elysium"."

16

17     Finding that good cause exists the Motion is **GRANTED**.

18

19
         IT IS SO ORDERED.
20

21

22     DATED: July _____, 2014

23

24             Signed, _____

25             **UNITED STATES DISTRICT JUDGE**
                **PHYLLIS J. HAMILTON**
26

27

28

_____

Case 1:13-cv-04613-DLI Document 51 Filed 04/09/14 Page 12 of 21

The Province>Blogs >Entertainment Entertainment RSS Feed

## Elysium's ready as director Blomkamp looks ahead to next project

February 14, 2013. 6:00 am • Section: Entertainment, Movies



Neill Blomkamp and Terri Tatchell

Elysium, the long-awaited follow-up to Vancouver director Neill Blomkamp's District 9, is all but done now, awaiting a theatrical release in August.

"It's kind of weird that it sits on a shelf and doesn't come out until August 9th but I think a summer release is fantastic for the film," says Blomkamp in an e-mail.

The new movie stars Matt Damon and Jodie Foster in a sci-fi story about a future where humanity's elite have fled the ruined Earth for orbiting space stations while the planet's poor struggle to survive.

The 33-year-old Blomkamp moved to Vancouver as a teen with his family from South Africa, and quickly earned a reputation as a digital effects prodigy in Vancouver's busy effects scene.

His debut feature, 2009's District 9, catapulted him to the front ranks of feature directors, a box-office and critical hit that also earned Oscar nominations for best picture, best screenplay (for Blomkamp and Terri Tatchell, his wife and writing partner), best editing for Vancouver's Julian Clarke and best visual effects for a team based out of Vancouver's Image Engine.

The movie about an alien ghetto was filmed in Johannesburg, but extensive post-production was handled in Vancouver.

All eyes were on Blomkamp in the summer of 2011 when filming started here on Elysium. Many of the same collaborators were back – though Blomkamp wrote this screenplay on his own.

Filming continued under tight secrecy until that September, when the show moved to Mexico City.

Then came more than a year of post-production work in Vancouver, just finishing now.

"Elysium is basically done at the end of February," Blomkamp says. "I have some straggling VFX shots that go into April but it's almost done. The stuff looks absolutely amazing."

Here's a look at Damon from the movie:



The director has already begun prep work on a third sci-fi feature that will take him back to Johannesburg for principal photography. He reteamed with his screenwriter wife Tatchell to co-write that film, a sci-fi comedy called Chappie. But as with the previous two movies, post-production and visual effects will happen in Vancouver.

And the Vancouver team that rose to prominence with District 9 and Elysium have become in-demand players in their own right. Editor Clarke has since worked on The Whistleblower and The Thing, while Vancouver-based cinematographer Trent Opaloch will be behind the camera for the mega-budget superhero sequel Captain America: The Winter Soldier, due in theatres in 2014.

As for Blomkamp's co-writer and spouse Tatchell, she's carving out a career as a writer and producer in her own right. She optioned a trilogy of paranormal teen novels by U.S. writer Amanda Hocking, and has written the screenplay adaptation for the first of those books.

From the editor's desk: Fundamentally UnsoundNext Entertainment post Sex Talk in the City of VancouverPrevious Entertainment post

We encourage all readers to share their views on our articles and blog posts. We are committed to maintaining a lively but civil forum for discussion, so we ask you to avoid personal attacks, and please keep your comments relevant and respectful. If you encounter a comment that is abusive, click the "X" in the upper right corner of the comment box to report spam or abuse. We are using Facebook commenting. Visit our FAQ page for more information.





**COLLIDER**    INTERVIEWS    MOVIE CLIPS    NEWS    REVIEWS    TRAILERS    TV








**FOXCATCHER Trailer: Channing Tatum Wants to Win a Gold Medal—And Maybe an Oscar**

**SHERLOCK Christmas Special Confirmed for 2015; Will Be Followed by 3 New Episodes**

**HORRIBLE BOSSES 2 Trailer Gives a First Look at Stars Jason Bateman, Charlie Day, and Jason Sudeikis**

**DAWN OF THE PLANET OF THE APES Prequel Short Films Explain the Simian Flu, Its Effects, and the Downfall of Human Civilization**

**30 Things to Know About David Ayer's FURY From our Set Visit, Plus New Images**

# Release Date for Neill Blomkamp's ELYSIUM Moved Up to March 1st, 2013

by **Adam Chitwood**    Posted 3 years, 36 days ago

Share [0]    Tweet [0]    [0]    Share [0]





Sony has moved the release date for *District 9* director Neill Blomkamp's ***Elysium*** one week to March 1st, 2013, per **Box Office Mojo**. The film was originally set to open on the 8th, the same day as Disney's ***Oz: The Great and Powerful*** directed by Sam Raimi. This seems like a smart move, as the burgeoning cast of Raimi's fantasy prequel to ***The Wizard of Oz*** will most likely do some serious business. ***Elysium*** stars Matt Damon, Jodie Foster, William Fichtner, Wagner Moura, and Sharlto Copley. Details on the plot are very much under wraps, but it's said to take place in the future on another planet, and will be in the social allegory vein much like *District 9*. **Foster plays** the head of the alien planet.



Like

## Trending Offers and Articles

ADVERTISEMENT







**nahright** Video: Wiz Khalifa – DayToday: Zumiez In-Store        SHARE




**Marvel Studios' Phase 3 Lineup**    **The Scene George R. R. Martin Regrets Having to Cut**

| 65,617,478 | 53,791,211 | | | SEARCH... | |
| COMPANIES | PRINCIPALS | | | | 🔍 |

HOME   COMPANY SEARCH   PEOPLE SEARCH   PRO SEARCH   PRO API   BLOG   COUNTRIES   CONTACT US   f   ✆   g+

## SCOTT TENLEY

Data Updated February 20, 2014

**Infusionsoft SMB Software**

◎ infusionsoft.com

Get Organized—Grow Sales—Save Time.
Trusted by 23,000 Small Businesses.

**Arrest Records: 2 Secrets**

**Marriage Records Online**

▷ There are 11 individuals that go by the name of Scott Tenley.

These individuals collectively are associated with 7 companies in Los Angeles California, North Vancouver British Columbia, Olin Iowa, Toronto Ontario, and Tumwater Washington.

**SCOTT TENLEY (DIRECTOR)**
**ASGARI INC.**
CANADA NON-DISTRIBUTING CORPORATION WITH 50 OR FEWER SHAREHOLDERS

| Address: | 119 Spadina Avenue, Suite 400 |
| | Toronto, ON M5V 2L1 CA |
| Registered Agent: | None Listed |
| Filing Date: | October 06, 2010 |
| File Number: | 7668163 |

**SCOTT TENLEY (CHAIRMAN/CEO)**
**HUNDREDS OF HATS, INC.**
NEW YORK FOREIGN BUSINESS CORPORATION

| Address: | 1800 Century Park East |
| | 10th Fl |
| | Los Angeles, California 90067 |
| Registered Agent: | None Listed |
| Filing Date: | May 14, 2009 |
| File Number: | 3810751 |

## Company Reports

▷ dnb.com/BusinessLookup

Get Company Reports from Dun & Bradstreet ®. Start Now.

**SCOTT TENLEY (PRESIDENT)**
**MIDWEST'S BEST MEATS, INC.**
IOWA CORPORATION

| Address: | Scott Tenley |
| | 5193 Lily Rd |
| | Olin, IA 52320 |
| Registered Agent: | Scott Tenley |
| Filing Date: | July 03, 2007 |
| File Number: | 348199 |

**SCOTT TENLEY (SECRETARY)**
**MIDWEST'S BEST MEATS, INC.**
IOWA CORPORATION

| Address: | Scott Tenley |
| | 5193 Lily Rd |
| | Olin, IA 52320 |
| Registered Agent: | Scott Tenley |
| Filing Date: | July 03, 2007 |
| File Number: | 348199 |

**SCOTT TENLEY (TREASURER)**
**MIDWEST'S BEST MEATS, INC.**
IOWA CORPORATION

| | |
|---|---|
| Address: | Scott Tenley<br>5193 Lily Rd<br>Olin, IA 52320 |
| Registered Agent: | Scott Tenley |
| Filing Date: | July 03, 2007 |
| File Number: | 348199 |

**SCOTT TENLEY (PARTNER)**
**MRC II DISTRUBUTION COMPANY L.P.**
WASHINGTON LIMITED PARTNERSHIP

| | |
|---|---|
| Address: | 300 Deschutes Way Sw Ste 304<br>Tumwater, WA 98501 |
| Registered Agent: | Corporation Service Company |
| Filing Date: | April 02, 2008 |
| File Number: | 602819763 |

**SCOTT TENLEY (PRESIDENT)**
**OAKTREE ENTERTAINMENT, INC.**
CALIFORNIA CORPORATION

| | |
|---|---|
| Address: | 1800 Century Park East 10th Fl<br>Los Angeles, CA 90067 |
| Registered Agent: | Scott Tenley |
| Filing Date: | November 03, 2006 |
| File Number: | C2933204 |

**SCOTT TENLEY (DIRECTOR)**
**STREETWISE PROFESSOR INC.**
CANADA CORPORATION

| | |
|---|---|
| Address: | 555 Brooksbank Avenue<br>Bldg. 6<br>North Vancouver, BC V7J 3S5 CA |
| Registered Agent: | None Listed |
| Filing Date: | June 03, 2013 |
| File Number: | 8537682 |

**SCOTT TENLEY (PRESIDENT)**
**SWINE SURVIVORS, INC.**
IOWA CORPORATION

| | |
|---|---|
| Address: | 5193 Lily Rd.<br>Po Box 26<br>Olin, IA 52320 |
| Registered Agent: | Scott Tenley |
| Filing Date: | April 11, 2003 |
| File Number: | 278352 |

**SCOTT TENLEY (SECRETARY)**
**SWINE SURVIVORS, INC.**
IOWA CORPORATION

| | |
|---|---|
| Address: | 5193 Lily Rd.<br>Po Box 26<br>Olin, IA 52320 |
| Registered Agent: | Scott Tenley |
| Filing Date: | April 11, 2003 |
| File Number: | 278352 |

**SCOTT TENLEY (TREASURER)**
**SWINE SURVIVORS, INC.**
IOWA CORPORATION

| | |
|---|---|
| Address: | 5193 Lily Rd.<br>Po Box 26<br>Olin, IA 52320 |
| Registered Agent: | Scott Tenley |
| Filing Date: | April 11, 2003 |
| File Number: | 278352 |

# Dun & Bradstreet ®Reports

dandb.com/Business_Lookup

Dun & Bradstreet® Credit Reports. See Your Company Credit Profile.

NEW ARTICLES THAT MAY INTEREST YOU

What You Need To Know About Social Media

Relieving Your Business Licensing Headaches

Does Your Potential Employee Have A Criminal Background?

Beware Of The Dangers Of Operating Without The Proper Business Licenses!

ADDITIONAL LINKS

Previous Association

the clear meaning is not distorted. The term "or" shall mean "and" and vice-versa, as required to

expose for the subsequent interrogatories all information or documents that would be excluded

absent this definition.

## REQUEST FOR PRODUCTION

**REQUEST NO. 1:**

Any and drafts and versions of the screenplay/script "Elysium" by Defendant Neill

Blomkamp. *Please provide dates of completion and printing.

**REQUEST NO. 2:**

All copies of the screenplay/script by Neill Blomkamp forwarded to any other

Defendant, or any employee or agent of any of the Defendants, in any and all formats (printed,

PDF, RTF, etc.).

**REQUEST NO. 3:**

Any and all documents (emails, texts, letters, memos, etc.), between the Defendants, or

between the Defendants and any other unnamed interested party, IN ANY WAY concerning the

screenplay or the film or the prospective film "Elysium" (or the project "Elysium under any

previous titles) exchanged between February 1st, 2007 and October 7th, 2013.

**REQUEST NO. 4:**

All documents (emails, texts, memos, letters or any other communication) pertaining to

Elysium between Defendant Neill Blomkamp and Elysium's film editors Julian Clarke and Lee

Smith between June 2011 and August 9th, 2013.

**REQUEST NO. 5:**

All documents (emails, texts, memos, letters or any other communication) exchanged

between Defendants, or between Defendants and any other party, concerning Plaintiff or his works

"Butterfly Driver" or  "Uberopolis: City of Light", between January 2007 and October 7th, 2013.

**REQUEST NO. 6:**

All contracts and agreements between any and all Defendants pertaining to their

participation in ANY facet of the writing, production, making, distribution, marketing, etc., of

the film "Elysium".

**REQUEST NO. 7:**

ALL documents (emails, etc.) pertaining to any similarities and differences between Elysium and Plaintiff's "Butterfly Driver" or "Uberopolis: City of Light".

**REQUEST NO. 8:**

ALL documents (emails, texts, letters, conversations, etc.) between ALL Defendants and any other party, (whether party to this suit or not, including major cast members), in ANY WAY pertaining to ANY concerns about Elysium's story-line, plot, structure, character relationships, etc.

**REQUEST NO. 9:**

All documents or diaries pertaining to Elysium's editing schedule.

**REQUEST NO. 10:**

All documents (with date confirmation) illustrating the Defendants' (particularly Sony Pictures Ent. Inc, and MRC) due diligence to make sure Elysium was not an infringement of another artist's work.

**REQUEST NO. 11:**

All documents illustrating (with date confirmation) the Defendants' diligent efforts to check the merits of Plaintiff's claim of copyright infringement, before dismissing them as unfounded.


DATED: May 14th, 2014

Signed,_____

Steve Wilson Briggs
Plaintiff, In Pro Per

PLAINTIFF'S 1st REQUESTS FOR PROD. OF DOCUMENTS TO DFNDNTS CV 13-4679 PJH