Steve Wilson Briggs
681 Edna Way
San Mateo, CA 94402
Telephone: (510) 200 3763
Email: snc.steve@gmail.com

Pro Se Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

| STEVE WILSON BRIGGS | ) Case No.: CV 13-4679 PJH |
|---|---|
| Plaintiff | ) Judge: Honorable Phyllis J. Hamilton |
| vs. | ) **AMENDED NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| NEILL BOMKAMP, SONY PICTURES ENT., INC., TRISTAR PICTURES, INC., MEDIA RIGHTS CAPITAL II LP (AKA MEDIA RIGHTS CAPITAL, & MRC), and QED INTERNATIONAL | ) Date:       August 20th, 2014<br>) Time:       9:00 a.m.<br>) Courtroom:  3 |
| Defendants | ) Judge:      Hon. Phyllis J. Hamilton |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** on August 20th, 2014, or as soon thereafter as the matter may be heard, Plaintiff, Steve Wilson Briggs, moves this Court for action in the courtroom of the Honorable Phyllis J. Hamilton, Oakland Courthouse, 3rd Floor, 1301 Clay Street, Oakland, CA.

**Statement of Purpose.** This motion will be based on the Memorandum Of Points And Authorities, and the Proposed Order, filed herewith, moving the Court to compel the Defendants produce documents requested in Plaintiff's First Set of Requests For Production of Documents. Plaintiff has made good faith effort to obtain thes documents from the Defense. The Court has this authority under F.R.C.P. Rule 37(a) (1) & Rule 37(a)(2)(B)(iii), and the Inherent Powers Doctrine.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PREFATORY NOTE:**

- This motion was originally intended to compel for BOTH document production AND responses to interrogatories. But as the Plaintiff neared completion of composing this motion, he learned it is customary to present each disputed interrogatory, as written, and discuss the merits of each. With motions for summary judgment due soon, there was simply no time to add so many interrogatories and develop their merits. Thus, the Plaintiff will only move the Court to compel for document production. However, the significant interrogatory issues remain included in this motion as they directly pertain to the Defendants' motives for withholding the requested documents.

**In** response to Plaintiff interrogatories several unexpected revelations came to light:

1) Defendant Neill Blomkamp made a surprising admission concerning Film re-editing,k confirming key allegations contained in the Plaintiff's first Amended Complaint (FAC);

2) Under penalty of perjury Defendant MRC made false statements (concealing entities involved in the infringement) confirmed by other Defendants' admissions, violating 18 U.S.C. 1001.

3) Defendants admitted Simon Kinberg helped re-write Elysium, contributing to infringement.

- Due to the gravity of these issues, they are addressed before the general facts of this motion under the headings ISSUE ONE, ISSUE TWO, and ISSUE THREE.

**NATURE OF MOTION**

Under 17 U.S. CODE § 106  Plaintiff has the EXCLUSIVE RIGHT to: 1) reproduce, 2) prepare derivatives, 3) **distribute** copies to the public, 4) perform the copyrighted work publicly, and 5) display the copyrighted work publicly.

The Plaintiff filed suit against the Defendants for infringing upon his exclusive rights.

In response to Plaintiff's interrogatories and requests for production of documents, the Defendants have: 1) provided only four (or portions thereof) of Plaintiff's eleven  requests ; 2) have refused to answer, or provided evasive non-answers to many Plaintiff  interrogatories;  3) have made false statements under penalty of perjury, violating 18 U.S.C. 1001.

Thus, the Plaintiff turns to the Court for intervention.

**The Plaintiff has made good-faith effort** to obtain reasonable documents from the

Defendants, without success –including an email exchange in mid June, 2014, in which the Defense asked the Plaintiff to agree to a <u>stipulated protective order</u> concerning the documents. Plaintiff did not agree, as he wished to keep this a matter of open public record.

**ISSUE ONE**

In his responses to Plaintiff's Interrogatories Defendant Blomkamp admitted that video editing of the Film did not finish until June, 2013. This admission is very significant, because <u>on page 28</u> of the Plaintiff's first Amended Complaint (FAC) Plaintiff made the fairly bold prediction/allegation that between June and July of 2013, after learning of the Plaintiff's imminent lawsuit (the Plaintiff contacted the Defense Counsel June 3rd, 2013 –as well as other L.A. attorneys) the Defendants had the Film re-edited to get remove or alter the film's headache scenes.

When the Plaintiff wrote the FAC, all published reports said the Film was finished, edited, and ready to go, between February and March 2013. In the attached articles, from February 2013, Blomkamp himself says the Film was finished and sitting on a shelf (waiting for its August release) –with finishing touches to be completed in April 2013. **[See Exhibit A –Blomkamp Articles].**

But four months later, June 2013, hearing of this lawsuit (Plaintiff speculates), Blomkamp went back and re-edited the Film, <u>just weeks before the film's release</u>. There are still no published reports that Blomkamp re-edited the Film in June.

Blomkamps' admission is a smoking gun, adhering to and confirming Plaintiff's allegations.

**ISSUE ONE: DOCUMENT PRODUCTION RAMIFICATIONS**

- <u>Plaintiff Believes Defendants Withheld Documents Due To This Admission</u>

To confirm FAC allegations that The Defendants re-edited the Film to hide infringement, Plaintiff's 'No. 4' request to the Defendants was to produce: "<u>All documents (emails, texts, memos, letters or any other communication) pertaining to Elysium between Defendant Neill Blomkamp and Elysium's film editors Julian Clarke and Lee Smith between June 2011 and August 9th, 2013</u>."

Clarke and Smith would have edited the Film on Blomkamp's order. Thus, these emails, texts, etc, might show why Blomkamp had the film re-edited –and confirm Plaintiff's allegations.

The Defendants objected to the request, stating: "<u>it seeks the production of documents that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence</u>."

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION**

Plaintiff believes these documents are relevant and very likely to produce evidence.

## ISSUE TWO

This second issues concerns false statements Defendant MRC made answering interrogatory No. 3 from the Plaintiff, which read: **"Under what business name or names (please provide <u>all</u>) did MRC sign any and <u>all</u> contracts and/or agreements related to making the film Elysium?"**

The interrogatory required Defendant provide ALL names used on ALL agreements.

Defendant, MRC's complete response read: **"An entity named MRC Distribution Company L.P., entered into various agreements in connection with the Film, including, inter alia, a distribution deal agreement with TriStar Pictures, Inc."**

Thus, under penalty of perjury, MRC claimed that only the MRC entity known as MRC II Distribution Company signed all agreements related to the Production of the Film.

<u>But Defendants Neill Blomkamp and QED International, in their interrogatory responses, claim they signed NO contracts with MRC Distribution Company</u>. Rather, Defendant QED International claims to have ONLY signed agreements with **Asgari, Inc**., whom QED describe as an "affiliate" of **MRC II Holdings, LP.** while Defendant Blomkamp says he signed his writing contract with an MRC "entity" named **Oaktree Entertainment, Inc**., and signed his directing deal with **MRC II Holdings L.P.** (a previously unknown entity).

Blomkamp did not know Media Rights Capital's legal name.

Only Defendant TriStar Pictures, Inc. has an agreement with MRC II Distribution Company.

The admissions of Defendants Blomkamp and QED confirm Defendant MRC made false statements, claiming MRC II Distribution Company to be the sole MRC entity that entered all agreements related to the production of the Film. Thus, violating 18 U.S.C. 1001.

**U.S.C. Title § 1001 - STATEMENTS OR ENTRIES GENERALLY**
 **(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—**
 **(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;**
 **(2) makes any materially false, fictitious, or fraudulent statement or representation; or**
 **(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;**
**shall be fined under this title, imprisoned not more than 5 years…**

## STRUCTURE OF CONCEALMENT

Plaintiff interrogatory No. 22 to Defendant MRC asked the Defendant to provide information concerning various MRC entities and their administrators. MRC objected to the interrogatory. Plaintiff resorted to Bizpedia.com, where he learned **Oaktree Entertainmant, Inc**., and **Asgari Inc.**, are not just "affiliates" of MRC as they proffer. Scott Tenley, MRC's President of Business affairs, is also the President of Oaktree Entertainment, Inc., and he is the Director of Asgari Inc., and a partner in MRC II Distribution Company LP. **[See Exhibit B –Tenley Titles].** These corporations seem to be, effectively, one company.

In the Defendants' case filings "<u>Certification Of Interested Entities Or Parties</u>", and in MRC's separate case filing "<u>Defendant Media Rights Capital II LP's Certification Of Interested Entities Or Parties</u>" Defendant, Media Rights Capital II LP, admitted it is the *parent* and MRC II Distribution Company is its *subsidiary*; but no other MRC "entities" or "affiliates" are mentioned.

The conflict then develops in MRC's response to Plaintiff's 20th interrogatory, as Defendant MRC states: ""Media Rights Capital" is the name colloquially used in the press and in credits for projects that MRC II Distribution Company L.P. finances and/or produces."

In the above statement, the parent (Defendant, Media Rights Capital II LP) claims subsidiary, MRC II Distribution Company, produces films using the parent's identity.

The Plaintiff believes this is another false statement, as the parent's website proudly takes credit for all productions; on IMDb MRC (the parent) has 152 productions, while MRC II Distribution Company (subsidiary) has one (1) credit (earned in 2014).

- <u>Plaintiff contends MRC's unseemly business structure gives rise and cover to criminality</u>.

**NOTE:** While the Plaintiff was in discussions with litigation investors, earlier this year (2014), investor, John Sherriff, explained that unethical businesses often name subsidiaries as the responsible "company" or "entity" for just such legal proceedings. He explained they do this to make it impossible for successful Plaintiffs to collect from the unfunded subsidiary.

### ISSUE TWO: DOCUMENT PRODUCTION RAMIFICATIONS

- Plaintiff believes the Defendants withheld requested documents concerning their contractual relationships with each other, and withheld the distributor's true identity, etc., due to Plaintiff's interrogatories into these matters.

**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION**

### ISSUE THREE

Plaintiff's interrogatory No. 20 to Defendant Blomkamp (and No. 17 to Defendant MRC) concerned Plaintiff's belief that Blomkamp's literary skills seem so undeveloped that the Film's producer, Simon Kinberg, renown screenwriter and "script doctor" (one who helps revise troubled screenplays), must have "script-doctored" Blomkamp's script.

To this, Blomkamp admitted that Kinberg **"…reviewed edits to the script and worked with me to develop ideas for revisions to the script."**

In response to Plaintiff's interrogatory to Defendant MRC, concerning Plaintiff's belief that Kinberg "script-doctored" Elysium's screenplay, Defendant MRC admitted that Kinberg **"…assisted with a polish of the Film's screenplay during the later stages of writing."**

Both Defendants' admissions confirm that Simon Kinberg played a role in writing Elysium's screenplay. Simon Kinberg and Media Rights Capital are the primary producers of Elysium, a for-profit venture. Thus, Simon Kinberg played a material role in infringing on the Plaintiff's copyrighted property.

### ISSUE THREE: DOCUMENT PRODUCTION RAMIFICATIONS

Anticipating that a Defendant, or Kinberg himself, might have voiced concerns about Blomkamp's screenplay, the Plaintiff made an usual document request of the Defendants; (**NO. 8**) "ALL documents (emails, texts, letters, conversations, etc.) between ALL Defendants and any other party, (whether party to this suit or not, including major cast members), in ANY WAY pertaining to ANY concerns about Elysium's story-line, plot, structure, character relationships, etc."

The Defendants objected to this request.

### GENERAL FACTS CONCERNING DOCUMENT PROD. & INTERROGATORIES

- The Plaintiff responded, thoroughly, to all of the Defendants' interrogatories.
- Plaintiff promptly produced and delivered perhaps 1000 pages of documents to Defendants.
- Plaintiff agreed to **8 out of 9** of the Defendants Requests For Productions of Documents,

### DEFENDANTS' EVASIVE RESPONSES TO INTERROGATORIES

When Plaintiff queried about distribution he received consistently evasive answers.

Sony Pictures claimed its only role in producing Elysium was **"Defendant related**

**companies** (plural) **acquired the distribution rights to the Film and distributed the Film."** But Sony Pictures would not identify the distributor.

When asked if TriStar Distributed the Film, TriStar answered, **"No. Defendant's related company distributed the Film."** But TriStar did not volunteer that information.

In response to Plaintiff's interrogatory No. 8, Defendant TriStar explained that MRC II Distribution Company did not distribute the Film –but did not say who did**. [See Exhibit C – Plaintiff Interrogatories]**

Defendant MRC claims only that MRC Distribution company financed and produced the Film. MRC was evasive about all other questions concerning its role in the Film or distribution.

## DEFENDANTS REFUSAL TO PRODUCE DOCUMENTS:

Plaintiff's made 11 requests for production of documents, drawn from facts and allegations of the FAC**. [**_Plaintiff Requests For Production oF Documents_**, See Exhibit C]**

Eight days before the discovery deadline, The Defendants asked the Plaintiff to agree to a stipulated protective order concerning the documents Plaintiff requested. The Plaintiff would not agree to the protective order, wishing to keep all facets of the case in the public record.

On the discovery deadline the Defendants provided four (one incomplete, and one possibly falsified) of the Plaintiff's requests for production. The documents the Defendants provided were:

1) Numerous drafts of Defendants' screenplay (satisfying request **No. 1 & 2, [ See Exhibit C]**.

2) Two contracts: 1) MRC II Distribution Company & TriStar; 2) Oaktree Ent. Inc. & Sable)*

> *Plaintiff requested copies of ALL contracts between ALL Defendants pertaining to the Film. MRC II Holdings did not produce its contract with Blomkamp. Nor did QED International produced its contract with Asgari (an MRC "affiliate").

**3)** A purported editing schedule (satisfying request **No. 9).* [See Exhibit C]**

> *Plaintiff believes the schedule is falsified as it is contradicted by Defendant Blomkamp's numerous published statements. **[See Issue One & Exhibit A]**

CONCESSIONS AND IMPERATIVE DOCUMENTS

Plaintiff will concede request **No. 5** and **No. 7** (**Exhibit C**) is a protected as under the work product doctrine, and concedes that requests **No. 3** and **No. 8,** (**Exhibit C**) are overbroad. Although Plaintiff believes request **No. 10** and **11,** (**Exhibit C**) are reasonable and relevant, he will concede

on these items, too –unless the Defendants opt to be more forthcoming about these items.

However, the following two documents request are relevant and imperative:

1) **No. 4**: all exchanges between Blomkamp and editors Julian Clarke and Lee Smith.*

   **\***<u>these documents are specifically ONLY between three people, during a two month period.</u>

2) **No. 6**: ALL agreements between the Defendants pertaining to production of the Film.*

   *The Plaintiff asked for ALL contracts between ALL Defendants; yet he has only received two contracts –none from the other MRC "entities".

## SUMMARY

The Plaintiff has reduced his document request down to two (2) items. Reasonable exchange of documentation is essential in such civil procedures. The Federal Rules of Civil Procedure permit parties in litigation to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."

Plaintiff remains concerned about Defendant MRC's numerous identities and "entities" –and concerned about identifying of the actual distributor, complicit in violating the Plaintiff's exclusive right to distribute under copyright law.

## CONCLUSION

For the foregoing reasons Plaintiff respectfully requests the Court grant this Motion to Compel, and require the Defendants produce all documents responsive to request No. 4 and 6 from Plaintiff's First Set of Request for Production of Documents. A proposed order is attached for the Court's convenience.

The Plaintiff yields to the Court's discretion concerning the appropriateness of using its authority to issue any due consequences, warranted by the Defendants', aforementioned, false statements, in violations of 18 U.S.C. 1001.

Dated: July 10th, 2014

Respectfully Submitted:  /s/ Steve Wilson Briggs

Steve Wilson Briggs
Plaintiff, In Propria Persona
681 Edna Way, San Mateo, CA 94402
(510) 200 3763, email: snc.steve@gmail.com

- 8 -
**PLAINTIFF'S MOTION TO COMPEL DOCUMENT PRODUCTION**