1  Steve Wilson Briggs
   681 Edna Way
2  San Mateo, CA 94402
   Telephone: (510) 200 3763
3  Email: snc.steve@gmail.com

4  Pro Se Plaintiff

5

6

7

8                    UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

10

11                                      )  Case No.:  CV  13-4679  PJH
                                        )
12  STEVE WILSON BRIGGS                  )      Judge: Honorable Phyllis J. Hamilton
                                        )
13          Plaintiff                    )  **PLAINTIFF'S NOTICE OF MOTION
                                        )  AND MOTION FOR
14                                       )  SUMMARY JUDGMENT;
         vs.                            )  MEMORANDUM AND POINTS OF
15                                       )  AUTHORITY IN SUPPORT THEREOF**
                                        )
16  NEILL BOMKAMP, SONY PICTURES ENT., INC.,  )  Date:       Sept. 3rd, 2014
    MEDIA RIGHTS CAPITAL II, L.P., ET AL  )  Time:       9:00 a.m.
17                                       )  Courtroom:   3
         Defendants                      )  Judge:      Hon. Phyllis J. Hamilton
18                                       )

19  _____

20

21

22  **TO THE DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

23          **PLEASE TAKE NOTICE** on September 3rd, 2014, or as soon thereafter as the matter may be

24  heard, Plaintiff will, and hereby does, moves the Court for action in the courtroom of the Honorable

25  Phyllis J. Hamilton, Oakland Courthouse, 3rd Floor, 1301 Clay Street, Oakland, CA.

26          **Statement of Purpose.** This motion will be based on this Notice of Motion and Motion, case

27  records, declarations, evidence, and pleadings, moving the Court for Summary Judgment in favor of the

28  Plaintiff, and against the Defendants for copyright infringement under **17 U.S.C. § 101** et seq.

i

# **TABLE OF CONTENTS**

Notice of Motion and Motion for Summary Judgment……………………………………… ...i

Table of Contents…………………………………………………………………………ii

Table of Authorities……………………………………………………….....iv

**MEMORANDUM AND POINTS OF AUTHORITIES**……………………………1

**I. ARGUMENT**………………………………………………………………………1

Nature of Case……………………………………………………………………1

**II PROCEDURE, CONCEPTS, PRINCIPLES OF LAW**……………………………… 2

Procedure……………………………………………………………………… 2

Insufficient Affirmative Defenses…………………………………………… 2

Copyright Infringement……………………………………………………....2

Access……………………………………………………………………… 2

Substantial Similarity……………………………………………………… 3

     Extrinsic Test……………………………………………………3

     Intrinsic Test……………………………………………………....3

Idea v. Expression Divide……………………………………………….... 4

Public Domain……………………………………………………… 4

The Heart of the Work……………………………………………… 4

Thick or Broad Protection……………………………………………....4

Scènes à Faire……………………………………………………………....4

Unprotectable Elements……………………………………………… 4

Striking Similaritiy……………………………………………… 5

Differences……………………………………………………… 5

Copyrightable……………………………………………………… 5

**III. FACTS CONFIRMING ACCESS**……………………………………… 5

     Summary…………………………………………………....7

**IV. FACTS CONFIRMING SUBSTANTIAL SIMILARITY**………………………7

Comparison Conflict………………………………………………… 7

ii

Marketing Logline/Synopsis Infringement………………………………………………..8

    Summary………………………………………………………………… 8

Plots Are Copyrightable…………………………………………………………… 9

**Comparison of Screenplay Elements**……………………………………… 9

"Butterfly Driver" Plot…………………………………………………… . 9

"Elysium" Plot……………………………………………………………… 10

    Summary………………………………………………………………... 11

CHARACTER INFRINGEMENT………………………………………….... 11

The Hero: Arlo v Max…………………………………………………………… 11

    Infringement of The Hero's Affliction Headache………………………………… 12

    Effort to Hide Infringement…………………………………………… 13

    The Hero's Keepsake Necklace………………………………………... 13

The Villain: Drexler v. Delacourt (Rhodes) …………………………….... .13

Sick Child: Franny v. Matilda………………………………………………….14

SETTING INFRINGEMENT…………………………………………………….14

Setting 1: Giant Satellite For The Rich Orbiting Earth ………………………….14

Setting 2: Dystopian Earth………………………………………………....15

Conjoined Settings: Rich Satellite World & Poor Dystopic Earth……………………………….15

Setting Year…………………………………………………………….15

Central Conflict Infringement……………………………………………… 16

Catalyst, Crisis, Climax (and twist) Infringement…………………………………………16

    Catalyst………………………………………………………………16

    Crisis………………………………………………………………17

    Climax………………………………………………………………...17

Inciting Incident Infringement………………………………………………17

Resolution Similarity…………………………………………………………18

Mood and Pacing…………………………………………………………18

Dialogue Similarities…………………………………………………………18

iii

Plaintiff's Idiosyncrasies Duplicated In The Defendants' Work…………………………….…20

Plaintiff's Mistakes Present In the Defendants' Work……………………………………….....21

Plaintiff's Terminology Errantly Duplicated In The Defendants' Work…………………….…..22

Plaintiff's Language Duplicated In The Defendants' Work……………………………………...22

**V. EVIDENCE AUTHENTICATION**……………………………………………..…23

**VI. IMPORTANT CASE HISTORY & COMPARISON**…………………………………23

**VII. SUMMARY**……………………………………………………………....…....…25

**VIII. CONCLUSION**…………………………………………………………………...25

**"Copyright rewards originality –not effort."**

-Sandra Day O'Conner
(Feist Publications v. Rural Telephone Service, 1991)

PLAINTIFF'S NOTICE OF MOTION & MOTION FOR SUMMARY JUDGMNT CV  13-4679  PJH

# TABLE OF AUTHORITIES:

**CASES**

*L.A. Printex Indus. Inc. v Aeropostale*, Inc., 102 U.S.P.Q.2[nd] (BNA)(9th Cir 2012)……................3, 7

*Sid & Marty Krofft Television Prods v. McDonald's Corp.,* 562 F.2d 1157, 1164 (9th Cir.1977)…....3

*Shaw v. Lindheim* 919 F2d. 1353 1356-57 (9th Cir. 1990) ………………………………………3, 9

*Grosso v. Miramax Film Corp.,* 383 F.3d, 2003…………………………………………………....3

*Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002)…………………………….......3, 9

*Roth Greeting Cards v. United Card* Co (9th Cir. 1970)…………………………………....4

*Harper & Row v. Nation Enterprises*, 471 U.S. 539……………………………………….....4

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir.1994) ………………………4

*Mattel, Inc. v. MGA Ent.,* Inc.(9th Cir. 2010)………………………………………………….4

*Cain v. Universal Pictures*, 47 F.Supp. 1013 (1942)…………………………………………….4

*Arnstein v. Porter,* 154 F.2D 464 (2nd Circuit, 1946)……………………………………………...5

*Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49 (2d Cir. 1936 , US, 1940)……....5, 9, 23, 24

*Feist Publications, Inc., v. Rural Telephone Service Co.*, 499 U.S. 340 (*1991***)………………**..iii, 5, 25

*Castle Rock Entertainment Inc. v. Carol Publishing Group*, 150 F.3d 132 (2nd Cir. 1998)….………7

*Walt Disney Productions v. Filmation Associates* 628 F. Supp., 871, (1986)…………………………7

*Nichols v. Universal Pictures*; 45 F.2d 119 (2d Cir.1930), cert denied 282 U.S. 902 (1931)….9,18,23

*Scott v. WKJG, Inc.,* 376 F.2d 467 (7th Cir.), cert denied, 389  U.S. 832 (1967)………………...….9

*Stewart V. Abend*, 495 U.S. 207 (1990)………………………………………………………...….9

*Atari Games Corp. v. Oman*, 979 F. (2d)  242 (Cir DC 1992)……………………………...….9

*Daly v. Palmer*, Fed.Cas. No. 3,552, 6 Blatch. 256………………………………………23

*Daly v. Webster*, 56 F. 483, 486, 487……………………………………………………23

*Dam v. Kirke La Shelle* Co., 175 F. 902, 907, 41 L.R.A.(N.S.) 1002, 20 Ann. Cas. 1173………….23

*Chappell & Co. v. Fields*, 210 F. 864……………………………………………………24

*Dymow v. Bolton*, 11 F.2d 690……………………………………………………………24

*Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167 (7th Cir. 1997)……………………………24

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487 (2d Cir. 1960)…………………25

v

# TABLE OF AUTHORITIES

**RULES**

Fed. R. Civ. P. Rule 56………………………………………………………….…..1

Ninth Circuit Manual of Model Jury Instructions (Civil) 17.16……………………………..2
.
Ninth Circuit Manual of Model Jury Instructions (Civil)……………………………………..6

Federal Rules of Evidence (FRE) 902……………………………………………...23

FRE Rule 902(1)(A) *Domestic Public Documents That Are Sealed and Signed* ……………….23

FRE Rule 902(4) *Certified Copies of Public Records*……………………………………..23

FRE Rule 902(**5**) *Official Publications*…………………………………………..23

FRE Rule 902(6) *Newspapers and Periodicals*……………………………………….23

FRE Rule 902(7) *Trade Inscriptions and the Like*…………………………………………..23

FRE Rule 902(9) *Commercial Paper and Related Documents*…………………………23

FRE Rule 920(10) *Presumptions Under a Federal Statute*...………………………………23


**SATUTES**

17 U.S.C. § 101……………………………………………………………………...i

The Copyright Act of 1976………………………………………………………..7


**OTHER AUTHORITIES**

McCarthy's Desk Encyclopedia of  Intellectual Property…………………………….…....7

Nimmer on Copyright, § 8.02(B), pp. 8-22—8-25 (1985)……………………………..7

Merriam Webster's Online Dictionary……………………………………………….4

PLC - Copyright Litigation: Analyzing Substantial Similarity, Eric Osterberg…………………...3

PLAINTIFF'S NOTICE OF MOTION & MOTION FOR SUMMARY JUDGMNT CV  13-4679  PJH

## MEMORANDUM AND POINTS OF AUTHORITIES

### I. ARGUMENT:

Under **Fed. R. Civ. P. Rule 56**, a party may move for a summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  When the pleadings, discovery, authenticated evidence, and affidavits support this, summary judgment is appropriate. The copious facts and evidence as presented in the Plaintiff's pleadings are accurate, authenticated and persuasive. In this pleading the Plaintiff will present the legal concepts, principles, standards, case law and the case facts demonstrating there is no genuine dispute to any material fact, and all the material facts and evidence tip in the Plaintiff's favor, exceeding the standards of "a preponderance of evidence" and "clear and convincing evidence"; leaving no question of fact remaining to resolve by the evidentiary standards at trial.

### NATURE OF CASE

This suit is for copyright infringement (comprehensive non-literal) of the Plaintiff's screenplay Butterfly Driver **[Exhibit A]**, infringed upon by the Defendants work, "Elysium" **[Exhibit B],** which infringes on Plaintiff's plot, characters, settings (including his unique giant satellite city for the ultra-rich), his conflict, catalyst, crisis, climax-twist, themes, his hero's **never-before-used** "affliction" headache, his hero's "keepsake necklace", more; infringing on the very **heart** of the Plaintiff's work.

The Plaintiff's owns a valid copyright over his screenplay, Butterfly Driver (and all of its previous versions and titles.) The screenplay, as a whole, is copyrightable, and has many smaller arrangements and details –also copyrightable. The Plaintiff has registered his copyright with the U.S. Copyright Office, required to file a claim **[Exhibit C]**. The Plaintiff's script is a highly creative work (not derived from facts or historical events); thus, deserving **broad protection** from the Court. The Plaintiff completed his first draft 6 years prior to the Defendants' script. The Defendants had reasonable opportunity to **access** the Plaintiff's work, and the two works are **substantially similar**. These combined factors support a finding in favor of the Plaintiff.

The Plaintiff will detail the case background, facts and infringement, but will first favor the Court with an explication of key procedures, concepts, principles and points of law relevant to this matter.

PLAINTIFF'S NOTICE OF MOTION & MOTION FOR SUMMARY JUDGMNT CV  13-4679  PJH

## II. PROCEDURE, CONCEPTS, PRINCIPLES & LAW

### PROCEDURE:

For a copyright infringement claim to come before the Court, a plaintiff must hold a valid copyright (which he does); he must demonstrate that his/her copyright predates the defendant(s)' work (which he has); he/she must register that copyright with the U.S. Copyright Office prior to filing his/her claim (which he has). Satisfying these conditions he must then demonstrate the defendant(s) had "reasonable opportunity" to access his work (which he has). Finally, he/she must show there is substantial similarity between the contested works (which he has).

### INSUFFICIANT AFFIRMATIVE DEFENSES

Upon satisfying the procedural requirements (above), and demonstrating that the plaintiff has comported himself/herself in agreement with the law concerning his/her copyright prior to and through the course of litigation, infringement is then confirmed. Thus, all of the Defendants' affirmative defenses are rendered false and insufficient, as they are false and insufficient, in fact.

### COPYRIGHT INFRINGEMENT

Copyright infringement occurs when a copyrighted work is reproduced, distributed, performed, publicly displayed, or made into a derivative work without the permission of the copyright owner.

Copyright law has a simple formula to determine infringement:

ACCESS + SUBSTANTIAL SIMILARITY = INFRINGEMENT.

### ACCESS

**"ACCESS"** in the Ninth Circuit is a **'reasonable opportunity'** of access –not a smoking gun.

The **Ninth Circuit Manual of Model Jury Instructions (Civil) 17.16** explains:

**"You may find that the defendant had access to the plaintiff's work if [[the defendant] [whoever created the work owned by the defendant]] had a reasonable opportunity to [view] [read] [hear] [copy] the plaintiff's work before the defendant's work was created."**

The Manual also provides 3 methods of showing "reasonable opportunity" of access :

1) a chain of events connecting plaintiff's work and the defendant's opportunity to [view] [hear] [copy] that work [such as dealings through a third party (such as a publisher or record company) that had access to the plaintiff's work and with whom both the plaintiff and the defendant were dealing]

2)  the plaintiff's work being widely disseminated] [or]

**2**

3)  a similarity between the plaintiff's work and the defendant's work that is so "striking" that it is highly likely the works were not created independent of one another]."

Additionally, the Ninth Circuit Court of Appeals established in *L.A. Printex Indus. Inc. v Aeropostale*, Inc., 102 U.S.P.Q.2[nd] (BNA)(9th Cir 2012) that, under the widespread dissemination theory of access, factors such as marketing efforts, availability (radio, TV, internet), **whether the respective parties were in the same market**, etc., can help determine a finding of "access".

## SUBSTANTIAL SIMILARITY

**Substantial similarity** is the Court's standard to determine if infringement has occurred. To test for substantial similarity the 9th Circuit first uses the extrinsic test, then the intrinsic test.

**THE EXTRINSIC TEST** was first used in *Sid & Marty Krofft Television Prods v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir.1977).  In *Shaw v. Lindheim* 919 F2d. 1353 1356-57 (9th Cir. 1990) the Ninth Circuit determined the extrinsic test should be an "objective analysis of expression" and listed several story elements to analyze (**plot, themes, dialogue, mood, setting, pace, sequence, characters,** as well as **scenes a faire** & **public domain**). *Grosso v. Miramax Film Corp.*, 383 F.3d, 2003, evaluates **"genre"** as an element. The Plaintiff suggests that the elements of ***conflict, climax, resolution*** and ***goal*** be included, as they are usually regarded as traditional story element (unlike dialogue, pace and sequence). Screenwriting elements include ***catalyst, crisis*** and ***climax***.

The extrinsic test tests for minimal evidence of infringement required to move to the next test.

**"However, the presence of so many generic similarities and the common patterns in  which they arise do help the Metcalfs satisfy the extrinsic test."**
*Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002)

**THE INTRINSIC TEST**. The finder of fact, must subjectively determine if the **total concept and feel** of the works are substantially similar.  There are no expert witnesses involved in the intrinsic test, nor is their any formal analysis, **the trier of fact makes the determination.**

To determine if the similarity is infringement, the Court also considers:

1)  How much of the plaintiff's original material the defendant copied.

2)  How important the copied material is to the plaintiff's (not the defendant's) work.

3)  Whether copyright law protects the copied material.

PLC - Copyright Litigation: Analyzing Substantial Similarity, Eric Osterberg

**3**

**IDEA v EXPRESSION DIVIDE**: is the copyright doctrine that states: "an **idea** is not copyrightable, but an **expression** is copyrightable." There is no precise definition of an "*expression*", but it might be defined as a group of features that are minimally creative, thus copyrightable.

In *Roth Greeting Cards v. United Card* Co (9th Cir. 1970), the District court found the words "I wuv you," and "I miss you already… and you haven't even left," were too simple to copyright.  But the 9th Circuit overruled; finding the simple message, along with the characters, layout and the mood of the card, formed a copyrightable expression, and  the "total concept and feel" of the two works were substantially similar. Finding for the Plaintiff.

**PUBLIC DOMAIN**. "Public domain" is a copyright **legal status** for previously copyrighted material that have fallen into the freely accessible public domain (Pinocchio, The Land of Oz). Single ideas alone (a fantastic medicine, a satellite, a time machine) are not copyrightable; thus, **NOT in the public domain** –nor were they ever –they are always free. The law does not concern itself with trifles.

*The Plaintiff's work is entirely original, containing NO aspects from the public domain.

**THE HEART OF A WORK.** In *Harper & Row v. Nation Enterprises*, 471 U.S. 539, The Supreme Court found a factual news article with no protectable elements was still protectable. Although only 13% of the article was appropriated, the infringement captured **"the heart of the work"** –that portion, in relation to the work, as a whole, was great -although the "amount" was small.

**THICK or "BROAD" PROTECTION.** In *Apple Computer, Inc. v. Microsoft Corp*., 35 F.3d 1435, 1443 (9th Cir.1994), **and** *Mattel, Inc. v. MGA Ent.,* Inc.(9th Cir. 2010), the Ninth Circuit Court of Appeals has acknowledged the necessity of giving highly creative works **"broad protection"**.

**"…the Court must… decide whether the work is entitled to "broad" or "thin" protection. Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison..."** *Id*

**SCÈNES À FAIRE.** The Honoable Judge Leon Yankwich introduced the term to American law in *Cain v. Universal Pictures*, 47 F.Supp. 1013 (U.S. D. C. So. Dist., California 1942). Scènes à faire are simple, general scenes (not specific) that one would expect to see in a film of a particular genre. In a western, one might expect to see scenes of cowboys on the prairie, maybe a gun fight. Merriam-Webster's defines *scènes à faire* as "obligatory scenes".

**UNPROTECTABLE ELEMENTS**. Cases such as *Harper & Row v. Nation Enterprises,*

4

471 U.S. 539, **and** <u>Metcalf v. Bochco</u>, 294 F.3d 1069, 1074 (9th Cir. 2002), and others established that if unprotectable elements are utilized in minimally creative ways etc., then they are protectable.

**STIKING SIMILARITY.** In the seminal Arnstein v. Porter, 154 F.2D 464 (2nd Circuit, 1946), the Court found that even absent a finding of access, copying can be established when the similarities between two works are "so striking as to preclude the possibility that the plaintiff and defendant independently arrived at the same result.

**DIFFERENCES.** Invariably there will be differences between contested works, as infringers are eager to eliminate evidence of their deed.

**"No plagiarist can excuse the wrong by showing how much of his work he did not pirate."**

-Judge Learned Hand (*Sheldon v Metro Goldwyn Pictures Corp*.)

**COPRIGHTABLE**. Almost anything that can be rendered into a fixed form and shows a "minimal degree"\* of creativity is copyrightable. The Supreme Court ruled in <u>Feist Publications, Inc., v. Rural Telephone Service Co.</u>, 499 U.S. 340 (1991) that  a work need only to possess a "spark" or **"minimal degree"** of creativity to be protected by copyright.

"To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice."

–Sandra Day O'Conner, *Id*.

### III.  <u>FACTS CONFIRMING ACCESS</u>

Plaintiff began composition of his screenplay February of 2004, completing the first draft (then titled "Uberopolis: City of light") in May 2005, emailing it to family and friends. **[See Exhibit D** (the first pages of 113 pages sent to family and friends**]**; later giving hard copies versions, as well.

December 16th, 2005, Plaintiff registered a revised version of "Uberopolis: City of Light" with the Writer's Guild of America (West); registration ID #: 1103287. **[See Exhibit E]**

In January, 2006, the Plaintiff began a 23 month campaign to market his script, sending countless queries to literary agents, and film companies. **[See Exhibit F** -a few of many]; posting loglines (short synopses) on screenwriter websites **[See Exhibit G]**; entered screenwriting competitions **[See Exhibit H];** and posted loglines and synopses on Inktip.com **[See Exhibit I]**.

After more revision, around January 2007, the Plaintiff renamed his script "Butterfly Driver".

In February, 2007, the Plaintiff posted the entire draft of the script "Butterfly Driver" on Kevin

5

Spacey's and Dana Brunetti's filmmaker & screenwriter website, "Trigger Street" (triggerstreet.com). **[See Exhibit J]**.Triggerstreet.com was named one of the Time Magazine's "50 Best Websites of 2004" **[See Exhibit K]; designed to link filmmakers screenwriters and industry professionals**; allowing members to post screenplays, short films (10 minutes or less), to get feedback from peers and professionals. **Time Magazine** described Triggerstreet.com as: **"A place for aspiring <u>filmmakers</u> and <u>screenwriters</u> to get feedback on their work and, possibly, some exposure within the industry."** At that time Trigger Street had approximately 100,000 members **[See Exhibit L, page 2]**.

February to August of 2007, the Plaintiff posted his script on TriggerStreet.com 4 or 5 times.

2011 Trigger Street was re-named Trigger Street Labs and moved to labs.triggerstreet.com. But in 2007, when the Plaintiff's work was posted, the site was: triggerstreet.com, known as *Trigger Street*.

Trigger Street is the ONLY place the Plaintiff ever posted his complete script.

TriggerStreet.com is where the Defendants had access to the Plaintiff's script.

In 2007, Defendant, Neill Blomkamp was a **short filmmaker**, with only a few short films to his credit. Blomkamp wouldn't begin his first feature length film until 2008 –not finishing until 2009.

In 2004, because of his short films' amazing special effects, Blomkamp signed with Ari Emanuel/William Morris Endeavor. But, Blomkamp had no creative property to direct. So for four (4) years no feature film work came his way –until 2008 (a year AFTER the Plaintiff alleges the Defendants encountered his work on Trigger Street), when the Defendant wrote *District 9* (which shares some elements from the Plaintiff's script, but nothing infringing).

In 2007, as a short filmmaker with no experience on feature-length projects, Defendant Blomkamp would have been drawn to Trigger Street to: 1) to find a screenplay to direct and produce; 2) to interact with other short filmmakers; 3) to observe the work of other short filmmakers; 4) to contact industry professionals who might need an able director.

In 2007, Defendant, MRC, a struggling film company with only one credit that year (*Couples*, filmed for $2,500) and would also have had reason to scout for screenplays on triggerstreet.com.

With Trigger Street's huge membership, and unparalleled importance as the preeminent social website for screenwriters and filmmakers, the Plaintiff asserts that his work was widely disseminated and the Defendants had reasonable opportunity to access by one or more of measures outlined in the

6

<u>Ninth Circuit Manual of Model Jury Instructions (Civil)</u>, which are:

1) **"a reasonable opportunity to [view] [read] [hear] [copy] the plaintiff's work before the defendant's work was created."**

2) <u>**a chain of events connecting plaintiff's work and the defendant's opportunity**</u>…

3) <u>**the plaintiff's work being widely disseminated**</u>] [or]

4) **a similarity between the plaintiff's work and the defendant's work that is so "striking" that it is highly likely the works were not created independent of one another]."**

SUMMARY:

A plaintiff must satisfy one of the measures above. The Plaintiff believes he satisfies all four.

*The fact that the respective parties were engaged in the same market (filmmaking) is also a consideration; noted earlier, established by *L.A. Printex Indus. Inc. v Aeropostale.*

## VI.  <u>FACTS CONFIRMING SUBSTANTIAL SIMILARITY</u>

Comprehensive non-literal similarity occurs when one work appropriates "the fundamental structure or pattern" of another –***McCarthy's Desk Encyclopedia of  Intellectual Property***

COMPARISON CONFLICT

The Defense has made the specious argument that the comparison should be made between the Plaintiff's screenplay and the Defendants' film, Elysium (*Castle Rock Ent. Inc. v Carol Publishing*, 1998 –a derivative work in another medium can be substantially similar when the derivative is based on the original). However, Defendant Neill Blomkamp first realized profit from his screenplay, Elysium, when his loan-out company, Sable Productions, Ltd., entered a writing agreement with Oaktree Entertainment, Inc. , for his screenplay. Thus, **that agreement is condicio sine qua non**,. Therefore, the comparison must only be between the two contested screenplay. –and the law is with the Plaintiff: *Walt Disney Productions v. Filmation Associates* 628 F. Supp., 871, (1986), established that **PRELIMINARY WORKS** <u>in the production of a **motion picture** can constitute infringing copies under the *Copyright Act of 1976*</u>.

Nimmer summarized the Disney v Filmation finding, "To constitute an actionable copy, therefore, an expression need only be a material object permanently case in some intelligible form… The fact that the articles may never be published or, indeed, may be prepared only for the use of Filmation's animators, does not obviate the possibility of infringement." -*Nimmer on Copyright*, §

1

## MARKETING LOGLINE/SYNOPSIS INFRINGEMENT

2      After producing the screenplay, the next manifestation of infringement, came with the release of

3  Elysium's marketing logline/synopsis. The Defendants' synopsis is **extremely important** as it stands

4  as a testament of what ALL of the Defendants believe are the marketable aspects of their work. In their

5  logline/synopsis there is no mention of their hero's job, or backstory, or high-tech guns, robots or

6  exoskeletons. Those features were empty add-ons, intended only to disguise infringement. Their logline

7  mentions, almost exclusively, material taken from the Plaintiff.

8      In 2010, 3 years after the Plaintiff stopped marketing his work to other producers, he posted a

9  new investment logline/synopsis on his website, directed to film investors who might be willing to help

10 him produce the script into a film. That webpage was archived Aug. 6th, 2010, to see now at:

11 http://web.archive.org/web/20100807072930/http://www.mrexcellentmovie.com/future.html **[See**

12 **Exhibit M]**. The Plaintiff marketed the logline there **for 2 years**, never changing a word. Compare:

13      "**BUTTERFLY DRIVER** (Synopsis/ Logline):  In 2144 Earth is grossly overpopulated, with

14 95% of the population living in poverty, while the elite .01% live on the giant man made luxury

15 satellite, Uberopolis. Against this backdrop, in some anonymous slum, legendary soldier -and world's

16 most wanted fugitive, Arlo Grainer, learns the polluted atmosphere will kill his daughter unless she

17 receives an extremely costly drug. For that medicine Arlo will go across the globe and into the heart of

18 Uberopolis, pursued by every bounty hunter on Earth".

19      **ELYSIUM** (Synopsis-Logline): "In the year 2154, two classes of people exist: the very

20 wealthy, who live on a pristine man-made space station called Elysium, and the rest, who live on an

21 overpopulated, ruined planet. The people of Earth are desperate to escape the crime and poverty that is

22 now rampant throughout the land. The only man with the chance to bring equality to these worlds is

23 Max (Matt Damon), an ordinary guy in desperate need to get to Elysium. With his life hanging in the

24 balance, he reluctantly takes on a dangerous mission -- one that pits him against Elysium's Secretary

25 Delacourt (Jodie Foster) and her hard-line forces -- but if he succeeds, he could save not only his own

26 life, but millions of people on Earth as well."

27                          Summary:

28      The Defendants' synopsis follows the Plaintiff's synopsis structure almost precisely: first

8

mentioning the year, then the class division, then the satellite world, followed by plot details.

## PLOTS ARE COPYRIGHTABLE

In their Answers & Affirmative Defenses the Defense opined that a plot is not copyrightable.

That opinion is mistaken. A plot is quite copyrightable, confirmed in the following case (among others)… _Nichols v. Universal Pictures_; 45 F.2d 119 (2d Cir.1930), cert denied 282 U.S. 902 (1931), held that detailed plots are copyrightable but skeletal plots are not; _Sheldon v. Metro-Goldwyn Pictures Corp_., 81 F.2d 49 (2d Cir. 1936), held a detailed plot is copyrightable; _Scott v. WKJG, Inc.,_ 376 F.2d 467 (7th Cir.), cert denied, 389 U.S. 832 (1967); held that a plot is copyrightable if it is not general; _Shaw v. Lindheim_ 919 F2d. 1353 1356-57 (9th Cir. 1990), "Even if none of these [common] plot elements is remarkably unusual in and of itself, the fact that both [works] contain all of these similar events gives rise to a triable question of substantial similarity of protected expression."; _Stewart v. Abend_, 495 U.S. 207 (1990) Certiorari To The United States Court Of Appeals For The Ninth Circuit No. 88-2102, found: "Third, the story was a substantial portion of the film, which expressly used its unique setting, characters, plot, and sequence of events";_Metcalf v. Bochco,_ 294 F. 3d 1069 -Court of Appeals, 9th Circuit 2002: "...the presence of so many generic similarities and the common patterns in which they arise do help the Metcalfs satisfy the extrinsic test. The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element". Additionally, _Atari Games Corp. v. Oman_, 979 F. (2d) 242 (Cir DC 1992) and others support this.

## COMPARISON OF SCREENPLAY ELEMENTS

### "Butterfly Driver" Plot :

After his best friend is killed by State bounty hunters, a poor man (Arlo), who lives in the impoverished ruins of Earth (where police vehicles loom in the sky and brutalize the poor), must pay his family's emigration out of their dangerous "zone" city by doing a dangerous mission for a disabled transporter. The hero is arrested, but inevitably makes a daring escape. Reuniting with his family, Arlo learns his seven year old daughter will die within seven days without medicine found only on a satellite world (Uberopolis) for the super-rich: where crime and unemployment do not exist. But the hero is poor; and getting to the satellite requires big money and special identification; impossible without help from an outlaw political network. The outlaw network's "techie" programmers help Arlo get fake I.D.

9

and documents to get into Uberopolis. The hero suffers sudden, short, excruciating headaches -and carries secrets the World President will kill to suppress . The President (who has been genetically "reprogrammed" to appear much younger than he really is) makes an announcement that reprogramming will soon be available to all (the rich). The President deploys a special agent to apprehend the hero. The special agent doesn't want the assignment, so he negotiates for medical aid for his son. The agent must also negotiate with insurers for medical care to save his son. An important woman gives the hero a special "keepsake necklace". To gain access to the villain, Arlo threatens to detonate an explosive device. In the climatic final battle, when it looks as if the hero might prevail, he suffers a terrible headache, giving the villain the advantage. Eventually the hero defeats the villain -but sustains a life threatening injury. As the hero drifts off toward death, he has a dream-like vision about the "keepsake necklace". The vision saves the hero. In the end, the hero's action saves his daughter, and impacts the world: bringing a cheap energy source, and allowing people to vote in open elections.

"Elysium"  Plot :

After getting radiation poisoning, a poor man (Max), living in the impoverished ruins of Earth (where police vehicles loom in the sky and brutalize the poor) has less than a week to get to a satellite world for the super-rich (Elysium): where crime and unemployment do not exist. Max must get there to get medical care to save himself (and his girl-friend's dying six year old daughter). But the hero is poor; and getting to the satellite requires big money and special identification. Impossible without the help of an outlaw, disabled human trafficker -who requires that the hero do a dangerous mission in exchange for emigration to the satellite. The hero carries a "keepsake necklace", given to him by an important woman from his past. The trafficker's "techie" programmers help Max with fake identification to enter Elysium. While downloading information into his brain, the hero acquires a condition of sudden, short, excruciating headaches. In his brain, the hero now carries secrets that a powerful Elysium official (who has been genetically "re-atomized" to appear much younger than she is) will kill to possess. On Elysium, re-atomization is available to all (the rich). The official deploys a special agent to apprehend the hero. The special agent doesn't want the assignment, so he negotiates for restored privileges and a mansion on Elysium –while Max's old girl-friend, Frey, negotiates with the hospital for her daughter's life. The special agent kills Max' best friend. Undaunted, to gain access to

10

the satellite world, Max threatens to detonate an explosive device held to his head. In the climatic final battle, just when it looks as if the hero might prevail, he suffers a terrible headache, giving the villain the advantage. Somehow the hero defeats the villain. But the hero must die to save much of the world. As he prepares to die the hero takes comfort in his "keepsake necklace", in a dream-like montage. In the end, the hero's action saves the girl and brings medical aid and perfect health, to the world.

Summary:

Elysium uses each of the 19 plot structures from the Plaintiff's work (and many other events, substructures, themes, etc.): **1)** the central setting of a giant satellite world for the super-rich, which features giant forests and aquatic features; **2)** a hero prone to excruciating headaches (which knock him to his knees); **3)** a villain who has been genetically reprogrammed to appear much younger than he/she is; **4)** advanced medicine only found on the satellite world;  **5)** a hero who must get to the satellite world for medicine (or medical care); **6)** a "plight of immigrant" theme; **7)** a sick girl, who will die without the hero's action; **8)** a hero who witnesses the death of his best-friend, and struggles to get I.D. and transport to a satellite world; **9)** an "anguish of living without healthcare" theme; **10)** a disabled transporter who will help the hero's emigration plan –IF the hero does a very dangerous mission; **11)** an agent (sent by the villain to apprehend the hero) who accepts the assignment after negotiating; **12)** a keepsake necklace, carried by the hero, which factors into the stories conclusion; **13)** an overpopulated, impoverished Earth, where police vehicles loom in the sky and brutalize the poor, who are policed by the rich elite who live on the satellite world; **14)** a hero who threatens the villain with detonating an explosive device; **15)** underground "techie" programmers who help the hero with fake identification to get into the satellite world; **17)** a primary character who negotiates with insurers (or a hospital) for the life of his/her child; **18)** A climatic battle between the hero and villain, during which the hero suffers a terrible headache; **19)** a globally significant resolution (rare).

**CHARACTER INFRINGEMENT**

THE HERO:  Arlo vs Max

The heroes of both movies are tough, poor men, age 35-45, both heroes carry keepsake necklaces, and both heroes suffer short, sudden, excruciating headaches, which cause the hero to stumble, grab his head and scream. Even more surprising, the heroes share the same goal:

11

THE HERO'S GOAL (**Butterfly Driver**): the hero has less than a week to get from Earth to a satellite world for the rich, to get medicine to save his daughter.

THE HERO'S GOAL, (**Elysium**): the hero has less than a week to get to a satellite world for the rich, to get medical care to save himself –and his girl-friend's daughter, too.

<u>INFRINEMENT OF THE HERO'S AFFLICTION HEADACHE</u>

<u>The Plaintiff's hero</u>, Arlo, suffered rare (never before used in film or literature) ophthalmodynia (ice picks) headaches, so excruciating they feel as if the sufferer's brain has been stabbed by an ice-pick. Thus, Arlo occasionally: 1) falls to his knees; 2) clutches his head; 3) cries-out in pain. In the climax, Arlo suffers a headache while fighting the villain. **[Exhibit A pp. 23, 46, 105]**

<u>Elysium's hero</u> displays the same symptoms and reactions as the Plaintiff's hero, regarding his headaches condition –even suffering a headache in the climax battle. **[Exhibit B pp. 62, 63, 77, 112].**

COMPARISON OF AFFLICTION HEADACHES

LEGEND: Plaintiff's "Butterfly Driver" (**BD**) - **in bold;** Defendants' "Elysium" - regular print

- <u>FIRST EVENT</u>:

    **(BD):  Arlo suddenly falls to his knees, grabs his head, and growls in pain, "GRRRR."**

    **His eyes roll back as he fights his way back to his feet. [Exhibit A p. 9]**

    (ELYSIUM):    Max tries to run, but he collapses. He clasps his head in pain... Max clasps his head like a migraine. The data creating an epileptic white static in his head. **[Exhibit B p. 62,]**

- <u>SECOND EVENT</u>:: (taken from Uberopolis: City of Light, Jan. 16th, 2006 version)

    **(BD):    Arlo stands up, then unexpectedly drops to his knees and grabs his head with both hands, in pain. ARLO: "GGGRRRR!"**

    **DAVID: "What's wrong?!"**

    **Arlo's eyes roll back for a moment. Arlo growls louder. [<u>See Exhibit N</u>: pp. 32, 33]**

    (ELYSIUM):    Suddenly another blast of static pain grates through Max's brain. He screams, holding his head. He staggers to his feet. **[Exhibit B p. 63]**

- <u>THIRD EVENT</u>:

    **(BD):  He (Arlo) suddenly falls to one knee and grabs his head, stricken by an ice-pick headache. He growls. Eyes rolled back, Arlo rises to his feet, holding his temple, as if defying the**

12

**pain to stop him. [Exhibit A p. 46]**

(ELYSIUM):   Suddenly he has a mini seizure. The searing white light. The migraine. His head wants to explode. He collapses to the ground... (more)  **[Exhibit B p. 77]**

- FOURTH EVENT:

**(BD):  Arlo releases his grip. Drexler slowly drops to his knees, blood dripping from his face. ...As Arlo reaches for his gun a jolt of pain shoots through his head, driving him to one knee. Arlo's eyes roll in their sockets as he groans and struggles to his feet. BANG! A fist smashes Arlo in the face, knocking him to the ground. Arlo looks up to find Drexler looming over him.**

**DREXLER: "Bad time for a headache." [Exhibit A p. 109].**

(ELYSIUM):   Max starts to get the upper-hand when- A white hot flash of cerebral pain... He trips and stumbles over desks and terminals, holding his head.  Manual grabs Max and pulls him back toward spider...   Kruger rises, whips out a deadly throwing knife and wings it at Manuel. Max uses every ounce of strength to will himself to his feet. **[Exhibit B p. 112]**

EFFORT TO HIDE INFRINGEMENT

The Defendants do not call these events "headaches"; rather, "migraines". But "migraine" is neurological disorder characterized by recurrent <u>headaches</u>. The Defendants also, twice, call the events "seizures", and an "epileptic white static" –but epileptic seizures do not cause sufferers to fall to their knees, screaming, clutching their heads. The Defendants also call the event "A white hot flash of cerebral pain"; but "cerebral pain" is a "headache".

THE HERO'S "KEEPSAKE NECKLACE"

In **Butterfly Driver** a woman named Benni gives Arlo a keepsake necklace. As Arlo faces death, he sees the necklace in a dream-like vision, this saves his life. **[Exhibit A pp. 54, 55, 65, 113]**

In **Elysium** a nun gives Max a keepsake necklace. As Max faces death, he looks at the necklace and remembers "Frey" (in a dream-like way). **[Exhibit B pp. 29, 117, 120]**

<u>THE VILLAIN:  Drexler Vs Delacourt (Rhodes)</u>

The Villains of both works are: **1)** have been genetically "reprogrammed" (or "re-atomized") to appear much younger than they are **[Exhibit A p. 3; Exhibit B p. 18]; 2)** are very rich; **3)** live on a crime-free satellite world for the very rich; **4)** both villains send agents to apprehend the hero due to

13

information he possesses; **5)** both villains order mass killings of prisoners traveling in space shuttles (to reveal the depth of the character's evil) [**Exhibit A p.105; Exhibit B pp. 12, 13**]; and **6)** both villains are seemingly evil, but committed to the belief that they are defending their elite ilk [**Exhibit A pp. 93-96; Exhibit B p. 18**]**. A**dditionally**,** the villain of Butterfly Driver, Drexler, is the World President, and used his media company to cheat himself into The Presidency. Following the Plaintiff's model, Elysium's villain, Delacourt (Rhodes) devises an evil plan to cheat herself into The Presidency.

<u>SICK CHILD:  Franny Vs Matilda</u>

 <u>Butterfly Driver's</u> "Franny" is Arlo's sick 7 year old daughter, who has a respiratory disease. She will die in less than a week -without medicine found only on a satellite for the super-rich. Her life depends on the hero's actions. If he fails, she dies. Thus, she is central to the plot. Franny is saved by the hero and seen, healthy, in the script's final minutes. She lives in a world where the rich live on a giant satellite with great medical aid, and where the poor live on Earth.

Franny is essential to the Plaintiff's work. Her innocence (amid these dangerous settings) gives the story hope. Her fragile life makes the story matter –and are part of the aggregate that makes her copyrightable. Outside of their unique environs and story structure, Han Solo is just a guy a vest, and Harry Potter –just a kid with glasses.

<u>Elysium's</u>, "Matilda" is Frey's (the hero's girl-friend) 6 year old daughter. She is very sick with Leukemia. She will die in less than a week -without medical aid only found on a satellite for the super-rich. Her life depends on the hero's actions, and so is central to the plot. She is saved by the hero's action, and seen, healthy, in the story's final moments. Matilda lives in a world where the rich live on a giant satellite with great medical aid, and the poor live on Earth.

**SETTING INFRINGEMENT:**

**SETTING 1:** Giant Satellite For The Rich Orbiting Earth

Perhaps the most unique settings in film in 2013, the two central settings of the Defendants' "Elysium" infringe on the two central settings of the Plaintiff's "Butterfly Driver".

The Plaintiff's satellite is 3 miles in diameter**.** The Defendants' script calls for a satellite 60 miles in diameter. But the film's satellite appears about 2 miles in diameter as the shuttles enter.

The following aspects of the Plaintiff's satellite world were infringed on by the Defendants':

14

**1**) it is an enormous man-made satellite-world, with forests and large aquatic features; **2**) only the super-rich live in the satellite's pristine biosphere; **3**) fantastic medical technologies are available there; **4**) there is no crime on the satellite;  **5**) the satellite enjoys 100% employment; **6**) entering the satellite requires special identification; **7**) it is home to the story's genetically reprogrammed villain; **8**) the satellite orbits an overpopulated, impoverished Earth; **9**) it is where the final battle transpires; **10**) where many large and small vehicles fly above the surface and about the exterior of the satellite. **11**) there, prisoners in orange jumpsuits board shuttles for Earth. **[Exhibit A pp.3, 33; Exhibit B p. 5]; 12**) the satellite's capacity is 300,000, when complete, 150,000 currently. (Elysium's capacity is 251,200*); **13**) marketers there market homes on the satellite to the rich on Earth*. **[Exhibit A p. 4; Elysium websites: http://www.welcometoelysium.com/  &  http://www.itsbetterupthere.com/site/]**

### SETTING 2:  Dystopian Earth

The other central setting of **both** screenplays is the impoverished overpopulated ruin of Earth. On this setting: 1) the poor have little access to medical care; 2) the hero lives in a slum, overrun by thugs and crime; 3) police and military vehicles loom in the sky and brutalize the poor **[Exhibit A pp. 7, 16, 52, 53 ; Exhibit B pp. 6, 7];** 4) Army ships, full of "undesirables" are released into the slums **[Exhibit A p. 53; Exhibit B p. 5];** 5) the poor are brutalized by the government of the satellite world (who also do a few kind things for the poor, such as provide supplies) **[Exhibit A p. 95; Exhibit B p. 17-18];** 6) rich businesses build manufacturing plants in the slums to take advantage of the cheap labor **[Exhibit A pp. 47, 95; Exhibit B pp.15, 16, 27, 28];** 7) people commonly travel by flying shuttles and flying cars, and commute to the giant satellite; 8) the poor live in the ruins of cities in decay.

CONJOINED SETTINGS: Rich Satellite World & Poor Dystopic Earth:

Prior to *Butterfly Driver* there was no other work featuring both a gigantic manmade super satellite for rich humans, with giant aquatic and forested areas, medical technologies (and the other previously listed aspects), juxtaposed against a dystopic Earth (featuring the previously listed aspects).

### SETTING: YEAR

Butterfly Driver was set in the year **2120**.  But in 2010, the Plaintiff posted an investor logline of the script (for 2 years) on his website (mrexcellentmovie.com) changing the setting year  to **2144 [See Exhibit M].** Elysium's script says the movie is set in **2109**. But the actual film and official

15

synopsis revise that year to **2154** –ten years from Butterfly Driver''s final setting year.

CENTRAL CONFLICT INFRINGEMENT

The "conflict" is/are the thing(s) that stands between the hero and his goal. The heroes of both works have extremely similar goals: both need to get to a satellite world to access medical technology. And both heroes must overcome an almost identical conflict list: 1) the hero is not a citizen of the satellite world; 2) the hero is poor; 3) the hero needs fake I.D. and help to get to a satellite world; 4) a  powerful, evil, official wants the hero stopped; 5) the hero suffers debilitating headaches; 6) The powerful official  sends a special agent to apprehend the hero.

• THEME(S) INFRINGEMENT

The Plaintiff's "Butterfly Driver" has at least five imperative central themes:

  1) Survival without adequate healthcare is inhumane

  2) the plight of immigrants is brutal

  3) wealth corrupts and divides us (literally -the poor on Earth, the rich on a satellite)

  4) Heroic Sacrifice:  BUTTERFLY DRIVER: Arlo  risks everything for his daughter.

  ELYSIUM: Max gives up his life to save Matilda and mankind.

  5) Redemption comes from refusing to give up hope (the spiritual theme of both movies).

**Butterfly Driver** : Arlo doesn't give up hope of saving his daughter. Thus, in the end, he finds redemption and liberates the world with free, fair elections.

**Elysium:** Max doesn't give up his dream of getting to Elysium; thus, finds redemption – and liberates the world.

• CATALYST, CRISIS, CLIMAX (and twist) INFRINGEMENT

Typically a screenplay has three imperative "plot points": 1) catalyst, 2) crisis, 3) climax. Elysium borrows all three from the Plaintiff's.

• CATALYST

The catalyst is the event that pushes the hero into action, and gives him his goal. The catalyst usually marks then end of the first act and the beginning of second.

BUTTERFLY DRIVER:  the hero learns his daughter has less than a week to live, unless he can get to Uberopolis to get medicine to save her. **[Exhibit A p. 35]**

16

ELYSIUM:  the hero learns he has only five days to live, unless he can get to Elysium for medical care. *His girl-friend's dying daughter must get there, too. Elysium's script is <u>inconsistent</u>: "only a few days" or "20 days". **[Exhibit B pp 31, 72]**

- CRISIS

The crisis is the story's low point –often when all hope seems lost.

BUTTERFLY DRIVER:  after struggling to get to Uberopolis, Arlo learns the medication his daughter needs is not on the satellite world. **[Exhibit A p. 83]**.

ELYSIUM:  Arriving on Elysium, Max learns he can't be treated without wiping out the data in his head, and Matilda can't be treated because she's not a citizen. **[Exhibit B pp. 105, 106]**.

- CLIMAX

The climax begins when the hero directly confronts the villain, until the resolution.

The Plaintiff set his climax on the giant satellite for the effect. Arlo initiates the climax by holding an explosive device to his head to gain access to the villain.

Conversely, the Defendants started their climax on Earth (when Max held the grenade to his head), then moved the hero, mother, child and villain to the satellite world, to emulate Butterfly Driver.

- CLIMAX TWIST

Both works have identical **CLIMAX TWISTS**: The hero battles the villain on the giant satellite. They struggle. Finally the hero gains the advantage, then suddenly, the "twist" –the hero has a massive headache, losing the advantage. **[Exhibit A p. 109; Exhibit B p 112]**

- INCITING INCIDENT INFRINGEMENT

<u>The inciting incident is the event that takes the hero out of his normal routine world</u>. **It is sometimes, simply, the catalyst**.The Plaintiff's inciting incident occurs midway through the first act. The Defendants' "Elysium" uses the Plaintiff's inciting incident as the first event of the second act. <u>But in both works</u>, oddly, the **inciting incident** is a **separate event sequence from the catalyst**.

BUTTERFLY DRIVER'S INCITING INCIDENT: Arlo learns bounty hunters are closing in on him. He realizes he has to get his wife and kids out of their dangerous "zone" city and into the rich, safe "State". But he needs money to pay their transport and immigration ("repatriation") fees. Arlo turns to his friend -a local underground transporter. <u>The transporter has a disability: he is a</u>

17

missing arm. The transporter arranges Arlo's wife and kids' transport and immigration -BUT Arlo must do a VERY dangerous mission in exchange.

ELYSIUM'S INCITING INCIDENT: Max learns he has radiation poisoning and has only five days to live. His only hope is to get to the satellite city, Elysium, for medical care. With no money to pay, Max asks his friend (a local underground transporter) to smuggle him to Elysium. The transporter has a disability: he has a paralyzed leg. The transporter agrees to transport Max -if Max does a VERY dangerous mission in exchange.

- RESOLUTION SIMILARITY

In both scripts, the heroes actions have far-reaching, unlikely, global consequences. Compare:

**"BUTTERFLY DRIVER" Global Impact Resolution**: The hero's actions topple the government, bringing much of the world free, open elections -as well as a new clean energy.

**"ELYSIUM" Global Impact Resolution:** because of one hero's actions, the government of Elysium is toppled, and medical aid is sent out to cure all the people of the world.

- MOOD and PACING

Mood is the pervading feel of a work; created by setting, tone and pace. The Defendants' mirror the mood of the Plaintiff's work, as; 1) The pacing of both works is similar: fast but not frenetic; (2) both works feature disabled characters, suggesting a brutal government; (3) both works are serious, with little humor in narrative, dialogue or action; (4) the settings and themes of both works are identical; (5) both works used similar scenes too darken the mood, such as unnecessary, casual police beatings of the heroes. **[See Exhibit A p. 30; See Exhibit B p. 8]**

- DIALOGUE SIMILARITIES

There are no examples of direct copying in this case, dialogue or otherwise. This is a matter of comprehensive non-literal. However, there are many points where the dialogue rings quite familiar:

**EXAMPLE 1**: **Butterfly Driver:** (Tamara speaks to the hero, Arlo)

**TAMARA:  "Honored to meet the legend." [Exhibit page 14]**

compare to:

**Elysium**, (Julio speaks to the hero, Max)

**JULIO:  "I will wear you down. You used to be a legend." [Exhibit B, p 25]**

18

**EXAMPLE 2**:  **Butterfly Driver:** (Jerry speaks to Arlo–with a bullet wound in his neck).Jerry

presses Arlo's own hand against his neck wound

**JERRY: "Keep the <u>pressure</u>... Arlo!"** . **[Exhibit A, p 112]**

compare to:

<u>Elysium</u>: (Frey works to help Max, who has been stabbed with a knife)

**FREY: "Max, this is a life threatening wound. You need to put as much <u>pressure</u>**

**on it as you can okay? Help me out here." [Exhibit B, 72]**

**EXAMPLE 3**:  **Butterfly Driver** (Arlo and Jerry race from Uberopolis, chased by a warhead):

**JERRY: "I got a warhead. What do I do?"**

**ARLO: "<u>Go faster</u>."  [Exhibit A, p 112**]

compare to:

<u>Elysium</u> (as "Spider" races in his shuttle to get to Elysium, a "techie" informs Spider

that Max has just landed on Elysium's surface. Spider responds).

**SPIDER:  "Got it... <u>Go faster</u>." [Exhibit B, p 95]**

**EXAMPLE 4:**  **Butterfly Driver**: (on the phone, Jerry negotiates with insurers for the life of his

son). **[Exhibit A, p 22]**

**JERRY: "Yes... Yes... You've been very fair... Right... But an oxygen chamber**

**isn't a luxury... How much time can I get... Three days... Alright."**

compare to:

<u>Elysium</u>   (Frey pleads to a doctor, who informs Frey the hospital wants her dying

daughter to go home so the hospital can use the bed for other patients).

**FREY: "Can I just have till the end of the week? There are more supplies I have**

**to get, please. Please." [Exhibit B p 26]**

**EXAMPLE 5**: **Butterfly Driver**: (Jerry explains to his sick 7 year old son, Matty, that he will

need to stay in his air chamber for a few days).

**MATTY: "How long will I have to stay in here this time?"**

**JERRY: "Probably only three days." [Exhibit A, p 44]**

compare to:

19

**_Elysium_** (Frey talks to her sick 6 year old daughter, Matilda, that she

will be finally able to leave the hospital).

**FREY: "Remember how mommy said we could go home when you get better?"**

**MATILDA: Am I better? Can we go home? [Exhibit B p 66]**

**EXAMPLE 6: _Butterfly Driver:_** Jerry orders the engineer of the

Uberopolis broadcast center to turn on hidden cameras around the city, saying:

**JERRY: "I need <u>surveillance</u> camera access" [Exhibit A, p 82]**

compare to:

**_Elysium_** (Kruger walks through the jet over to the control room).

**KRUGER: "Alright, let's get <u>surveillance</u> up." [Exhibit B p 67]**

Three surveillance UAV's (Unmanned Aerial Vehicles) take off and fly...  .

**EXAMPLE 7**: **_Butterfly Driver_** (the character VAN reflects attitudes toward immigrants,

when he comments about an immigrant woman's hard work. **[Exhibit A, p 41].**

**VAN: "She just repatriated. People from the State can't work like that."**

compare to:

**_Elysium_**  (Rhodes <Delacourt> reflects attitudes toward Immigrants) **[Exhibit B, p 17]**

**RHODES: "Jesus Christ. Yes, the real issue. The ungodly influx of immigrants.**

- **PLAINTIFF'S IDIOSYNCRACIES DUPLICATED IN DEFENDANTS' WORK:**

**"P" Poverty Alliteration:**

**Butterfly Driver:** <u>the Plaintiff uses a playful "P" alliteration to describe the surrounding</u>

<u>poverty</u>: "…the im**p**overished local **p**edestrians, **p**redators and their quarry." **[Exhibit A, p59 line 17]**

**Elysium** <u>also uses a playful "P" alliteration to describe the poverty</u> their characters witness as

they scout their community: "<u>More kids, **p**overty, **p**ollution **p**ass</u>." **[Exhibit B, p 52 line 9]**

- **Reprogramming v. Re-Atomizing**

**Butterfly Driver** uses the term genetic "reprogramming" for the act of reversing the effects of

disease, age, and physically improving a person. **[Exhibit A p. 3, 36, 90].**

**Elysium** uses a similar term "re-atomizing" for the act of reversing the effects of disease and

age, and physically improving a person. **[Exhibit B pp. 2, 4, 104].**

20

- **No Sex**

**Butterfly Driver** is somewhat unique in that there is no sex in it's storyline (against Hollywood conventions). The Plaintiff did this to maintain the integrity of his story and his hero, and to add urgency to the storyline.  **Elysium** also follows the Plaintiff's model and omits sex.

- **Repatriate**

**Butterfly Driver** uses the very uncommon word "repatriate", in lieu of the word 'immigration'. **Elysium** also uses the word  "repatriated" **[Exhibit B, p 5}.**

- **Debris v Disposal**

**Butterfly Driver** shows prisoners killed in space and their bodies left to fall back to Earth. The Plaintiff uses the terms "**disposal**" and "**litter**" to show the dead are the new "trash" hazard. Drexler orders the prisoners shuttle set for **"disposal"**–meaning: dump all aboard into space**.** Later when a guard learns of the plan, he asks, "Their gonna **dispose** of all of 'em?!"  **[Exhibit A, pp 105, 107]**

      **Elysium**: Kruger shoots down two shuttles full of immigrants, leaving their bodies to fall to  Earth. Before Rhodes orders Kruger to 'fire', she asks how many of the immigrant ships are a "**debris** danger" -clearly playing with the Plaintiff's "trash" theme.  (ELYS 10, 11).

- **POLICE BRUTALITY: Pounding The Ribs v. Cracking The Ribs**

**Butterfly Driver**: to show police brutality, the Plaintiff writes: "Safe from retaliation, the guard pounds Arlo in the **ribs**." **[Exhibit A: p 30, line 15]**

      **Elysium**: to show police brutality, Blomkamp writes: "They subdue him violently, giving him a crack to the **ribs**." **[Exhibit B: p 8, bottom line]**

- **PLAINTIFF"S MISTAKES PRESENT IN THE DEFENDANTS' WORK**

- **JUMP-SUITED.**   "Jumpsuit" is a compound word, spelled "jumpsuit", not hyphenated.

**Butterfly Driver:** "...a brown **jump-suited** security desk guard..." **[Ex A: p 79, line 5]**

**Elysium:** "...orange **jump-suited** humans..." **[Ex A: p5, line 3]**

- **LATEX GLOVES.   Butterfly Driver:** "...puts on a pair of latex gloves." **[Ex A: p 2, line 14]**

**Elysium:** "...in his latex gloved hand." **[Ex B: p 45 line 7]**

    *These gloves should NOT be called "latex gloves". Latex is one of several materials these gloves can be made of. They should be called "medical gloves", "surgical gloves" or "exam gloves".

- **Multiple Terms Used For The Same Prop Objects**

**"Multiple terms"** were used by both scripts for the same unlikely objects. This is an unusual because screenwriters are expected to use one consistent term for each prop object, so the production manager can efficiently determine what props need to be on each set, without duplication.

- **RESTRAINTS/HARNESS.** Both screenplays have scenes where primary characters get trapped in their shuttle seats by safety belts. Both scripts refer to these belts Restraints and Harnesses.

**Butterfly Driver**: [Exhibit A, **"Restraints"** p30 line 13, 15,17, 20; **"Harness"** p30 line 7]

**Elysium**: Exhibit B, "**Restraints**" p89 line 9, p90 line 9; "**Harness**" p95 line 13.]

BOTH screenplays also mention "chest-harness".

- **NECKLACE / PENDANT**

Plaintiff's "Butterfly Driver" refers to the necklace as a **"necklace"** and a **"pendant"**.

Defendants' "Elysium" refers to their necklace as a **"necklace"** *and a* **"pendant"**

**Plaintiff's Terminology Errantly Duplicated In The Defendants' Script:**

- **TICKET TO ELYSIUM.   Butterfly Driver:** Arlo must get ID and a "ticket" to get to Uberopolis. * Arlo needs a real, physical, ticket to board a shuttle to Elysium.

**Elysium** duplicates this refrain of the Plaintiff work and repeatedly states that Max needs ID and a **"ticket"** to get to Elysium. However, Max does not need a "ticket" to get to Elysium, nor does he ever receive one. He hopes to ride in the battered shuttled of underworld thug, "Spider", who simply requires money to transport, not "**tickets**". Blomkamp's use of the word **"ticket",** rather than "transport" or "a ride" is a Freudian slip; an unwitting parroting of the Plaintiff's original work.

.

**Plaintiff's Language Duplicated In Defendants' Work**

- **"CITIZEN".**  In **Butterfly Driver**: "Citizen" is the signature term Butterfly Driver uses to refer to the rich who live on Uberopolis and in the "State".  The term is featured in character dialogue and narrative (**Exhibit A**: p 29 line 9, 12, p 84 line 28, p 98 line 29, p 104 line 16, p 107 line 2,).

In **Elysium** "Citizen" is the signature term of Elysium, used to refer to the rich who live on Elysium. The term is featured in character dialogue and narrative throughout [**Exhibit B:** p 53 line 11 & 14, p 84 line 13, 103 line 4, more].

- **911 TERMINOLOGY.  Butterfly Driver** uses G.W. Bush era, post 911 terms and language,

22

like **"I don't negotiate with State enemies,"** and tags like "**embolden**". **[Exhibit A pp. 51, 88]**

   **Elysium**  borrows this stroke with "**Homeland Defense" [Exhibit B p. 2, 100]**

- **CUTTING OUT "CHIPS"**   **Butterfly Driver**:  Arlo and David Levine use a razor blade to cut out **tracking chips** out of their necks. **[Exhibit A pp. 26, 33]**.

   **Elysium**: Kruger cuts a "**citizenship chip**" out of his wrist with a knife. **[Exhibit B p. 57]**.

## V.  <u>EVIDENCE AUTHENTICATION</u>

All of the exhibits contained in this pleading, and prior pleadings are self-authenticated under Federal Rules of Evidence (FRE) 902: **1)** FRE Rule 902(1)(A) *Domestic Public Documents That Are Sealed and Signed*. (stamped mail); **2)**  FRE Rule 902 (4) *Certified Copies of Public Records*. (copyright registration); **3)** FRE Rule 902(**5**) *Official Publications*; **4)** FRE Rule 902(6) *Newspapers and Periodicals*; **5)** FRE Rule 902(7) *Trade Inscriptions and the Like*; **6)** FRE Rule 902(9) *Commercial Paper and Related Documents*.; **7)** FRE Rule 920(10) *Presumptions Under a Federal Statute*.

The Plaintiff has also provided four (4) prepared declarations , signed by the Plaintiff's family and friends whom received and read the Plaintiff's screenplay in 2005-2008 **[See Exhibit O]**.

## VI.  <u>IMPORTANT CASE HISTORY & COMPARISONS</u>

*Sheldon v. Metro-Goldwyn Pictures Corp.* is a critical to consider because, to the Plaintiff's knowledge, it is the only case against a major Hollywood Studio in over 80 years to be decided in the Plaintiff's favor. Expert witnesses estimated material from the play was only responsible for 5-12% of the profit. There were significant differences between the scripts. But Judge Hand saw through the guile in these differences when he wrote in his opinion:

   "We have often decided that a play may be pirated without using the dialogue. *Daly v. Palmer*, Fed.Cas. No. 3,552, 6 Blatch. 256; *Daly v. Webster*, 56 F. 483, 486, 487; *Dam v. Kirke La Shelle Co.*, 175 F. 902, 907, 41 L.R.A.(N.S.) 1002, 20 Ann. Cas. 1173; *Chappell & Co. v. Fields*, 210 F. 864. *Dymow v. Bolton*, 11 F.2d 690; and *Nichols v. Universal Pictures Corporation*, supra, 45 F. 119, do not suggest otherwise. Were it not so, there could be no piracy of a pantomime, where 2d there cannot be any dialogue; yet nobody would deny to pantomime the name of drama. Speech is only a small part of a dramatist's means of expression**...**"   **-**<u>Judge Learned Hand</u>

   But the Sheldon case is important because: even though Sheldon rightly won her case, her

23

script was NOT very creative. The storyline was found in the public domain; as the **U.S. Supreme Court** explained in their opinion:

> **"As the Court of Appeals found, respondents, in producing the motion picture in question, worked over old material; "the general skeleton was already in the public demesne. A wanton girl kills her lover to free herself for a better match; she is brought to trial for the murder, and escapes." But, not content with the mere use of that basic plot, respondents resorted to petitioners' copyrighted play."** *Id.*

There was clearly enough evidence for a finding of Infringement in Sheldon, but as the Court explained, the actual plot followed an existing formula. Sheldon didn't invent her plot or character; her story was based on the 1857 trial of Madeleine Smith, in Scotland, for the murder of her lover. In short Sheldon prevailed with a fairly stock story of a non-fiction character and events. Sheldon qualified for **"thin"** protection from the Court, yet she prevailed.

On the other hand, the Plaintiff's script is entirely imaginative; owing nothing to fact, history, or the public domain; deserving the Court's **broadest** protection.

Comparing the Plaintiff's and the Defendant's works, one notices the two are not only extremely similar to each other –they are both unlike anything else in the public domain –or anywhere. This fact invites *Ty Inc. v GMA Accessories.*

In Ty Inc. v. GMA Accessories, Inc., 132 F.3d 1167 (7th Cir.1997). the Court ruled: "Access (and copying) may be inferred when two works are so similar to each other and not to anything in the public domain that it is likely that the creator of the second work copied the first..."

In the Ty case, upon the evidence, the Court shifted the burden of proof to the defendant to show that the common attributes were publically available information. The defendant could not meet this demand. The court found there was copyright violation, finding for the Plaintiff.

The Ty case shows it's easy to allege things exist in the public domain, but harder to prove. Ideas, like satellites, dystopia and fantastic medicine are not in the public domain; they're free. None of the Plaintiff's collections of ideas, features, etc., in Butterfly Driver are in the public domain.

> **"It is of course essential to any protection of literary property ... that the right cannot be limited literally to the text, else a plagiarist would escape by immaterial variations.***".*
> -Judge Learned Hand (*Nichols v. Universal Pictures Corp.*).

24

## VII. SUMMARY:

Each elements of the Plaintiff story presented to the Court, plot, settings, characters, headache, etc., exceeds the "minimal degree" of creativity standard, and are quite copyrightable. The Defendants has "reasonable opportunity" to access the Plaintiff's work, and their work infringes on virtually every element of the Plaintiff's script. All of the facts and evidence presented herein are true and would result in a finding for the Plaintiff's at trial. Further, given that neither party requested a jury trial, and the fact that the intrinsic test requires the trier of fact, alone, to subjectively make the final decision –a Summary Judgment is all the more proper.

Court decisions are inevitable in these matters; as stated in Peter Pan v Martin Weiner:

**"Obviously, no principle can be stated as to when an imitator has gone beyond copying the idea, and has borrowed its expression.  Decisions must therefore inevitably be ad hoc."**
-*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487 (2d Cir. 1960).

## VIII. CONCLUSION:

Based on the foregoing, I, Plaintiff, Steve Wilson Briggs, respectfully request that the Court grant this motion, in entirety.

Dated: July 30th, 2014.                    Signed:  /s/ *Steve Wilson Briggs*
                                                            STEVE WILSON BRIGGS
                                                            Plaintiff, Pro Se
                                                            681 Edna Way
                                                            San Mateo, CA 94402
                                                            Telephone: (510) 200 3763
                                                            Email: snc.steve@gmail.com

PLAINTIFF'S NOTICE OF MOTION & MOTION FOR SUMMARY JUDGMNT CV  13-4679  PJH