kSteve Wilson Briggs
681 Edna Way
San Mateo, CA 94402
Telephone: (510) 200 3763
Email: snc.steve@gmail.com

Pro Se Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

| | |
|---|---|
| STEVE WILSON BRIGGS | Case No.: CV 13-4679 PJH |
| Plaintiff | |
| vs. | **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| NEILL BOMKAMP, SONY PICTURES ENT., INC., TRISTAR PICTURES, INC., MEDIA RIGHTS CAPITAL (AKA MEDIA RIGHTS CAPITAL II,L.P. & MRC), and QED INTERNATIONAL | |
| Defendants | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

Table of Contents……………………………………………………………………………………... ii

Table of Authorities………………………………………………………………………………….. iii

Introduction…………………………………………………………………………………………... 1

Summary Judgment Standard………………………………………………………………………... 1

Causes for Denial…………………………………………………………………………………….. 1

ARGUMENT………………………………………………………………………………………..... 1

    I.  Defendants' Motion Relies On Now Resolved Evidentiary Issues ……………………….…..... 1

    II.  Defendants' Motion Fails To Meet Rule 56 Standard………………………………………….. 2

    III. The Defense Misstated And Omitted Law & Fact In Their Motion……………………………. 2

              "Cherry-Picking" Case Citations……………………………………………. 4

    IV. Armstein v. Porter Sum. Jgmt. is Improper When Credibility of The Parties Is An Issue……..... 4

    V. SEQUENCING: The 10 Shared Sequential Events of Butterfly Driver & Elysium……………. 6

    VI. The Defense Wrongly Opines on Plot Points…………………………………………………... 8

    VII. Substantial Similarity In The Court Of Public Opinion…...…………………………………...10

Conclusion…………………………………………………………………………………………..... 11

ii

PLAINTIFF BRIEF IN OPPOSITION TO DFNDNTS' MOT. FOR SUM. JDMT. CV 13-4679 PJH

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **Page**

Arnstein v. Porter 154 F.2d 464 (2d Cir. 1946)…………………………………………………...1, 4, 5, 11

Three Boys Music v. Michael Bolton 212 F.3d 477 (9th Cir.2000……………………………………….. 3

Selle v. Gibb 741 F.2d 896 (1984)……………………………………………………………………..... 4

*Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167 (1997)……………………………………………… 4

**RULES**

Federal Rules of Civil Procedure, Rule 56……………………………………………………………….1, 2, 11

**OTHER AUTHORITIES**

Nimmer On Copyright……………………………………………………………………………………. 4

"Screenplay" (1979),by Syd Field……………………………………………………………………….9

Lexisnexis…………....…………………………………………………………………………………… 10

Law360……………………………………………………………………………………………………… 10

**INTRODUCTION:**

On July 30th, 2024, the Defense Counsel filed a motion for summary judgment in this matter of copyright infringement, under Fed R. Civ. P., Rule 56. In this opposition brief the plaintiff will show the Defense Counsel's motion does not meet the standard for granting summary judgment as: 1) there remain triable disputes of material fact; 2) the motion hinged on evidentiary issues that no longer exist; 3) the Defense motion misstated and omitted law and fact; 4) summary judgment is improper when credibility of the parties is an issue. Due to these deficiencies the Defendants' motion should be denied.

**SUMMARY JUDGMENT STANDARD**

Rule 56(c) states that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

**CAUSES FOR DENIAL**

The Defendants' motion for summary judgment has several major failings. Each of these failings constitutes cause to deny this motion. These causes, explored herein, are:

I. The Defendants' motion hinges, in part, on evidentiary issues that no longer exist.

II. Defendants' motion does not meet the F.R.C.P., Rule 56 standard for summary judgment.

III. The Defense misstated or omitted law and fact in said motion.

IV. Summary judgment is improper when credibility of the parties is an issue (**Arnstein v. Porter**).

**ARGUMENT:**

**I. DEFENDANTS' MOTION RELIES ON NOW RESOLVED EVIDENTIARY ISSUES**

The Defendants' motion for Summary Judgment relies, in part, on the fact that the Plaintiff had not properly authenticated the evidentiary exhibits attached to his complaint.

Rule 56(e) concerns the event of a party <u>Failing To Properly Support Or Address a Fact</u>, as the plaintiff had. Under Rule 56(e) and 56(e)(1) the Court has the option to give the party who has failed to properly support or address a fact an opportunity to properly support or address the fact. The Court allowed the Plaintiff an opportunity to correct these shortcomings. The Plaintiff then submitted the necessary filings and documentation authenticating the evidence and facts of his FAC. At the time

of the composition of this brief the Plaintiff believes the Court found his evidentiary filings acceptable. Therefore, the evidentiary problems, which formed the basis of much of the Defendants' motion for summary judgment no longer exist, and there are, indeed, genuine, triable issues of material fact (concerning almost every detail of this matter) that remain in dispute.<u>Therefore, the Defendants are NOT entitled to a judgment as a matter of law.</u>

## II. DEFENDANTS' MOTION FAILS TO MEET RULE 56 STANDARD

Under Rule 56 the moving party is entitled to a summary judgment "if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The Plaintiff has charged the Defendants with copyright infringement, supported by voluminous evidence. The Defendants have denied all allegations. None of these contentions have been resolved. Thus **remain countless genuine, triable issues of material fact to resolve**. As such, the Defendants are not entitled to summary judgment.

## III. THE DEFENSE MISSTATED AND OMITTED LAW & FACT IN THEIR MOTION

The following examples are among the many misstatements of law and fact in the Defendants' motion for summary judgment:

- **1.** In their motion for summary judgment, and throughout this matter, the Defense Counsel has persistently supported their position by using the term **"prior art"** (sometimes "prior work"). This is a continued effort to mislead the Court that certain stand-alone ideas are somehow copyrighted in some fanciful place called **"prior art".** <u>The term "**prior art**" is meaningless in copyright law.</u>  **<u>"Prior art" is a patent law term and concept with NO PLACE in copyright law</u>**. In copyright law there is 'public domain' –for once copyrighted properties, now available, to all, in the public domain. The Defense (and their seemingly well coached expert) have routinely uses the term "prior art" to refer to non-copyrightable, simple ideas (such as 'satellites' and "dystopias"), that they misinform the Court that the plaintiff is claiming as his own. He is not. But, just as all copyright owners, the Plaintiff enjoys the liberty of gathering existing, separate ideas, and blending them into new unique expressions; or mixing them with his own ideas to create still more unique copyrightable expressions.

The Plaintiff found one example of the term "prior art" used in a copyright case, but it was used by an expert in lieu of the term 'public domain'. But the expert seemed to understand that the

requirement is show a complete copyrightable collection.

Consider the following passage from Three Boys Music v. Michael Bolton 212 F.3d 477 (9th Cir.2000):

> …Eskelin testified that the two songs shared a combination of five unprotectible elements: (1) the title hook phrase (including the lyric, rhythm, and pitch); (2) the shifted cadence; (3) the instrumental figures; (4) the verse/chorus relationship; and (5) the fade ending. Although the appellants presented testimony from their own expert musicologist, Anthony Ricigliano, he conceded that there were similarities between the two songs and that he had not found the combination of unprotectible elements in the Isley Brothers' song "anywhere in the **prior art**." The jury heard testimony from both of these experts and "found infringement based on a unique compilation of those elements." We refuse to interfere with the jury's credibility determination...

NOTE that in the Three Boys Music case (which the Defense cited 3 times) the combining of five (5) unprotectanle elements was sufficient to create a copyrightable expression.

- **2.** In their Motion For Summary Judgment, the Defense Counsel wrote: "<u>The Screenplay contains one vague, unexplained reference to Drexler's "DNA reprogramming." (Screenplay at 90)</u>.

    **IN TRUTH:** on **page 36 (line 13)** of the Plaintiff's *Butterfly Driver,* the monologue reads:

    **TV REPORTER:** Today, Mr. and **\***Mrs. Drexler arrived on Uberopolis for a week long government summit. He announced Drexler Labs would soon make **genetic reprogramming available to the public.** Ten Years ago, then forty years old, <u>Drexler had his **DNA reprogrammed** to a permanent age of 25, and his **DNA altered** to produce no myostatin; so his bulging biceps are three times normal strength –without exercise.</u>

    **NOTE:** These details are connected to the center of this lawsuit. By now the Defense Counsel is intimately aware of this. **Their statement was an outright lie**.

    **\***In the 4th draft of Uberopolis: City of Light, Drexler's wife was also "genetically enriched".

- **3.** Page 8, line 6 of the Defense's motion for summary judgment, the Defense Counsel wrote, with no regard for accuracy: "<u>Plaintiff alleges no facts to support that Blomkamp found his screenplay on triggerstreet.com</u>.

    **IN TRUTH:** The Plaintiff dedicated over a page of his FAC (page 4 line 11 to page 5 line 13) to alleging facts supporting the plausibility of Blomkamp accessing his screenplay on triggerstreet.com; particularly page 4, line 23 of the FAC where the Plaintiff wrote:

    > "In 2007, like today, the majority of TriggerStreet members were short filmmakers and screenwriters. In 2007, Defendant, Neill Blomkamp was a short filmmaker, with only a few short films to his credit. Blomkamp wouldn't begin his first feature for another year. Defendant, MRC, was a struggling new film company with but 1 credit for 2007, "Couples", filmed for only $2,500."

### "Cherry-Picking" Case Citations

On page 1 of their motion, the Defense quotes David Nimmer (son of Melville Nimmer) who inaccurately opined in the 2005 revision of the father's original work, *Nimmer On Copyright*, "At base, 'striking similarity' simply means that in human experience, it is **"virtually impossible"** that the two works could have been independently created."

The 7th Circuit developed the *Striking Similarity* concept and definition in the landmark case of Selle v. Gibb 741 F.2d 896 (1984). They also developed a definition in that case, which certainly trumps anything the Nimmers postulate. The Selle v. Gibb definition *for striking similarity* is: **"similarity which is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded."**

A reasonable definition –though not so dramatic as Nimmer's 'impossible in human history'.

Thirteen years later the 7th Circuit refined that simple reasonable definition in *Ty, Inc. v. GMA Accessories, Inc*., 132 F.3d 1167 (1997):

"A similarity that is so close as to be **highly unlikely** to have been an accident of independent creation *is* evidence of access…. Access (and copying) may be inferred **when two works are so similar to each other and not to anything in the public domain that it is likely that the creator of the second work copied the first,** but the inference can be rebutted by disproving access or otherwise showing independent creation."

Note that Nimmer uses the phrase **"virtually impossible",** when the Court's definition uses the phrase **"highly unlikely"**. Given the great distance between these terms, Nimmer is plainly mistaken. But given the astronomically improbable similarity between Butterfly Driver's and Elysium's plots, the heroes' goal, the never-before-used settings (including a giant satellite city for the super-rich), the never-before-used headache affliction, the immigration and healthcare themes, the dying girl, the keepsake necklace, the disabled transporter, the genetically reprogrammed villain… a reasonable mind would find it both "highly unlikely" and "virtually impossible" that these two works were independently created.

### IV. SUMMARY JUDGMENT IS IMPROPER WHEN CREDIBILITY OF THE PARTIES IS AN ISSUE (Arnstein v. Porter, 1946)

The inaccuracies and inventions in the Defendants' motion for summary judgment abound almost as plentifully as in the Expert Witness Report of Jeff Rovin. During the course of this case, as if entrenched in a culture of dishonesty, the Defendants, their Counsel, and expert Jeff Rovin, have all

made significantly false statements to the Court, proving their credibility is unreliable.

In **Arnstein v. Porter 154 F.2d 464 (2d Cir. 1946)** the court found that **summary judgment is improper when credibility of the parties is an issue.**

Before this matter arrived before the Court, Defendant MRC II, L.P. thought nothing of telling the Court (in the Answers and Affirmative Defenses) that it was improperly named in this suit. The Defense Counsel knowingly provided that statement –having represented MRC and its other "entities" in a copyright dispute brought by the Estate of the great Phillip K. Dick –a matter still active today. The Court may also remember the wildly imaginative Expert Witness Report of Jeff Rovin. And consistent with their case history, the Defendants' motion for summary judgment makes a number of significantly false statements, which highlight these continued credibility problems; such as:

- **1.** The Defense Counsel wrote: "In the Screenplay, Arlo requires a fake ID in the nature of a driver's license because he is a fugitive on the run from the authorities."

**IN TRUTH:** The statement is an utter invention. I, plaintiff, never suggested that Arlo needed ID to get to Uberopolis because he is a fugitive. EVERYONE needs ID to enter Uberopolis. At the shuttle-port to Uberopolis, once Arlo gets his ID and ticket, he stands in a line with everyone else (page 70) the Plaintiff writes: **"He passes inconspicuously through the screening line as his jacket goes through the X-ray device."** Later Jerry Matthiessen, who works for the "State", also stands in a screening line, with everyone else going to Uberopolis,. Jerry even has his weapon confiscated. Additionally, on page 57, line 13, the Rabbi character finds, online, a dead Uberopolis citizen who's identity Arlo will assume. The Rabbi explains: **"We found a corpse killed in a skyway accident yesterday. His Uberopolis permits haven't been vacated yet."** Plainly, <u>ALL Uberopolis citizens require identification.</u>

- **2.** Page 23, line 4-6, the Defense Counsel actually says universal health care and class inequality are not themes found in the Plaintiff's screenplay.

**IN TRUTH:** the Plaintiff's screenplay was written to tackle the issues of health care inequalities and class division (the poor live in zone cities, blocked off from the rich cities and other zones, policed by the state), by showing the lengths a poor father will go to transgress these divisions to access lifesaving medicine for his daughter. There is great disparity between what is available on Earth and

5

Uberopolis –even the middle class of Earth, dream of going to "Sky Town" to get advanced treatments.

Stressing this inequality, in the second to last draft of Butterfly Driver (posted to TriggerStreet.com in July 2007) the Plaintiff explained that genetic reprogramming would cost the elite hundreds of millions of dollars (low nine figures) **[See Exhibit A, p 67 line 24].** In the fourth draft of Uberopolis: City of Light the Plaintiff explained that housing on Uberopolis also cost millions **[See Exhibit B, p 10 line 4].** In the final draft, choosing a softer palette, the Plaintiff omitted these details, as a thoughtful audience might surmise these staggering costs.

- **3.** On page 3, and 20 (and more) of their motion the Defense refers to the Plaintiff's unique collection of Feature which comprise his settings, (the giant satellite city for the rich which orbits an impoverished Earth, etc.) as "common," and "stock," and found in "prior art" (never mind that "prior art" is meaningless in copyright law).

**IN TRUTH:** the Plaintiff has numbered and listed the many aspects that make his settings unique. If the collection of these features are replicated in another SINGLE copyrighted work, or in a SINGLE copyrighted work available in the public domain, let the Defense show that copyrighted work.

- **4.** On page 16 of their motion for Summary Judgment, the Defense wrote: "In the Screenplay, The drug Drexlerin is equally available on Earth and on Uberopolis.

**IN TRUTH:** the Plaintiff's script makes it plain that there is no Drexlerin 2 on Earth (page 35), and shows prisoners placing boxes and boxes of Drexlerin 2 in warehouses on Uberopolis (p 28, bottom page). It is not equally available on both settings. Shortly before Arlo arrives on Uberopolis they clear the warehouses –a plot device to force a confrontation between Arlo and Drexler.

Further, concerning this misstatement by the Defense, in earlier versions of his story the Plaintiff put GREATER emphasis on the people on Earth longing for the various medical treatments available on Uberopolis. In the second to last version of Butterfly Driver (posted to TriggerStreet.com July 2007) characters **Jerry Matthiessen** and **Howard Mann** share this dialogue **[See Exhibit C, p 35 line10]**:

> **HOWARD:** Maybe he needs a lung transplant. My landlord got a preventative lung transplant on Sky Town and now he feels even better.
>
> **JERRY:** The rich running up there to avoid our transplant laws and waiting lines, has driven organ prices so high insurers won't cover transplants.

PLAINTIFF BRIEF IN OPPOSITION TO DFNDNTS' MOT. FOR SUM. JDMT. CV 13-4679 PJH

This mood repeats on page 76 of the second to last draft of Butterfly Driver, p76 **[See Exhibit D, p 76 line 6]** as Jerry asks a woman he meets on Uberopolis:

> **JERRY**: Excuse me. I'm looking for a rental car.
>
> **WOMAN #2**: I'm sorry. I'm just here for a quick liver transplant.

These scenes are also in earlier versions of Uberopolis: City of Light. The 4th version of Uberopolis:City of light (similar to the first version of Butterfly Driver placed on TriggerStreet.com) also featured a scene in which one of the people who help Arlo get to Uberopolis asks him to bring some of the medicine back to his community, p65 **[See Exhibit E, p65 line1]** :

> **SHORT MAN:** If you make it back, there are a lot of kids around here who could use one of those pills...

- **5.** On page 12, line 21 of their motion the Defense Counsel writes: "Not a single scene from the Screenplay is Replicated in the Film, let alone in the same sequence."

**IN TRUTH**: **regarding replicated scenes**, the Plaintiff has demonstrated how the headache scenes are replicated in the Defendants screenplay and film. The climax, in which the headache that occurs mid-battle is also a replicated scene –as are all government policy conference scenes.

The Defense's claim that there is no parity of plot sequence is attended under the next heading.

## V.   SEQUENCING: The 10 Shared Sequential Events of Butterfly Driver & Elysium

A plot is made up of characters, settings, themes, hero's goals conflicts, as well as events, and the sequencing of these events. The plaintiff did not include a section in his very lengthy FAC dedicated to plot sequence. But the Defense has stated in their motion for summary judgment that the sequencing of the events of the two stories is not the same. To show the fallacy of this **the plaintiff offers a sequencing of 10 imperative events, from both stories, that occur in exactly the same sequence**.

The first 33 pages of the two screenplays are indeed, sequentially, quite different. Then, "the catalyst" comes (the first major plot point), when the hero gets his goal. This happens on page 35 of Butterfly Driver and page 33 of Elysium. From here, **there are ten important events that occur in sequence** –the final 6 of these events occur on almost the same pages.

- **1.** The Catalyst. The heroes resolve to go to the satellite world for medical aide (p35 Butterfly Driver, p33 Elysium).

- **2.** The heroes contact underworld figures to get ID & transport to the satellite (p49, 52 Butterfly Driver, p35 Elysium)
- **3.** The heroes successfully get fake ID and ticket to the satellite (although Elysium's Max does not need a ticket, just money –the writer absently has his characters say "ticket" parroting this refrain from the Plaintiff's work):  P58, 64 Butterfly Driver, p 44 Elysium.
- **4.** Once they have ID's the heroes struggle to get transport to the satellite (Arlo holds Jerry at gunpoint and fights him to get to the shuttle port; Max gets data from Carlyle's head, but can't leave for Elysium because the flight system is jammed): p69 Butterfly Driver, p82 Elysium.
- **5.** The heroes of both works then  threaten to detonate explosives as they confront the villains (p92 Butterfly Driver, p91 Elysium).
- **6.** The heroes begin their lengthy battles against the villain on the satellite world (p97 Butterfly Driver, p95 Elysium).
- **7.** During the climax of the battle, as the heroes gain the upper-hand, the hero has a terrible headache, giving the villain the advantage (p109 Butterfly Driver, p112 Elysium).
- **8.** As the heroes seem to die their keepsake necklaces factor into the story (p113 Butterfly Driver, p116 Elysium).
- **9.** The heroes' action are shown to have save the little girl central to their respective stories (p115 Butterfly Driver, p120 Elysium).
- **10.** It is then revealed that the heroes' action have far reaching, global consequences (in Butterfly Driver, in addition to bringing free elections, Arlo's action to save the A-cell will save100 million lives per year and bring cheap energy to the world; in Elysium, Max's death ushers myriads of immigrants to Elysium –in the film med bays are sent around the world to heal everyone and make them live forever (117 Butterfly Driver, 120 Elysium).

### VI.        THE DEFENSE WRONGLY OPINES ON PLOT POINTS

On page 12, line 19 of the Defendants' motion for summary judgment the Defense wrote: "…none of these **plot points**, nor any of the specific **plot points** that flesh out this overview, can be found in the Film." (referring to the 14-19 features the Plaintiff marked as his copyrightable plot).  Then, in closing (p 25) the Defense writes: "…there is not one scene, one **plot point**, one character or one line

8

of dialogue from Butterfly Driver that can be found in Elysium."

The Plaintiff's FAC proves otherwise. <u>The Defense Counsel's statements reveal the Defense doesn't quite understand what a **"plot point"** is</u>, as they assume that every event in a story is a plot point. Attending this misunderstanding is imperative to fully understanding of the depth and nature of the infringement in this case.

Most trained screenwriters regard Syd Field as the most important screenwriting teacher ever. In 1979 Field wrote "Screenplay", which introduced the world to his "plot points" and his modern three act structure "paradigm" (which now pervades filmmaking). Syd Field's paradigm reduced films and screenplays down to a three act structure formula, comprised of five simple elements.

1) an inciting incident
2) **plot point** one (when the hero gets his **goal**, bringing the story into act two)
3) mid point (sometimes called the "crisis" or low-point)
4) **plot point** two (which brings the story into act three –the climax)
5) the climax

Most screenwriters would say there are only two plot points in a screenplay. Some screenwriters now consider the "inciting incident" and the "mid-point" plots point as well **[See Exhibit F].** Either way, there are very few actual plot points in a script or film, but they are critically important.

Syd Field's paradigm shows how extensive the infringement is, as the Plaintiff's FAC declares that the Defendants have specifically infringed on:

- 1. His 'inciting incident', hero must do a dangerous mission for a disabled transporter.
- 2. His hero's goal to get to Uberopolis for medical care. **This is plot point one.**
- 3. His story's crisis (often called "**the midpoint**") when the hero learns the medicine is not on the satellite (in Elysium's case, the hero learns he can't access the medical care there.
- 4. The hero threatening to detonate the explosive if the villain doesn't meet his demand is **plot point 2** of both works –as it triggers the confrontation with the villain, leading to the **'climax'**.
- 5. the Plaintiff's FAC shows the Defendants infringe on his climax by having the hero suffer a headache, mid-battle.

Effectively, the Defendants infringe on ALL five of the Plaintiff's major story events.

9

PLAINTIFF BRIEF IN OPPOSITION TO DFNDNTS' MOT. FOR SUM. JDMT. CV 13-4679 PJH

Should the Court be curious, the Plaintiff has provided several short published articles about Syd Field, his plot points, paradigm, and the importance of the inciting incident**. [See Exhibits F, G, H, I, J, K, L, M].**

## SUBSTANTIAL SIMILARITY IN THE COURT OF PUBLIC OPINION

In their motion for summary judgment, the Defense Counsel repeatedly stated that there were no similarities between Plaintiff's and the Defendants' work. But ordinary observers find the two works VERY similar. After this suit was filed, hundreds of online news sources carried the story. News agencies are usually skeptical about "they stole my idea" claims. But, in this case, not a single article doubts the merits of the Plaintiff claims. These media reports are significant as they reflect the views of the **ordinary observer**. The intrinsic test is often called "the **ordinary observer** test" as it is intended to consider the impression of the ordinary observer.

- Reporter Chelsea Naso, of **Lexisnexis's** legal news service *Law360*, found the case very credible, writing the stories have only **"slight differences". [See Exhibit N]**

- 8 year veteran entertainment reporter, Zack Mandell, wrote in *Examiner.com*:

    **"…it isn't considered enough merely to show that one work is substantially similar to another, as the court recognizes that such similarities can easily come about innocently. It's also necessary to show that the defendant(s) had access to the original source material at some point…"**
    **Here, it would seem that Mr. Briggs is on solid ground. His original screenplay, speculatively titled "Butterfly Driver," was first drafted sometime before May of 2005. A revised version of the piece was registered with the Writers' Guild of America-West in December of the same year. The plaintiff claims to have posted the script online at the screenwriting website Triggerstreet.com in February 2007."** [See Exhibit O]

- Jeff Sneider, who first broke the story in **TheWrap.com** wrote: "**There are indeed a number of similarities between the two scripts, as alleged in the lawsuit…" [See Exhibit P].**

- The case is featured on scholarly sites, such as American University Washington College of Law, to film fan sites. The only criticism the Plaintiff has yet found against his case came from a law firm who considered the plaintiff foolish for representing himself:
(see: http://piratedthoughts.com/movie-companies-director-sued-copyright-infringement-elysium/)
But even this article doesn't question the similarity of the works.

These articles confirm there is clear substantial similarity between the contested works, apparent to all observers –save the Defendants and their Counsel.

**SUMMARY**

As detailed herein, the Defendants' motion for summary judgment is improper and unqualified as there remain many genuine disputes of material facts, therefore the motion does not meet the F.R.C.P., Rule 56 standard for summary judgment. The Defendants' motion also misstated or omitted law and fact. Additionally, the Defendants and their Counsel have shown credibility problems –per Arnstein v. Porter 154 F.2d 464 (2d Cir. 1946), summary judgment is improper when credibility of the parties is an issue.

**<u>CONCLUSION</u>**

For the foregoing reasons the Plaintiff respectfully requests that the Defendants' motion for summary judgment be denied.

Dated: August 12th, 2014        Respectfully Submitted,  /s/ *Steve Wilson Briggs*
                                                          Steve Wilson Briggs
                                                          Plaintiff, In Pro Per
                                                          681 Edna Way
                                                          San Mateo, CA 94402
                                                          Telephone: (510) 200 3763
                                                          Email: snc.steve@gmail.com