```
1                                             Pages 1 - 13

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4              BEFORE THE HONORABLE PHYLLIS J. HAMILTON

5   STEVE KENYATTA WILSON BRIGGS    )
                                    )
6         Plaintiff,                )   NO. 4:13-cv-04679
                                    )
7         v.                        )
                                    )   Oakland, California
8   NEILL BLOMKAMP, SONY PICTURES   )
    ENT., INC., TRISTAR PICTURES,   )   Wednesday
9   INC., MEDIA RIGHTS CAPITAL,     )   September 3, 2014
    QED INTERNATIONAL,              )
10                                  )   9:00 A.M.
          Defendants.               )
11  _____)

12                    TRANSCRIPT OF PROCEEDINGS

13  APPEARANCES:

14  For Plaintiff:
                          Steve Kenyatta Wilson Briggs
15                        681 Edna Way
                          San Mateo, CA 94402
16                        510-200-3763
                          Email: Snc.steve@gmail.com
17
         BY:     STEVE KENYATTA WILSON BRIGGS
18               PRO SE PLAINTIFF

19  For Defendants:
                          Kinsella Weitzman et al LLP
20                        808 Wilshire Blvd 3FL
                          Santa Monica, CA 90401
21                        310-566-9855
                          Fax: 310-566-9850
22                        Email: Mkump@kwikalaw.com

23       BY:     MICHAEL JOSEPH KUMP
                 ATTORNEY AT LAW
24

25       (Appearances continued on the following page)
```

Kelly Polvi, CSR, RMR, FCRR - 503.779.7406 - kpolvi@comcast.net

```
1       APPEARANCES:

2       For Defendants:

3                       Kinsella Weitzman et al LLP
                        808 Wilshire Blvd 3FL
4                       Santa Monica, CA 90401
                        310-566-9800
5                       Fax: 310-566-9850
                        Email: Gkorn@kwikalaw.com WHITE & CASE LLP
6
              BY:       GREGORY PHILIP KORN
7                       ATTORNEY AT LAW

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24      Reported by Kelly Polvi, CSR, RMR, FCRR, Contract Reporter

25      United States District Court, Northern District of California
```

```
1      SEPTEMBER 3, 2014                              9:52 A.M.
2                         P R O C E E D I N G S
3                              ---oOo---
4          THE CLERK:  Calling Civil Case No. 13-4679, Briggs versus
5      Blomkamp, et al.
6          Appearances?
7          MR. KUMP:  Good morning, Your Honor, Michael Kump for
8      defendants.
9          THE COURT:  Good morning.
10         MR. BRIGGS:  Good morning, Your Honor, I'm Steve Wilson
11     Briggs, Plaintiff.
12         THE COURT:  Good morning.
13         MR. KORN:  Good morning, Your Honor.  Greg Korn, also on
14     behalf of the defendants.
15         THE COURT:  All right.  Good morning.
16         All right.  This matter's on for hearing on the cross
17     motion for summary judgment.  We have one from each side.
18         We'll hear -- the defendants' motion encompasses most of
19     the arguments raised in Plaintiff's motion, as well as a few
20     others, so we'll start, first, with defendants' motion.
21         MR. KUMP:  Yes, Your Honor.  We have briefed these issues
22     extensively, but what I would like to do is just spend a couple
23     of minutes to augment a few points, cite the Court a couple of
24     additional cases that we think are on point.
25         And let me just jump in and start with the access issue.
```

1    I think we've established that there is none of the, quote,
2    significant affirmative and probative evidence of access that's
3    required under the case law.  We have simply speculation and
4    conjecture, and that speculation's rebutted by
5    Mr. Blomkamp's Declaration.
6         I just want to pay some particular additional attention
7    to this issue of widespread dissemination.
8         There was an argument by Mr. Briggs -- I believe it was
9    in opposition to our motion.  It was just in passing.  It was
10   sort of a one-sentence mention of widespread dissemination.
11   And we cited to the Court *Art Attacks*, which is the Ninth
12   Circuit case, which said that merely posting on the Internet is
13   not sufficient.
14        And I just thought I would bring a couple of other cases
15   to the Court's attention on the same issue.
16        One of them is called *Chafir v. Mariah Carey*.  That's
17   C-h-a-f-i-r.  **2007 WL 2702211**.
18        **THE COURT**:  It not in your papers?
19        **MR. KUMP**:  It's not, Your Honor.  I just -- I feel like
20   it's an additional case we should bring to the Court's
21   attention.  I apologize that it wasn't in the initial papers.
22        **THE COURT**:  Did it just come out?
23        **MR. KUMP**:  No.  No, it didn't, Your Honor.  It's just
24   that, in doing some additional research on the particular
25   issue, I found that case, subsequent to briefing.

1          If it's something Your Honor does not want to consider --

2          **THE COURT:**  I prefer not because the plaintiff doesn't

3  have an opportunity to respond to any new authority, which is

4  why you're supposed to bring it to my attention in writing.

5          **MR. KUMP:**  I understand, Your Honor.  We did cite the

6  *Art Attacks* case, so what I'll do is call attention to a couple

7  of things that the Ninth Circuit said in that case, which is

8  they give examples of sales in the thousands of -- you know,

9  copies of a particular item, saying that's not sufficient.

10         It does talk about merely posting on the Internet not

11  being sufficient.

12         I think it's clear here we do not have widespread

13  dissemination.  We have the posting of this screenplay for a

14  limited period -- it was February to August 2007 -- on a single

15  website, and there's no evidence in the record of how many

16  people actually viewed it on that website.

17         So I think it's clear, as a matter of law, we don't have

18  widespread dissemination, we don't have evidence of access.

19         And so the standard that applies here is a striking

20  similarity standard.

21         There was some debate over what that means.  I think

22  we've established -- whether it's under the *Selle* case that

23  Mr. Briggs cites, under the local authority here in California

24  that we cite --

25         **THE COURT:**  The Ninth Circuit hasn't given --

1     **MR. KUMP:**  The Ninth Circuit actually hasn't, to my
2  knowledge -- I apologize -- hasn't specifically weighed in and
3  said, "This is exactly what we mean by 'striking similarity.'"
4  It certainly has adopted that standard in *Three Boys Music* as
5  to what it exactly means.
6     No, I'm not aware of a case where the Circuit
7  specifically says.
8     There are several District Court cases in California.
9  *Stewart v. Wachowski*, which we cited; *Bernal*, which we cited.
10 Those discuss the standard.
11    And they -- I think at least one of them cites to *Nimmer*.
12    Basically the standard is similar to *Selle*.  You would
13 have to establish that these similarities are so overwhelming
14 that it is, in essence, impossible, inconceivable, not
15 reasonably possible, something like that, that the work was
16 independently created.
17    The distinction in the approach that's been taken here --
18 and this is what we emphasize on our briefs -- is while
19 defendants have been focusing -- and do focus, as well,
20 requires -- on the, quote, actual concrete elements of the
21 works, that *Funky Films* term.  I think it may be from verbiage,
22 but that's the term that gets used.
23    While we're focusing on that level, Mr. Briggs is
24 focusing on this level of abstraction where you're taking the
25 plots, the characters, stripping them of all of their

1    expression, of all of the specific details that merely make up
2    the story and make up the character, and looking at these
3    incredibly over-generalized abstractions of these elements to
4    try to draw comparisons that the observer will not find when
5    reading or watching these works.
6         In preparation for today, I tried to take a critical eye,
7    and I went back through.  I started by reading both the
8    purported screenplay for *Elysium*, watched the film, and then
9    read Mr. Briggs' screenplay.  And I did so with the following
10   question, which I think is the appropriate question under Ninth
11   Circuit law, which is okay, does any of this occur in *Elysium*?
12   Can I find one thing, one specific thing from this screen play
13   by Mr. Briggs, that occurs in Defendants' film or in the
14   purported underlying screenplay for it?
15        And respectfully, we don't believe there is a single
16   concrete element from that script that can be found in our
17   clients' works, or in that, again, purported underlying
18   screenplay for it.
19        I will note that the screenplay that Mr. Briggs has
20   submitted is substantially similar to the film version of
21   *Elysium*.  There are some distinctions in dialogue.  The basic
22   story is the same.  So whether the comparison is to that
23   document, which is submitted with the First Amended Complaint,
24   or to the film version, you get to the same result, which is we
25   can't come up with a single scene from Mr. Briggs' film that

1   has been replicated in our clients' works.  At most what you
2   can find is this incredibly generalized idea of, say, a space
3   station with a protagonist who's traveling there for some kind
4   of medical care.
5       If Your Honor looks at cases -- particularly *Benay* and
6   *Funky Films*, for example, if we want to see exactly what the
7   Ninth Circuit thinks the standard is -- we are not even in the
8   universe of the kind of similarities that existed in those
9   cases, and those were summary judgment cases.
10      The question might come up, "Well, is there some gravity
11  to the number of these abstract similarities that Mr. Briggs
12  has come up with?"  In one case it was 14; in his motion, it
13  was 18.  There's not.
14      And I would point the Court to a few cases that we cited.
15  *Quirk*, for example, which is from the Northern District,
16  disregarded 35 pages of such similarities, finding that they
17  were subjective, they were unfair characterizations.
18      *Bernal*, from the Central District, disregarded, quote,
19  many pages of plot comparisons, also finding that they were
20  mischaracterizations.
21      The *Idema* case -- I-d-e-m-a -- disregarded 106
22  similarities.
23      *Overman*, which was the Central District, disregarded 19
24  points.
25      And all for the same reasons that we believe these

1  abstract similarities should be disregarded here.  They are
2  based heavily on mischaracterizations of the works.
3      And when you add the slightest detail, just the barest
4  amount of detail to these highly-generalized ideas that were
5  being compared, all similarities vanish.  There is just -- at
6  the level of expressive elements, there really is not one
7  single expressive copy-writable similarity between the works.
8      Certainly the similarities that Mr. Briggs has been able
9  to put together here are far fewer than what we see in *Benay*,
10 in *Funky Films*, and several other cases we've cited.
11     And so for all these reasons, Your Honor, we respectfully
12 believe it's just not even a close case here on striking
13 similarity and summary judgement should be granted for the
14 defendants.
15     **THE COURT:**  Okay.
16     Mr. Briggs.
17     **MR. BRIGGS:**  Do you mind if I get some water?
18     **THE COURT:**  Oh, of course not.
19     **MR. BRIGGS:**  Is this --
20     **THE CLERK:**  That's water.
21     **MR. BRIGGS:**  I'm terribly sorry, I wasn't -- I'll do my
22 best to give some sort of oral presentation.  I wasn't aware
23 that that was expected today; I thought I would just receive
24 Your Honor's opinion on the matters.
25     So I'll attend, to the best of my ability, any questions

1       you may ask.
2              I think that I've stated my case as effectively as I was
3       able, under the circumstances, in my Complaint and my Motion
4       for Summary Judgment and my Opposition.
5              I disagree wholeheartedly about widespread access.  The
6       site that my screenplay was posted on is a unique site, a
7       screenwriting website.
8              Again, was singled out by *Time Magazine* as one of the
9       50 -- I think it was 50 most -- I think it was interesting or
10      best websites out there.  And on that website it was available
11      to a unique market of people who were interested in
12      screenwriting, interested in screenplays.
13             And it was -- it still is an interactive website that
14      caters to a unique population with, at one point, at least over
15      a hundred thousand people.  I'm not sure what it currently has
16      or what it had, exactly, in 2007.
17             So I think that that --
18             **THE COURT**:  A hundred thousand people did what?
19             **MR. BRIGGS**:  Oh, a hundred thousand members who signed up
20      and were participating in 2004.  That was a date that I got
21      clear information.  I wasn't able to get specific information
22      for 2007 or even now.
23             **THE COURT**:  What does it mean to be a participating
24      member?
25             **MR. BRIGGS**:  You sign up.  You sign up and you can access

1      the screenplays.  You can submit your work.  You can submit
2      your films.
3              And I think that at that time -- I made it clear in my
4      Summary Judgment and in my Complaint that in 2007 Neill
5      Blomkamp was strictly a short filmmaker, and triggerstreet was
6      there for short filmmakers to post their work and see what
7      other short filmmakers were doing.
8              **THE COURT**:  But you have no evidence that he did, in
9      fact --
10             **MR. BRIGGS**:  I do not.
11             **THE COURT**:  -- post his work.
12             No, no, no.
13             **THE COURT**:  Excuse me.
14             Sign up for the website service, post his work, or read
15     your work.
16             Do you have any evidence that he did any of those things?
17             **MR. BRIGGS**:  No.
18             I did explain in my Motion that people can sign up -- and
19     they do, anonymously, and they can interact at whatever level
20     they see fit.  If they just want to read screenplays or view,
21     they can do that, or they can post work.
22             **THE COURT**:  Is that the only place where he could have
23     gotten your screenplay?
24             **MR. BRIGGS**:  That's the only place that I posted the
25     entire screenplay.  And it's also the only place of certain

|     |     |
| --- | --- |
| 1   | things that I kept very confidential in all of my mailings to, |
| 2   | you know, various filmmaking agencies and agents. |
| 3   | There's certain things that I omitted, such as the |
| 4   | headache. |
| 5   | And that's the only place, yes, that that information |
| 6   | could have been found. |
| 7   | **THE COURT**: Okay. All right. |
| 8   | So that's the only place where all of the information |
| 9   | could have been found, and you have no evidence that he was a |
| 10  | member of the website, that he posted his own work on the |
| 11  | website, or that he read other things on the website. |
| 12  | **MR. BRIGGS**: No evidence. |
| 13  | **THE COURT**: Okay. So your allegation that he had access |
| 14  | is simply that it was available, if he wanted to access it. |
| 15  | **MR. BRIGGS**: That's it. |
| 16  | **THE COURT**: Okay. Okay. All right. |
| 17  | Anything else? |
| 18  | **MR. BRIGGS**: If you have specific questions, I might -- I |
| 19  | wholly disagree with, you know, everything that's put forth. |
| 20  | I think I did my best to make a clear, cohesive argument, |
| 21  | and I don't think that it's -- the two works are -- at no point |
| 22  | did I restrict myself to a striking similarity standard. I did |
| 23  | mention that, but I didn't propose that that's all I'm |
| 24  | restricted to or anything. |
| 25  | But I disagree that the two works are -- that my |

1    similarities are from some sort of distant, remote --
2         I think up close, you know, the characters, there's
3    clearly differences.  But when you describe the story, you
4    cannot help but transgress my copyright property heavily.
5         Clearly, we may have a difference of opinion, but I do
6    believe that logic is in my favor.
7         **THE COURT**:  All right.
8         Any response?
9         **MR. KUMP**:  Nothing further, Your Honor.
10        **THE COURT**:  All right.
11        The matter's submitted.  We'll issue a written opinion.
12        **MR. BRIGGS**:  Okay.
13        **THE COURT**:  And with regard to the earlier motion to
14   disqualify the expert, now that I understand how the expert's
15   being used I will rule on that as well.
16        **MR. KUMP**:  Thank you, Your Honor.
17        **MR. KORN**:  Thank you, Your Honor.
18        **THE COURT**:  All right.  We're adjourned.
19        (Whereupon, the proceedings were adjourned at 10:07 A.M.)
20
21
22
23
24
25

CERTIFICATE OF CONTRACT REPORTER

I, Kelly Lee Polvi, certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 6th day of December, 2014.

*Kelly Lee Polvi*

_____
Kelly Lee Polvi
CA CSR No. 6389
Registered Merit Reporter
Federal Certified Realtime Reporter